IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ———————————————— ) | |
| UNITED STATES OF AMERICA, ) | |
| and STATE OF MISSOURI ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| THE DOE RUN RESOURCES ) | |
| CORPORATION, ) | |
| THE DOE RUN RESOURCES ) | |
| CORPORATION d/b/a "THE DOE RUN ) | |
| COMPANY";        and ) | |
| THE BUICK RESOURCE RECYCLING ) | |
| FACILITY, LLC ) | |
| ) | |
| Defendants. ) | |
| ———————————————— ) | |

## <u>COMPLAINT</u>

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Missouri, at the relation of Chris Koster, Attorney General, and the Missouri Department of Natural Resources ("MDNR"), jointly file this Complaint and allege as follows:

## I. <u>NATURE OF THE ACTION</u>

1.  This is a civil action brought against The Doe Run Resources Corporation and The Doe Run Resources Corporation d/b/a "The Doe Run Company" (collectively "Doe Run"), for environmental violations at several of its mining, milling, and smelting facilities located in Missouri and The Buick Resource Recycling Facility, LLC ("Buick LLC") for environmental

DRRC multimedia Complaint

violations at its secondary smelting facility in Missouri.  Doe Run's and/or Buick LLC's

facilities have been in violation of the following environmental statutes and their implementing

federal and state regulations: the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q for

violations of (a) the Federally-enforceable Missouri State Implementation Plan (the "Missouri

SIP"), (b) Title V of the CAA, 42 U.S.C. §§ 7661-7661f, (c) the Prevention of Significant

Deterioration ("PSD") provisions of the CAA, 42 U.S.C. §§ 7470-92, (d) the New Source

Performance Standards ("NSPS") provisions of the CAA, 42 U.S.C. § 7411, (e) the

Nonattainment New Source Review ("NNSR") requirements of the CAA, 42 U.S.C. §§ 7501-

7515, and (f) the National Emission Standards for Hazardous Air Pollutants ("NESHAPs")

requirements of the CAA, 42 U.S.C. § 7412; the Missouri Air Conservation Law, Chapter 643,

RSMo; the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992k; the

Missouri Hazardous Waste Management Law, §§ 260.350-260.434, RSMo; the Clean Water Law

("CWA"), 33 U.S.C. §§1251-1387; the Missouri Clean Water Law, Chapter 644, RSMo; the

Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. §§ 11001-

11050; and the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), 42 U.S.C. §§ 9601-9603.  Doe Run has also violated a May 9, 2007

Administrative Order on Consent, In the Matter of The Doe Run Transportation and Haul Route,

Southeastern Missouri, Docket No. RCRA-07-2007-0008, (referred to herein as "Transportation

Order") issued  pursuant to Section 7003 of RCRA in order to abate an imminent and substantial

endangerment to public health, welfare, and the environment connected with the transportation

and handling of concentrate, ore, and other lead-bearing materials.

DRRC multimedia Complaint

2.  The United States and the State seek an injunction ordering Doe Run and Buick LLC to comply with the above-cited environmental statutes and regulations promulgated thereunder and the May 9, 2007 Administrative Order on Consent, and civil penalties for Doe Run's and Buick LLC's past and ongoing violations.

## II.  JURISDICTION AND VENUE

3.  This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367; Section 113(b) of the CAA, 42 U.S.C. § 7413(b); Sections 301, 309, and 402 of the CWA, 33 U.S.C. §§ 1311, 1319, and 1342; Sections 3008 and 7003 of RCRA, 42 U.S.C. §§ 6928 and 6973; Sections 304, 313, and 325 of EPCRA, 42 U.S.C. §§ 11004, 11023, and 11045; and Sections 109(c) and 113 of CERCLA, 42 U.S.C. §§ 9609(c) and 9613.  The Complaint states a claim upon which relief may be granted for injunctive relief and civil penalties against Doe Run and Buick LLC under the CAA, Missouri Air Conservation Law, Missouri SIP, CWA, Missouri Clean Water Law, RCRA, Missouri Hazardous Waste Management Law, EPCRA, and CERCLA.

4.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because Defendants' facilities are located in this District, and Defendants are doing business in this District.  Venue is also proper pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b); CWA Section 309(b), 33 U.S.C. § 1319(b); RCRA Sections 3008(a) and 7003(b), 42 U.S.C. §§ 6928(a) and 6973(b); EPCRA Section 325(b), 42 U.S.C. § 11045(b); and CERCLA Section 113(b), 42 U.S.C. § 9613(b).

DRRC multimedia Complaint

## III.  <u>NOTICE</u>

5.  The United States has given notice of the commencement of this action to the State of Missouri as required by Section 113(a)(1) and (b)(1) of the CAA, 42 U.S.C. § 7413(a)(1) and (b)(1), Section 309(b) of the CWA, 33 U.S.C. § 1319(b) and Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2).

6.  On March 9, 2010, EPA issued to Defendant Doe Run a Notice of Violation ("NOV") within the meaning of 42 U.S.C. § 7413(a)(1) alleging violations of the CAA and the Missouri SIP at the Herculaneum Lead Smelter Facility and the Buick Mine/Mill Facility.  A copy of the NOV was sent to the State of Missouri.

## IV.  <u>THE DEFENDANTS</u>

7.  The Doe Run Resources Corporation is a New York corporation with its principal place of business in St. Louis, Missouri.  The Doe Run Resources Corporation is authorized to do business in the State of Missouri using the name "The Doe Run Company."  The Doe Run Resources Corporation is a wholly-owned subsidiary of The Renco Group, Inc.  The Doe Run Resources Corporation was formerly known as St. Joe Minerals Corporation.  Doe Run is the successor via merger to a corporation incorporated in New York that was originally known as The St. Joseph Lead Company.

8.  The Buick Resource Recycling Facility, LLC is a Delaware limited liability company with its principal place of business in Boss, Missouri.  The Buick Resource Recycling Facility, LLC is a wholly owned subsidiary of The Doe Run Resources Corporation and owns and operates the largest, single-site lead recycling facility in the world.

DRRC multimedia Complaint

9.  At all times relevant to this Complaint, Doe Run owned and/or operated the following mining, milling, and/or smelting facilities which produce, or at one time produced, lead and other primary metals and metal concentrates and are the subject of the United States' and the State's Claims:

- Brushy Creek Mine/Mill Facility
- Buick Mine/Mill Facility
- Fletcher Mine/Mill Facility
- Glover Lead Smelter Facility and
- Glover Doe Run/ASARCO Slag Pile Facility

- Herculaneum Lead Smelter Facility
- Viburnum Mine #35 Facility
- Viburnum Mine/Mill Facility
- West Fork Unit Mine/Mill Facility

10.  At all times relevant to this Complaint, Buick LLC and/or Doe Run owned and operated the Buick Resource Recycling Facility which is the subject of the United States' and State's Claims.

11.  Doe Run and Buick LLC are each a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e); § 644.016(14) RSMo (Cum. Supp. 2008); Section 502(5) of the CWA, 33 U.S.C. § 1362(5); § 643.020(37), RSMo 2000; Section 1004(15) of RCRA, 42 U.S.C. § 6903(15); and § 260.350(17), RSMo (Cum. Supp. 2008); Section 329(7) of EPCRA, 42 U.S.C. § 11049(7); and Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## V.  STATUTORY AND REGULATORY BACKGROUND

### A.  CLEAN AIR ACT: Statutory and Regulatory Background

#### 1.  Clean Air Act - General Provisions

12.  The CAA, 42 U.S.C. §§ 7401-7671q, and the regulations promulgated thereunder, establish a regulatory scheme designed to protect and enhance the quality of the nation's air so as

DRRC multimedia Complaint

to promote the public health and welfare and the productive capacity of its population.  Section

101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1).  The CAA includes a variety of measures within

its six subchapters to achieve this purpose.  The CAA claims in this Complaint are based on the

following measures:  (i) compliance with the standards for Prevention of Significant

Deterioration of Air Quality provisions promulgated pursuant to Part C of Title I of the CAA, 42

U.S.C. §§ 7470-7492 and the State of Missouri Implementation Plan Prevention of Significant

Deterioration provisions at 10 CSR 10-6.060; (ii) compliance with the standards for

Nonattainment New Source Review provisions promulgated pursuant to Part D of Title I of the

CAA, 42 U.S.C. §§ 7501-7515 and the State of Missouri Implementation Plan Nonattainment

New Source Review provisions at 10 CSR 10-6.060; (iii) compliance with the requirements of

the Missouri State Implementation Plan that was adopted and approved pursuant to Section 110

of the CAA, 42 U.S.C. § 7410; (iv) compliance with the New Source Performance Standards

promulgated pursuant to Section 111 of the CAA, 42 U.S.C. § 7411; (v) Title V of the CAA, 42

U.S.C. §§ 7661-7661f and the State of Missouri Title V provisions at 10 CSR 10-6.065; and (vi)

the National Emission Standards for Hazardous Air Pollutants provisions promulgated pursuant

to Section 112 of the CAA, 42 U.S.C. § 7412 and the State of Missouri NESHAP provisions at

10 CSR 10-6.075.

### 2.  Clean Air Act - National Ambient Air Quality Standards

13.  Section 108(a) of the CAA, 42 U.S.C. § 7408(a), requires the Administrator of EPA

to identify and prepare air quality criteria for each air pollutant which may endanger public

health and welfare when emitted, and which results from numerous or diverse mobile or

stationary sources.  For each such pollutant, Section 109 of the CAA, 42 U.S.C. § 7409, requires

DRRC multimedia Complaint

the Administrator of EPA to promulgate regulations establishing primary and secondary National

Ambient Air Quality Standards ("NAAQS") requisite to protect public health and welfare.

14.  Pursuant to Sections 108 and 109 of the CAA, 42 U.S.C. §§ 7408 and 7409, EPA has

identified sulfur dioxide ("$SO_2$") and lead ("Pb") as criteria pollutants and has promulgated

NAAQS for such pollutants.  40 C.F.R. §§ 50.4 - 50.16.

15.  Under Section 107(d) of the CAA, 42 U.S.C. § 7407(d), each state is required to

designate those areas within its boundaries where the air quality is better or worse than the

NAAQS for each criteria pollutant, or where the air quality cannot be classified due to

insufficient data.  An area that meets the NAAQS for a particular pollutant is classified as an

"attainment" area with respect to such pollutant.  An area that does not meet the NAAQS for a

particular pollutant is classified as a "nonattainment" area with respect to such pollutant.

16.  At all times relevant to this Complaint, Doe Run's Herculaneum Lead Smelter

Facility was located in Herculaneum, Jefferson County, Missouri, which has been classified as

attainment for $SO_2$ (1978 - present).  40 C.F.R. § 81.326; 43 Fed. Reg. 8962 (Mar. 3, 1978).  The

Jefferson County area within the city limits of Herculaneum has been classified as nonattainment

for lead (1992 - present).  40 C.F.R. § 81.326; 56 Fed. Reg. 56694 (Nov. 6, 1991).

### 3.  Clean Air Act - The New Source Review Requirements

17.  The New Source Review requirements of the Clean Air Act comprise two programs:

the Prevention of Significant Deterioration ("PSD") program to prevent the decline of air quality

in those areas already meeting the NAAQS and the Non-Attainment New Source Review

("NNSR") program to improve the air quality in those areas that have not attained compliance

with the NAAQS.

DRRC multimedia Complaint

18.  Part C of Title I of the CAA, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS standards.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. 42 U.S.C. § 7470.  These provisions are referred to herein collectively as the "PSD program."

19.  Sections 110(a) and 161 of the CAA, 42 U.S.C. §§ 7410(a) and 7471, require each state to adopt a State Implementation Plan ("SIP") that provides for the implementation, maintenance, and enforcement of the NAAQS and that contains emission limitations and such other measures as may be necessary to prevent significant deterioration of air quality in areas designated as either attainment or unclassifiable.

20.  A state may comply with Sections 110(a) and 161 of the CAA, 42 U.S.C. §§ 7410(a) and 7471, by having its own PSD regulations, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166, approved by EPA as part of its SIP.  If a state does not have a PSD program that has been approved by EPA and incorporated into its SIP, the federal PSD regulations set forth at 40 C.F.R. § 52.21 may be incorporated by reference into the SIP.  40 C.F.R. § 52.21(a).

21.  Part D of Title I of the CAA, 42 U.S.C. §§ 7501-7515, sets forth provisions for New Source Review ("NSR") requirements for areas designated as being in nonattainment with the NAAQS standards.  These provisions are referred to herein as the "Nonattainment NSR" or

DRRC multimedia Complaint

"NNSR" program.  The NNSR program is intended to reduce emissions of air pollutants in areas that have not attained NAAQS so that the areas make progress toward meeting the NAAQS. Before the effective date of the 1990 Clean Air Act Amendments, P. Law 101-549, effective November 15, 1990, the NNSR provisions were set forth at 42 U.S.C. §§ 7501-7508.

22.   Under Section 172(c)(5) of the NNSR provisions of the CAA, 42 U.S.C. § 7502(c)(5), each state is required to adopt NNSR SIP rules that include provisions to require permits that conform to the requirements of Section 173 of the CAA, 42 U.S.C. § 7503, for construction and operation of modified major stationary sources within nonattainment areas. Section 173 of the CAA, in turn, sets forth a series of minimum requirements for the issuance of permits for major modifications to major stationary sources within nonattainment areas.  42 U.S.C. § 7503.

23.   EPA initially approved the State of Missouri SIP containing the State's PSD and NNSR programs on May 31, 1972 with subsequent revisions approved on May 9, 1980 and June 27, 2006.  The regulations appearing at 10 CSR 10-6.060 were incorporated into and were part of the Missouri SIP at the time of the major modifications at issue in this case.  All citations to the PSD and NNSR regulations herein refer to the provisions of the Missouri SIP as applicable at the time of the major modifications alleged herein.

24.   The Missouri SIP permit regulations at 10 CSR 10-6.060 apply to installations throughout Missouri with the potential to emit any pollutant in an amount equal to or greater than the *de minimis* levels.  10 CSR 10-6.060(1)(B); *see also* 42 U.S.C. § 7479(a)(1); 40 C.F.R. § 52.21(b)(1)(i)(a) (1994).  The *de minimis* level for $SO_2$ is 40 tons per year.  The *de minimis* level for lead is 0.6 tons per year.  10 CSR 10-6.020(3)(A) Table 1.

DRRC multimedia Complaint

25.  The Missouri SIP defines "major modification" as any physical change or change in the method of operation at an installation or in the attendant air pollution control equipment that would result in a significant net emissions increase of any pollutant.  10 CSR 10-6.020(2)(M)(3); see also 42 U.S.C. § 7411(a); 40 C.F.R. § 52.21(b)(2)(i).

26.  The Missouri SIP defines "net emissions increase" as a condition when the increases in pollutant emissions at an installation exceed the decreases of the same pollutant.  10 CSR 10-6.020(2)(N)(2); see also 40 C.F.R. § 52.21(b)(3)(i).

27.  The Missouri SIP defines "significant" as a net emissions increase or potential to emit at a rate equal to or exceeding the *de minimis* levels.  10 CSR 10-6.020(2)(S)(10); see also 40 C.F.R. § 52.21(b)(23)(i).

28.  The Missouri SIP defines *de minimis* levels as any emissions level less than or equal to the rates listed in Table 1 at 10 CSR 10-6.020(3)(B).  10 CSR 10-6.020(2)(D)(4).  Table 1 at 10 CSR 10-6.020(3)(B) lists the *de minimis* level as 40 tpy for SO2 and 0.6 tpy for lead.  See also 40 C.F.R. § 52.21(b)(23)(i).

29.  The Missouri SIP defines "actual emissions" as the average rate, in tons per year, at which the source operation or installation actually emitted the pollutant during the previous two-year period and which represents normal operation.  In addition, for source operations or installations which have not begun normal operations, actual emissions shall equal the potential emissions of the source operation or installation on that date.  10 CSR 10-6.020(2)(A)(4); see also 40 C.F.R. § 52.21(b)(21).

30.  The Missouri SIP defines, "construction" as fabricating, erecting, reconstructing or installing a source operation.  Construction shall include installation of building supports and

DRRC multimedia Complaint

foundations, laying of underground pipe work, building of permanent storage structures and other construction activities related to the source operation.  10 CSR 10-6.020(2)(C)(22); see also 42 U.S.C. § 7479(2)(c); 40 C.F.R. § 52.21(b)(8).

31.  The Missouri SIP, 10 CSR 10-6.060(1)(C), applies to installations throughout Missouri with the potential to emit any pollutant in an amount equal to or greater than the *de minimis* levels.  This rule states that no owner or operator shall commence construction or modification of any installation of any covered installation, begin operation after that construction or modification, or begin operation of any installation which has been shut down longer than five years without first obtaining a permit from the permitting authority under 10 CSR 10-6.060.  10 CSR 10-6.060(1)(C).

32.  The Missouri SIP, 10 CSR 10-6.060(8), applies to permits issued to installations in attainment and unclassifiable areas.  This rule states that applicants for permits for construction or major modification of any installation in a category named in 10 CSR 10-6.020(3)(B), Table 2, and that have potential to emit of one hundred tons per year or more of any pollutant shall apply BACT and conduct a preapplication air quality impacts analysis.  10 CSR 10-6.060(8).  Primary lead smelters are among the named categories in 10 CSR 10-6.020(3)(B), Table 2.

33.  The Missouri SIP, 10 CSR 10-6.060(7), applies to sources in nonattainment areas.  10 CSR 10-6.060(7)(B) states that a permit shall not be issued for the construction or major modification of an installation with the potential to emit the nonattainment pollutant in amounts equal to or greater than the *de minimis* levels; for an installation or modification with the potential to emit one hundred tons or more or other nonattainment pollutants; or for a major modification of an installation with the potential to emit one hundred tons or more of the

DRRC multimedia Complaint

nonattainment pollutant, unless certain requirements are met.  These requirements include,

among other things, ensuring that by the time operation commences sufficient emissions offsets

are obtained to ensure reasonable further progress toward attainment of the applicable NAAQS,

installing and operating pollution control equipment or processes which meet the lowest

achievable emission rate ("LAER") for the nonattainment pollutant, and documentation

establishing that all installations in Missouri which are owned or operated by the applicant are

subject to emission limitations and are in compliance, or are on a schedule for compliance, with

all applicable requirements.  10 CSR 10-6.060(7)(B)(1) (1994) and (1999); 10 CSR 10-

6.060(7)(C)(1) and (2) (1994) and (1999); see also 40 C.F.R. § 51.165(a)(3) and Part 51, App. S

sec. IV. D.

## 6.  Other Missouri SIP Requirements

### i.  Particulate Matter Emissions

34.  The Missouri SIP includes 10 CSR 10-6.400, ("Restriction of Emission of Particulate

Matter from Industrial Processes"), which was approved by EPA on April 4, 2001, and

subsequently revised on November 30, 2001, pursuant to Section 110 of the CAA, 42 U.S.C.

§ 7410.

35.  The regulation at 10 CSR 10-6.400 provides an emission limit for particulate matter

stated in 10 CSR 10-6.400(3)(A), but does not specify the method of compliance with the limit.

The regulation also requires that all records of any tests performed to determine the amount of

particulate matter emitted from a unit shall be kept on-site and available for inspection for five

years following the test date.  10 CSR 10-6.400 (4) and (5).

DRRC multimedia Complaint

### ii. Emissions Data

36.  The Missouri SIP includes 10 CSR 10-6.110 ("Submission of Emission Data, Emission Fees and Process Information"), which was approved by EPA on April 17, 1986, see 51 Fed. Reg. 13000 and 40 C.F.R. § 52.1322(c)(53)(i).

37.     Pursuant to 10 CSR 10-6.110, the owner or operator of any installation that is a source of any air contaminant must collect, record, maintain and report certain emission and process data to the State using Emissions Inventory Questionnaire ("EIQ") forms.  This requirement applies to any installation that is required to obtain a permit under 10 CSR 10-6.060 or 10 CSR 10-6.065.

### 7.  Clean Air Act - New Source Performance Standards

38.  Section 111(b)(1)(A), 42 U.S.C. § 7411(b)(1)(A), of the CAA requires EPA to publish (and periodically revise) a list of categories of stationary sources that emit or may emit any air pollutant, including those categories that, in EPA's judgment, cause or contribute significantly to air pollution which may reasonably be anticipated to endanger public health or welfare.

39.  Once a category is included on the list, Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), requires the Administrator of EPA to promulgate regulations establishing Federal standards of performance for new sources of air pollutants within each category.  These standards are known as the New Source Performance Standards.

40.  "New sources" as defined in Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2), are stationary sources, the construction or modification of which is commenced after the

DRRC multimedia Complaint

publication of the NSPS regulations or proposed NSPS regulations prescribing a standard of

performance applicable to such sources.

41.  "Stationary source" is defined as a building, structure, facility or installation which

emits or may emit any air pollutant.  42 U.S.C. § 7411(a)(3); 40 C.F.R. § 60.2.

42.  Pursuant to Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), EPA has

promulgated general NSPS provisions, codified at 40 C.F.R. Part 60, Subpart A, §§ 60.1-60.19,

that apply to owners or operators of any stationary source that contains an "affected facility"

subject to regulation under 40 C.F.R. Part 60.

43.  The provisions of 40 C.F.R. Part 60 apply to the owner or operator of any stationary

source which contains an affected facility, the construction or modification of which is

commenced after the publication in Part 60 of any standard (or, if earlier, the date of publication

of any proposed standard) applicable to that facility.  40 C.F.R. § 60.1.

44.  EPA has identified primary lead smelters as one category of stationary sources that

cause, or contribute to, air pollution that may reasonably be anticipated to endanger public health

or welfare.  42 U.S.C. § 7411(b)(1)(A); 40 C.F.R. Part 60, Subpart R, §§ 60.180-60.186 ("NSPS

Subpart R").  Pursuant to Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), on

January 15, 1976, EPA promulgated new source performance standards for primary lead

smelters.  41 Fed. Reg. 2332.  These requirements are codified at NSPS Subpart R.

45.  Under NSPS Subpart R, primary lead smelter means "any installation or any

intermediate process engaged in the production of lead from lead sulfide ore concentrates

through the use of pyrometallurgical techniques."  40 C.F.R. § 60.181(a).

DRRC multimedia Complaint

46.  The provisions of NSPS Subpart R are applicable to the following "affected facilities" at primary lead smelters: sintering machine, sintering machine discharge end, blast furnace, dross reverberatory furnace, electric smelting furnace, and converter.  40 C.F.R. § 60.180(a).  Any facility listed under 40 C.F.R. § 60.180(a) that commences construction or modification after October 16, 1974, is subject to the requirements of NSPS Subpart R. 40 C.F.R. § 60.180(b).

47.  Under NSPS Subpart R, sintering machine means "any furnace in which a lead sulfide ore concentrate charge is heated in the presence of air to eliminate sulfur contained in the charge and to agglomerate the charge into a hard porous mass called 'sinter.'"  40 C.F.R. § 60.181(b).

48.  Under NSPS Subpart R, sintering machine discharge end means "any apparatus which receives sinter as it is discharged from the conveying grate of a sintering machine."  40 C.F.R § 60.181(d).

49.  An "existing facility" is "any apparatus of the type for which a standard is promulgated in [40 C.F.R. Part 60], and the construction or modification of which was commenced before the date of proposal of that standard . . .." 40 C.F.R. § 60.2.

50.  40 C.F.R. § 60.2 defines "affected facility" as any apparatus to which a standard is applicable.

51.  "An existing facility, upon reconstruction, becomes an affected facility, irrespective of any change in emission rate."  40 C.F.R. § 60.l5(a).

52.  "'Reconstruction' means the replacement of components of an existing facility to such an extent that: (1) The fixed capital cost of the new components exceeds 50 percent of the

DRRC multimedia Complaint

fixed capital cost that would be required to construct a comparable entirely new facility, and (2) It is technologically and economically feasible to meet the applicable standards set forth in this part." 40 C.F.R. § 60.l5(b).

53.  Pursuant to 40 C.F.R. § 60.7(a)(4), any owner or operator of an affected facility subject to an NSPS must furnish written notification to EPA of any physical or operational change to an existing facility which may increase the emission rate of any air pollutant to which a standard applies, postmarked 60 days or as soon as practicable before the change is commenced, with information describing the precise nature of the change, present and proposed emission control systems, productive capacity of the facility before and after the change, and the expected completion date of the change.

54.  Pursuant to 40 C.F.R. § 60.8, the owner or operator of an affected facility must conduct a performance test in accordance with 40 C.F.R. § 60.186 within 60 days after achieving the maximum production rate at which the affected facility will be operated, but not later than 180 days after initial startup of such facility, and furnish EPA a written report of the results of such performance test.

55.  Pursuant to 40 C.F.R. § 60.183(a), the owner or operator of a primary lead smelter subject to NSPS Subpart R may not discharge into the atmosphere from any sintering machine, electric smelting furnace, or converter gases which contain $SO_2$ in excess of 0.065 percent by volume.

56.  Pursuant to 40 C.F.R. § 60.185(a)(2), the owner or operator of a primary lead smelter subject to the NSPS Subpart R must install and operate a continuous monitoring system to

DRRC multimedia Complaint

monitor and record sulfur dioxide emissions discharged into the atmosphere from any sintering machine, electric furnace or converter subject to 40 C.F.R. § 60.183.

57.  In addition, the owner or operator of a primary lead smelter subject to NSPS Subpart R must submit semi-annual reports to EPA containing certain emissions information.  40 C.F.R. §§ 60.7; 60.l85(c).

58.  Section 111(e) makes it unlawful for any owner or operator of any new source subject to the NSPS to operate the source in violation of the standard after the effective date of the NSPS applicable to such source.  42 U.S.C. § 7411(e).

### 8.  Clean Air Act - Title V/Part 70 Operating Permit Program

59.  Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources."  The purpose of Title V is to ensure that all "applicable requirements" for compliance with the CAA, including PSD, NSR, and NSPS requirements, are collected in one place.

60.  Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), provides that no source may operate without a Title V permit after the effective date of any permit program approved or promulgated under Title V of the CAA.  EPA first promulgated regulations governing state operating permit programs on July 21, 1992.  See 57 Fed. Reg. 32295; 40 C.F.R. Part 70.  EPA promulgated regulations governing the Federal operating permit program on July 1, 1996.  See 61 Fed. Reg. 34228; 40 C.F.R. Part 71.

61.  Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a permit program to be administered by any state or local air pollution control agency.  57 Fed.

DRRC multimedia Complaint

Reg. 32250 (July 21, 1992). These regulations are codified at 40 C.F.R. Part 70.   Section 503

of the CAA, 42 U.S.C. § 7661b, sets forth the requirement to submit a timely, accurate, and

complete application for a permit, including information required to be submitted with the

application.

62. Section 504(a) of the CAA, 42 U.S.C. § 7661c(a), requires that each Title V permit

include enforceable emission limitations and standards, a schedule of compliance, and other

conditions necessary to assure compliance with applicable requirements, including those

contained in a state implementation plan, including any applicable PSD requirement to comply

with BACT and any applicable NSR requirement to comply with LAER.  42 U.S.C. § 7661c(a).

63. The Missouri Title V operating permit program was approved by EPA on May 14,

1997 (62 Fed. Reg. 26405-01), pursuant to Section 502 of the CAA, 42 U.S.C. § 7661.

64. The Missouri regulations governing the Title V permitting program are codified at 10

CSR 10-6.065(6), and are federally enforceable pursuant to Section 113(a)(3).

65. All sources subject to the Title V requirements must have a permit to operate that

assures compliance by the source with all applicable requirements. See also 10 CSR 10

6.065(6)(C); 40 C.F.R. § 70.1(b).

66. "Applicable requirement" include "(1) Any standard or other requirement provided

for in the applicable implementation plan approved or promulgated by EPA through rulemaking

under title I of the Act that implements the relevant requirements of the Act, including revisions

to that plan promulgated in part 52 of this chapter . . ." 40 C.F.R § 70.2; 10 CSR 10

6.060(2)(A)(27).

DRRC multimedia Complaint

67.  No source subject to the Title V requirements may operate without a permit as specified in the Act.  10 CSR 10 6.065(1)(D); 40 C.F.R. § 70.7(b).

68.  Sources must submit timely and complete permit applications for Title V permits with required information that must be submitted and 40 C.F.R. § 70.6 specifies required permit content. 10 CSR 10 6.065(6)(B)(1); 40 C.F.R. § 70.5(a) and (c).

69. "Any applicant who fails to submit any relevant facts or who has submitted incorrect information in a permit application shall, upon becoming aware of such failure or incorrect submittal, promptly submit such supplementary facts or corrected information.  In addition, an applicant shall provide additional information as necessary to address any requirements that become applicable to the source after the date it filed a complete application but prior to release of a draft permit."  10 CSR 10 6.065(6)(B)(2); 40 C.F.R. § 70.5(b).

70.  The State of Missouri v. The Doe Run Resources Company, Case No. 07JECC00552, in the Circuit Court of Jefferson County, Missouri, Consent Judgment (May 24, 2007) ("2007 Consent Judgment"), is incorporated by reference into Doe Run's Title V/Part 70 Operating Permit No. 2006-011B for Herculaneum Lead Smelter Facility as Condition PW008. The Consent Judgment requires the sinter wheel machine at the Herculaneum Lead Smelter Facility to be continuously operated and maintained at 15,000 actual cubic feet per minute, including times when the sinter machine is not operational, unless it interferes with work being performed on the equipment.  2007 Consent Judgment, Section 2.A.4.  Beginning on or before April 7, 2008, the rate of wheel tunnel ventilation shall be continuously monitored. Id.  As an alternative to continuously measuring flow rates, Doe Run may develop a calculation for the relationship of fan amperage and duct damper settings to ventilation rates and continuously

DRRC multimedia Complaint

record fan amperages.  Id.  Doe Run shall submit the calculation to MDNR for review and

approval.  Id.  A file recording fan amperages, fan outages, and ventilation rate monitoring shall

be maintained as required by the 2007 Consent Judgment.  Id.

### 9.  Clean Air Act - National Emission Standards for Hazardous Air Pollutants Provisions

71.    Congress established a list of hazardous air pollutants ("HAPs") under the CAA.  42

U.S.C. § 7412(b)(1).  Pursuant to Section 112(b)(2) of the CAA, 42 U.S.C. § 7412(b)(2), EPA

periodically reviews the list of hazardous pollutants and, where appropriate, revises the list by

rule.

72.    Section 112(c) of the CAA, 42 U.S.C. § 7412(c), requires that EPA publish a list of

categories and subcategories of major sources and air sources of hazardous air pollutants listed

pursuant to Section 112(b) of the CAA, 42 U.S.C. § 7412(b).

73.    Pursuant to Section 112(a)(1) of the CAA, 42 U.S.C. § 7412(a)(1), a "major source"

is a stationary source that emits or has the potential to emit more than 10 tons per year of any

single HAP or more than 25 tons per year of any combination of HAPs.  An "area source" is any

stationary source of HAPs that is not a major source.  Section 112(a)(2) of the CAA; 42 U.S.C.

§ 7412(a)(2).  A "stationary source" is any building, structure, facility, or installation that emits

or may emit any air pollutant.  Section 112(a)(3) of the CAA, 42 U.S.C. § 7412(a)(3).

74.    Section 112(d) of the CAA, 42 U. S.C. § 7412(d), requires EPA to promulgate

emission standards for each category and subcategory of major sources and area sources of

HAPs.  The standards promulgated pursuant to this section, codified at 40 C.F.R. Part 63, are

known as National Emission Standards for Hazardous Air Pollutants.

DRRC multimedia Complaint

### NESHAPs for Primary Lead Smelters

75.  The NESHAPs for Primary Lead Smelters, set forth at 40 C.F.R. Part 63, Subpart

TTT ("Subpart TTT"), were promulgated on June 4, 1999.  64 Fed. Reg. 30194 (June 4, 1999).

76.  The requirements of Subpart TTT "apply to the following affected sources at primary

lead smelters: sinter machine, blast furnace, dross furnace, process fugitive sources, and fugitive

dust sources" as defined in 40 C.F.R. § 63.1542.  40 C.F.R. § 63.1541.

77.  "Primary lead smelter means any facility engaged in the production of lead metal

from lead sulfide ore concentrates through the use of pyrometallurgical techniques."  40 C.F.R.

§ 63.1542.

78.  For the purposes of 40 C.F.R. Part 63, an affected source "means the collection of

equipment, activities, or both within a single contiguous area and under common control that is

included in a section 112(c) source category or subcategory for which a section 112(d) standard

or other relevant standard is established pursuant to section 112 of the Act."  40 C.F.R. § 63.2.

79.  The reporting requirements provision of Subpart TTT requires the owner or operator

of a primary lead smelter to submit semi-annual reports containing the information specified in

40 C.F.R. § 63.1549(e)(1) through (e)(7).  40 C.F.R. § 63.1549(e).

80.  Primary lead smelters are also subject to the NESHAP General Provisions, set forth

at 40 C.F.R. Part 63, Subpart A.  40 C.F.R. § 63.1541(b).  The owner or operator of a primary

lead smelter must comply with all of the recordkeeping and reporting requirements of 40 C.F.R.

§ 63.10 of Subpart A.  40 C.F.R. § 63.1549.  The general reporting requirements of 40 C.F.R.

§ 63.10 require the owner or operator of an affected source subject to reporting requirements

DRRC multimedia Complaint

under 40 C.F.R. Part 63 to submit, among other things, periodic startup, shutdown, and

malfunction reports.  40 C.F.R. § 63.10(d)(5).

81.  Each owner or operator of an existing primary lead smelter was required to comply

with the requirements of Subpart TTT by May 4, 2001.  40 C.F.R. § 63.1545(a).

82.  Missouri's regulations addressing NESHAPS can be found at 10 CSR 10-6.075

(Maximum Achievable Control Technology Regulations).  The provisions of 40 C.F.R. Part 63

promulgated as of June 30, 2006, including Subpart TTT, are incorporated by reference in 10

CSR 10-6.075.

### 10.  Clean Air Act - Enforcement Provisions

83.  Section 113(a) (1) of the CAA, 42 U.S.C. § 7413(a)(1), provides that:

Whenever, on the basis of any information available to the Administrator, the
Administrator finds that any person has violated or is in violation of any
requirement or prohibition of an applicable implementation plan or permit, the
Administrator shall notify the person and the State in which the plan applies of
such finding. At any time after the expiration of 30 days following the date on
which such notice of a violation is issued, the Administrator may . . .

*   *   *

(C) bring a civil action in accordance with subsection (b) of this section.

84.  Section 113(a) (3) of the CAA, 42 U.S.C. § 7413(a)(3), provides that:

Except for a requirement or prohibition enforceable under the preceding
provisions of this subsection, whenever, on the basis of any information available
to the Administrator, the Administrator finds that any person has violated, or is in
violation of, any other requirement or prohibition of this subchapter, section 7603
of this title, subchapter IV-A, subchapter V, or subchapter VI of this chapter,
including, but not limited to, a requirement or prohibition of any rule, plan, order,
waiver, or permit promulgated, issued, or approved under those provisions or
subchapters . . . the Administrator may-- . . .

*   *   *

DRRC multimedia Complaint

(C) bring a civil action in accordance with subsection (b) of this section . . .

85.  Sections 113(b)(1) and (b)(2) of the CAA, 42 U.S.C. §§ 7413(b)(1) and (b)(2)

authorize the Administrator to initiate a judicial enforcement action for a permanent or

temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation,

against any person who has violated, or is in violation of, any requirement or prohibition of an

applicable implementation plan or permit, or any other requirement of the CAA.

86.  The maximum civil penalty per day for each such violation has been increased to

$27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004,

$32,500 per day for each violation occurring on or after March 16, 2004 but before January 13,

2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to

the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as

amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed.

Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part

19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

87.  Section 643.151.1, RSMo makes it unlawful for any person to cause or permit any air

pollution by emission of any air contaminant from any air contaminant source in violation of the

Law or any rule promulgated by the Air Conservation Commission.

88.  Section 643.075, RSMo makes it unlawful for any person to construct an air

contaminant source without a construction permit, and Section 643.078, RSMo makes it

unlawful for any person to operate an air contaminant source without an operating (Part 70 or

Title V) permit.

DRRC multimedia Complaint

**B.     CLEAN WATER ACT**: **Statutory and Regulatory Background**

89.  The CWA is designed to restore and maintain the chemical, physical and biological integrity of the nation's waters.  33 U.S.C. § 1251(a).

90.  To accomplish the objectives of the CWA, Section 301(a) of the CWA, 33 U.S.C. § 1311(a) prohibits the "discharge of pollutants" by any person except in compliance with certain sections of the CWA, including Sections 301 and 402, 33 U.S.C. §§ 1311 and 1342.

91.  The term "discharge" is defined to include the discharge of a pollutant or pollutants. 33 U.S.C. § 1362(16).

92.  The term "discharge of pollutants" is defined in Section 502(12) of the CWA, 33 U.S.C. § 1362(12), to mean "any addition of any pollutant to navigable waters from any point source…."

93.  The term "navigable waters" is defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), to mean "the waters of the United States, including the territorial seas."

94.  The term "point source" is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14), to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel . . . from which pollutants are or may be discharged."

95.  The term "pollutant" is defined to include solid waste, sewage, garbage, sewage sludge, munitions, chemical waste, biological materials, radioactive materials, heat, wrecked or discarded equipment, industrial, and agricultural waste discharged into water.  33 U.S.C. § 1362(6).

96. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the Administrator of the EPA may issue National Pollutant Discharge Elimination System permits to "persons" that

DRRC multimedia Complaint

authorize the discharge of any pollutant into navigable waters, but only in compliance with

Section 301 of the CWA, 33 U.S.C. § 1311, and such other conditions as EPA determines are

necessary to carry out the provisions of the CWA.

97.  Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C.

§ 1362(11), are restrictions established by a State or the Administrator on quantities, rates, and

concentrations of chemical, physical, biological, and other constituents which are discharged

from point sources into navigable waters, and may include schedules of compliance.  Effluent

limitations are among the conditions and limitations prescribed in NPDES permits issued under

Section 402(a) of the CWA, 33 U.S.C. § 1342(a).  No NPDES permit may be issued when the

imposition of conditions cannot ensure compliance with the applicable water quality standards of

all affected states.  40 C.F.R. § 122.4(d).

98.  A permittee shall at all times properly operate and maintain all facilities and systems

of treatment and control which are installed or used by the permittee to achieve compliance with

the conditions of the NPDES permit.  40 C.F.R. § 122.41(e).

99.  Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that a State may establish

its own permit program and, after receiving approval of its program by the EPA, may issue

NPDES permits.

100.  The State of Missouri has established its own NPDES-equivalent permit program

and received EPA approval to administer the program in October 1974.  NPDES permits issued

by the State of Missouri are entitled State Operating Permits.

101.  When a State is authorized to administer an NPDES permit or an equivalent state

operating permit program pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b), the

DRRC multimedia Complaint

Administrator retains the authority pursuant to Section 402(i) of the CWA, 33 U.S.C. § 1342(i), to take enforcement action under Section 309 of CWA, 33 U.S.C. § 1319.

102.  A person may request authorization to discharge under an individual NPDES permit or an equivalent state operating permit by submitting an application to EPA or an authorized State in accordance with the requirements of 40 C.F.R. § 122.21.  A facility becomes authorized to discharge upon the effective date of the issued individual NPDES permit or equivalent state operating permit.

103.  Pursuant to 40 C.F.R. § 122.46(a), NPDES or equivalent state operating permits are effective for a fixed term which cannot exceed five years from the effective date of the permit.  Such permits may be renewed after submission of an application to EPA or the authorized State in accordance with the requirements of 40 C.F.R. § 122.21.  10 CSR 20-6.010.

104.  Coverage under an expired permit issued by the State of Missouri will be continued if the permittee timely applies for renewal, and the agency has not made a decision by the expiration date.  40 C.F.R. § 122.6(a); 10 CSR 20-6.010(10)(E).  Renewal applications are due 180 days prior to expiration.  40 C.F.R. § 122.21(d); 10 CSR 20-6.010(5)(C).

105.  A permittee may only challenge an NPDES permit or equivalent state operating permit within thirty days of its issuance.  40 C.F.R. § 124.19; 10 CSR 20-6.020(5).  If a permit is appealed within the thirty-day time period, the appellant may request a stay or hold on the contested permit provision.  40 C.F.R. § 122.21(d); 10 CSR 20-6.020(8).  The permitting agency has discretion in determining whether to stay the permit condition while the appeal proceeds, and to determine whether no conditions are applicable during the appeal period or whether the conditions in effect during any previous permit are applicable.  40 C.F.R. § 124.16; 10 CSR 20-

DRRC multimedia Complaint

6.010(5)(C).  For Missouri State Operating Permit appeals, determinations of whether or not to grant a stay are made by the Missouri Administrative Hearing Commission.  Any facility holding an existing NPDES permit or equivalent state operating permit must, to the extent conditions of any new permit are stayed under 40 C.F.R. § 124.16, "comply with the conditions of the existing permit which correspond to the stayed conditions, unless compliance with the existing conditions would be technologically incompatible with compliance with other conditions of the new permit which have not been stayed."  40 C.F.R. § 124.16(c)(2).

106.  Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes commencement of a civil action for appropriate relief, including a permanent or temporary injunction, when any person is in violation of Sections 301, 302, 306, 307, 308, 318, or 405 of the CWA, 33 U.S.C. §§ 1311, 1312, 1316, 1317, 1318, 1328 or 1345, or is in violation of any permit condition or limitation implementing any of those sections in a permit under Section 402 of the CWA, 33 U.S.C. § 1342.

107.  Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Sections 301, 302, 306, 307, 308, 318 or 405 of the CWA, 33 U.S.C. §§ 1311, 1312, 1316, 1317, 1318, 1328 or 1345, or any permit condition or limitation implementing any of those sections in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation.

108.  The maximum civil penalty per day for each such violation has been increased to $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to

DRRC multimedia Complaint

the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as

amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed.

Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part

19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

109.  Operating a water contaminant source, a wastewater collection system, which

discharges untreated wastewater into waters of the State, without a Missouri State Operating

Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and

(5)(A).

110.  Placing or causing or permitting to be placed a water contaminant in a location

where it is reasonably certain to cause pollution to waters of the State is a violation of

§§ 644.051.1(1) and 644.076.1, RSMo.

111.  Discharging water contaminants into waters of the State which reduce the water

quality of such waters below the water quality standards established by the Missouri Clean Water

Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

112.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten

thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants

violated the Missouri Clean Water Law.

**C.    RESOURCE CONSERVATION AND RECOVERY ACT: Statutory and
       Regulatory Background**

113.  Federal regulation of hazardous waste is primarily based on the Resource

Conservation and Recovery Act, enacted on October 21, 1976, to amend the Solid Waste

Disposal Act, and on the Hazardous and Solid Waste Amendments ("HSWA"), enacted by

DRRC multimedia Complaint

Congress in 1984 to further amend the Solid Waste Disposal Act.  RCRA establishes a "cradle-to-grave" program to be administered by the Administrator of EPA for regulating the generation, transportation, treatment, storage, and disposal of hazardous waste.  42 U.S.C. §§ 6901 et seq.

114.  Pursuant to its authority under RCRA, EPA has promulgated regulations at 40 C.F.R. Parts 260 through 272 applicable to generators, transporters, and treatment, storage and disposal facilities.  These regulations provide detailed requirements to govern the activities of those who generate hazardous waste and those who are lawfully permitted to store, treat and dispose of hazardous waste.  They generally prohibit treatment, storage, and disposal ("TSD") of hazardous waste without a permit or equivalent "interim status."  42 U.S.C. § 6925.  They also prohibit land disposal of certain hazardous wastes.  40 C.F.R. Part 268.

115.  Pursuant to Section 3006 of RCRA, 42 U.S.C. § 6926, and 40 C.F.R. Part 271, the EPA may authorize a state to administer a state hazardous waste program in lieu of the federal program when it deems the state program to be equivalent to the federal program.

116.  EPA granted final authorization to the State of Missouri to administer its hazardous waste program in lieu of the federal program on November 20, 1985, 50 Fed. Reg. 4770, and has approved subsequent revisions to the program.

117.  Pursuant to its authority under Section 3014 of RCRA, 42 U.S.C. § 6935, EPA has promulgated regulations at 40 C.F.R. Part 279 applicable to generators of used oil.  These regulations provide detailed requirements to govern the activities of those who generate used oil.  The effective date of Missouri's approved used oil recycling program, part of its approved RCRA program, is August 28, 1994.

DRRC multimedia Complaint

118.  With the addition of Section 3006(g) of RCRA, 42 U.S.C. § 6926(g), new requirements imposed pursuant to the authority of the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 to 6992k, are immediately applicable in the authorized States upon the federal effective date.

119.  The Missouri Department of Natural Resources is the State agency designated to carry out the authorized RCRA program in Missouri.  Missouri has promulgated regulations that incorporate by reference EPA's RCRA regulations and impose additional requirements. 10 CSR 25-3.260, 25-4.261, 25-5.262, 25-6.263, 25-7.264 through 7.270, and 25-11.279.

120.  Specifically, the federal hazardous waste program is managed in the State of Missouri pursuant to the Missouri Hazardous Waste Law, §§ 260.350-206.434, RSMo and the regulations promulgated thereunder.

121.  EPA's and Missouri's solid and hazardous waste laws and regulations (as relevant to this lawsuit) require that all generators of hazardous waste must:

- determine whether generated solid wastes are hazardous, 40 C.F.R. § 262.11, incorporated by reference at 10 CSR 25-5.262(1);

- not accumulate hazardous waste on-site at all, except that it may do so for no more than 180 days if it generates less than 1,000 kilograms ("kgs") of hazardous waste in a calendar month and no more than ninety (90) days if it generates greater than 1,000 kgs of hazardous waste in a calendar month, if it adheres to strict regulatory requirements, 40 C.F.R. § 262.34(a), as incorporated by reference at 10 CSR 25-5.262(1).  Any generator that either fails to comply with these requirements or exceeds the applicable accumulation period (90-day or 180-day) is considered to be

DRRC multimedia Complaint

an operator of a storage facility and must obtain either (1) a permit or (2) interim status. 42 U.S.C.§ 6925; § 260.390, RSMo; 40 C.F.R. § 262.34(b), incorporated by reference at 10 CSR 25-5.262(1);

• store, transport, and dispose of hazardous waste only in compliance with a permit or interim status, 42 U.S.C. § 6925; § 260.390, RSMo;

• utilize containment systems with impervious coatings that are free from gaps or cracks, 40 C.F.R. §§ 265.171, 265.192 Subpart J; 10 CSR 25-5.262(2)(C)2.D;

• properly label and date all hazardous waste on-site, 40 C.F.R. § 262.34(a)(2) and (a)(3), as incorporated by reference at 10 CSR 25-5.262(1);

• clean up used oil spills promptly, 40 C.F.R. § 279.22(d), as incorporated by reference at 10 CSR 25-11.279(1), label used oil containers, 40 C.F.R. § 279.22(c)(1), as incorporated by reference at 10 CSR 25-11.279(1), and maintain used oil containers in good condition, 40 C.F.R. § 279.22(d), as incorporated by reference at 10 CSR 25-11.279(1);

• inspect hazardous waste containers weekly to identify leaks and deterioration caused by corrosion or other factors, 40 C.F.R. § 262.34(a)(1)(i), as incorporated by reference at 10 CSR 25-5.262(1), referencing 40 C.F.R. § 265.174, as incorporated by reference at 10 CSR 25-7.265(1);

• make arrangements with local emergency personnel to ensure they can respond properly to hazardous waste emergencies, 40 C.F.R. §§ 262.34(a)(4), as incorporated by reference at 10 CSR 25-5.262(1), referencing 40 C.F.R. Part 265, Subpart C, as incorporated by reference at 10 CSR 25-7.265(1);

DRRC multimedia Complaint

- maintain a contingency plan, 40 C.F.R. § 262.34(a)(4), as incorporated by reference at 10 CSR 25-5.262(1), referencing 40 C.F.R. Part 265, Subpart D, which is incorporated by reference at 10 CSR 25-7.265(1);

- maintain and operate their facility to minimize the possibility of a fire, explosion, or release of hazardous waste which could threaten human health or the environment, 40 C.F.R. § 262.34(a)(4), as incorporated by reference at 10 CSR 25-5.262(1), referencing 40 C.F.R. Part 265, Subpart C, which is incorporated by reference at 10 CSR 25-7.265(1);

- maintain certain records, 40 C.F.R. Part 262 Subpart D, as incorporated by reference at 10 CSR 25-2.262(1) and modified at 10 CSR 25-5.262(2)(D); and

- comply with hazardous waste land disposal restrictions set forth at 40 C.F.R. Part 268, as incorporated by reference at 10 CSR 25-7.268(1).

122.  At the core of these requirements is the obligation to determine whether wastes are hazardous.  The regulations set forth a three step process for characterizing wastes.  40 C.F.R. § 262.11, as incorporated by reference at 10 CSR 25-5.262(1).  First, the generator must determine if the waste is excluded from regulation under 40 C.F.R. § 261.4, as incorporated by reference at 10 CSR 25-4.261(1).  Second, if the waste is not excluded, the generator must determine if the waste has already been determined by EPA to be hazardous, i.e., whether it is a "listed" hazardous waste set forth in Subpart D of 40 C.F.R. Part 261, which is incorporated by reference at 10 CSR 25-4.261(1).  Listed hazardous wastes that EPA has "found to be fatal to humans in low doses," highly toxic to related animals at low doses, "or [are] otherwise causing or significantly contributing to an increase in serious irreversible, or incapacitating reversible,

DRRC multimedia Complaint

illness" are "acute hazardous wastes."  Third, if the waste is not "listed," the generator must

determine whether the waste fails any of the tests set forth in Subpart C of 40 C.F.R. Part 261, as

incorporated by reference at 10 CSR 25-4.261(1) (or otherwise approved by EPA), i.e., whether

it is a "characteristic" hazardous waste because it exhibits any of the characteristics of

ignitability, reactivity, corrosivity, or toxicity.

123.  Pursuant to 40 C.F.R. § 260.10, as incorporated by reference at 10 CSR 25-3.260, a

Small Quantity Generator is a generator who generates less than 1,000 kg of hazardous waste in

a calendar month.

124.  Pursuant to 40 C.F.R. § 268.2(c), as incorporated by reference at 10 CSR 25-

7.268(1), land disposal means:

> placement in or on the land, except in a corrective action management unit or
> staging pile, and includes, but is not limited to, placement in a landfill, surface
> impoundment, waste pile, injection well, land treatment facility, salt dome
> formation, salt bed formation, underground mine or cave, or placement in a
> concrete vault, or bunker intended for disposal purposes.

125.  Pursuant to Sections 3008(a) and (g) and 3006(g) of RCRA, 42 U.S.C. §§ 6928(a)

and (g) and 6926(g), the United States may enforce the federally-approved Missouri hazardous

waste program, as well as the federal regulations that remain effective in Missouri by filing a

civil action in United States District Court seeking injunctive relief and civil penalties not to

exceed $25,000 per day.

126.  The maximum civil penalty per day for each such violation has been increased to

$27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004,

$32,500 per day for each violation occurring on or after March 16, 2004 but before January 13,

2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to

DRRC multimedia Complaint

the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as

amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed.

Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part

19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

127.  Section 260.425.1, RSMo makes it unlawful for any person to violate the provisions

of the law, including its implementing regulations.

128.  Section 260.425, RSMo authorizes injunctive relief to prevent further violations of

the law and a civil penalty not to exceed ten thousand dollars ($10,000) for each day, or part

thereof, of the violation occurred or continues to occur.

## D.  RESOURCE CONSERVATION AND RECOVERY ACT SECTION 7003: Statutory and Regulatory Background

129.  RCRA Section 7003, 42 U.S.C. § 6973, provides in pertinent part:

[U]pon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court against any person (including . . . any past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or is contributing to such handling, storage, treatment, transportation, or disposal to restrain such person . . . [or] to order such person to take such other action as may be necessary, or both . . ..."

130.  A "solid waste," is defined by Section 1004(27) of RCRA, 42 U.S.C. § 6903(27),

as, "any... discarded material, including solid, liquid, semisolid, or contained gaseous material

resulting from industrial, commercial, mining, and agricultural operations..."

DRRC multimedia Complaint

131.  Lead-bearing material that has been spilled or otherwise released during transport, is a "discarded material" from "mining operations" and thus is a "solid waste" as defined by Section 1004 (27) of RCRA, 42 U.S.C. § 6903 (27).

132.  The authority to make a determination that an imminent and substantial endangerment exists has been delegated from the Administrator of EPA to the Regional Administrator by EPA Delegation Nos. 8-22-A and 8-22-C, dated May 11, 1994 and No. 8-23, dated March 6, 1986.

133.  Section 7003(b) of RCRA, 42 U.S.C. § 6973(b), authorizes the Administrator to bring a civil action to enforce any order of the Administrator under Section 7003(a) and to assess civil penalties against any person who willfully violates, or fails or refuses to comply with such order.

134.  The Court may assess civil penalties of up to $6,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $7,500 per day for each violation occurring on or after January 13, 2009, pursuant to Section 7003(b) of RCRA, 42 U.S.C. § 6973(b); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

## E.    EMERGENCY PLANNING AND COMMUNITY RIGHT TO KNOW ACT: Statutory and Regulatory Background

135.  EPCRA was enacted on October 17, 1986, as Title III of the Superfund

Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499 (1986) (codified at 42 U.S.C.

§§ 11002-11050).

136.  The purpose of EPCRA is to provide communities with information on potential

chemical hazards within their boundaries and to foster state and local emergency planning efforts

to control any accidental releases.  Emergency Planning and Community Right to Know

Programs, Interim Final Rule, 51 Fed. Reg. 41,570 (1986).

137.  To achieve this end, EPCRA mandates various notification requirements for

industrial and commercial facilities and mandates that the Governor of each state appoint

emergency response commissions and local emergency planning committees.  EPCRA

establishes a framework of state, regional, and local agencies designed to inform the public about

the presence of hazardous and toxic chemicals, and to provide for emergency response in the

event of a health-threatening release.  The local emergency planning committees are charged

with developing emergency response plans based on the information provided by facilities.

Sections 301-303 of EPCRA, 42 U.S.C. §§ 11001-11003.

138.  Sections 304(a) and (b) of EPCRA, 42 U.S.C. §§ 11004(a) and (b), require the

owner or operator of a "facility" at which a hazardous chemical is produced, used, or stored, and

at which there is a release of a reportable quantity of any hazardous substances, as defined by

CERCLA (hereafter "CERCLA Hazardous Substance") or EPCRA extremely hazardous

substance, to immediately notify the State Emergency Response Commission ("SERC") of any

DRRC multimedia Complaint

State likely to be affected by the release and the emergency coordinator for the Local Emergency

Planning Committee ("LEPC") for any area likely to be affected by the release.

139. A "facility" is defined at Section 329(4) of EPCRA, 42 U.S.C. § 11049(4), and

40 C.F.R. § 372.3 as:

> all buildings, equipment, structures and other stationary items
> which are located on a single site or on contiguous or adjacent sites
> and which are owned or operated by the same person . . ..

140. CERCLA Hazardous Substances are designated under the authority of Section 102

of CERCLA, 42 U.S.C. § 9602, and are listed in Table 302.4 of 40 C.F.R. § 302.4, where EPA

has established a Reportable Quantity, or "RQ" for each CERCLA Hazardous Substance.

141. Lead sulfate (PbSO4), Chemical Abstracts Service Registry Number ("CASRN")

7446-14-2, is a CERCLA Hazardous Substance, as defined under Section 101(14) of CERCLA,

42 U.S.C. § 9601(14), and 40 C.F.R. § 302.4, with an "RQ" of 10 pounds as listed in Table 302.4

of 40 C.F.R. § 302.4.

142. Under Section 313 of EPCRA, 42 U.S.C. § 11023, and the regulations promulgated

thereunder, the owner or operator of a facility subject to the requirements of Section 313 is

required annually to calculate and report to EPA various data regarding toxic chemicals at their

respective facilities during the preceding year.  Such data must include the "annual quantity of

the toxic chemical entering each environmental medium."  42 U.S.C. § 11023(g)(1)(c)(iv).  The

owner or operator is required to retain a copy of each report submitted pursuant to 40 C.F.R.

§ 372.30 for a period of three years from the date of the submission of the report.  40 C.F.R.

§ 372.10(a)(1).

DRRC multimedia Complaint

143.   Sections 325(b) and (c) of EPCRA, 42 U.S.C. §§ 11045(b) and (c), authorize

penalties of up to $25,000 per day for each day each violation of Sections 304 and 313 of

EPCRA, 42 U.S.C. §§ 11004 and 11023, continues.

144.   The maximum civil penalty per day for each such violation has been increased to

$27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004,

$32,500 per day for each violation occurring on or after March 16, 2004 but before January 13,

2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to

the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as

amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed.

Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part

19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

## F.   COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT: Statutory and Regulatory Background

145.   Section 102(a) of CERCLA, 42 U.S.C. § 9602(a), requires the Administrator of

EPA to publish a list of substances designated as hazardous substances which when released into

the environment may present substantial danger to public health or welfare or the environment,

and to promulgate regulations establishing that quantity of any hazardous substances, the release

of which shall be required to be reported under Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

146.   Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), as implemented by 40 C.F.R.

§ 302.6, requires, in relevant part, a person in charge of a facility, as soon as he/she has

knowledge of a release (other than a federally permitted release) of a hazardous substance from

DRRC multimedia Complaint

such facility in quantities equal to, or greater than the reportable quantity to immediately notify the National Response Center ("NRC") of such release.

147.  CERCLA Hazardous Substances designated under the authority of Section 102 of CERCLA, 42 U.S.C. § 9602, are listed in 40 C.F.R. § 302.4, Table 302.4, where EPA has established an RQ for each CERCLA hazardous substance.

148.  Specific to the instant case, lead sulfate (PbSO4), CASRN 7446-14-2, is designated at 40 C.F.R. § 302.4, Table 302.4, as a CERCLA Hazardous Substance with an RQ of 10 pounds per day.

149.  A "facility" is defined at Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), in pertinent part, as:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), . . . or (B). . . any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . ..

150.  Section 109(c)(1) of CERCLA, 42 U.S.C. § 9609(c)(1), provides that any person who violates the notice requirements of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), shall be liable to the United States for penalties of up to $25,000 per day for each day each violation of Section 103(a) of CERCLA continues.

151.  The maximum civil penalty per day for each such violation has been increased to $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as

DRRC multimedia Complaint

amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed.

Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part

19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

## VI.  GENERAL ALLEGATIONS

**A.     CLEAN AIR ACT: General Allegations**

### 1. BUICK MINE/MILL FACILITY

152.  At all times pertinent to this action, Doe Run has been and is the owner and

operator of a lead, zinc, and copper mine and mill located at HC1, Box 1390, Missouri Highway

Route KK, Boss, MO 65440 (referred to herein as the "Buick Mine/Mill Facility").

153.  At all times relevant to this action, the Buick Mine/Mill Facility was a major source

of regulated air pollutants within the meaning of the CAA, Title V, the Missouri Title V permit

program, and the Missouri SIP.

154.  At all times relevant to this action, the Buick Mine/Mill Facility was subject to the

requirements its Part 70 Operating Permit No. OP2003-011 which was issued on March 7, 2003,

and was scheduled to expire on March 4, 2008 ("Permit No. OP2003-011").

155.  On February 6 through 9, 2006, the National Enforcement Investigation Center

("NEIC"), EPA, and MDNR inspectors conducted a multimedia compliance inspection (the

"2006 Buick Mine/Mill Multimedia Inspection") at the Buick Mine/Mill Facility on behalf of

EPA, Region 7.

DRRC multimedia Complaint

### *Missouri Title V Operating Permit Violations - Pressure Drop Monitor*

156.   At all times relevant to this action, the Buick Mine/Mill Facility was subject to the requirements of 10 CSR 10-6.400.  The applicable requirements of 10 CSR 10-6.400 are incorporated into Permit No. OP2003-011.

157.   The Buick Mine/Mill Facility consists of an underground lead ore mine and a surface ore-concentrating mill.  It has two underground concrete batch plants.  Emission units EU0020 and EU0030 are identified in Permit No. OP2003-011 as the two underground concrete batch plants (concrete batch plant #1 and concrete batch plant #2, respectively).  There are two silos at each concrete plant.  The silos at the two concrete plants have baghouses to control particulate emissions.

158.   Permit No. OP2003-011 contains a number of conditions for emission units EU0020 and EU0030, pursuant to 40 C.F.R. § 70.6(a)(3)(B) and 10 CSR 10-6.065(6)(C)(1.)(C.)(I)(b), including a requirement to install a pressure drop monitor on the baghouses, maintain the pressure drop between one and six inches of water column, and record and document pressure drop readings, calibrations, and inspections conducted.

159.   During the 2006 Buick Mine/Mill Multimedia Inspection, NEIC inspected the concrete batch plants and associated bag houses (emission units EU0020 and EU0030).

160.   During the 2006 Buick Mine/Mill Multimedia Inspection Doe Run personnel admitted that no pressure gauges had been installed on emission units EU0020 and EU0030.  Therefore, Doe Run had not performed or documented pressure gauge readings, calibrations, or inspections.  Doe Run personnel indicated that they visually inspect the bag houses for emission

DRRC multimedia Complaint

units EU0020 and EU0030, but that those inspections and any other checks that might be performed are not documented.

161.  In 2004, and 2005 Doe Run submitted semiannual and/or annual certifications to the State of Missouri certifying that the Buick Mine/Mill Facility was in compliance with all terms of Permit No. OP2003-011.  Doe Run did not identify the Buick Mine/Mill Facility's noncompliance with the permit requirements for emission units EU0020 and EU0030.

162.  Doe Run failed to install the pressure drop monitor on the baghouses, maintain the pressure drop between one and six inches of water column, and record and document pressure drop readings, calibrations, and inspections conducted, as required by Permit No. OP2003-011.

### *Missouri Title V/Part 70 Operating Permit Violations - Notification*

163.  Permit OP2003-011, Section V, incorporates the requirements of 10 CSR 10-6.065(6)(C)8. (Operational Flexibility).  Pursuant to 10 CSR 10-6.065(6)(C)8., an installation that has been issued a Part 70 operating permit is not required to apply for or obtain a permit revision in order to make changes to the installation that are described in 10 CSR 10-6.065(6)(C)8.A. if the changes are not Title I modifications and the changes do not cause emissions to exceed emissions allowable under the permit, and the changes do not result in the emission of any air contaminant not previously emitted.  The installation must notify the permitting authority and the administrator at least seven (7) days in advance of these changes, except as allowed for emergency or upset conditions.

164.  The Buick Mine/Mill Facility has an underground portable screen and conveyor, and a surface portable conveyor.  Emission unit EU0010 is identified in Permit No. OP2003-011 as the surface crushing and screening system controlled by wet cyclone.

DRRC multimedia Complaint

165.  During the 2006 Buick Mine/Mill Multimedia Inspection facility personnel indicated that there were two wet cyclones for emission unit EU0010.  One wet cyclone was located in the crusher building and the other was in the screening building.  Doe Run admitted that both wet cyclones were removed in or around September/October 2005.

166.  During the 2006 Buick Mine/Mill Multimedia Inspection Doe Run admitted that it never notified the State of Missouri of the removal of the wet cyclone units at the Buick Mine/Mill Facility.

167.  Upon information and belief, removal of the wet cyclone units at the Buick Mine/Mill Facility did not occur as a result of emergency or upset conditions.

168.  Doe Run failed to notify the State of Missouri of the removal of the wet cyclone units as required by 10 CSR 10-6.065(6)(C)(8) and Section V of Permit No. OP2003-011.

### *Missouri SIP Violations - Emissions Inventory Questionnaire*

169.  Pursuant to Missouri SIP requirement found at 10 CSR 10-6.110(1)(A), Doe Run is required to submit an annual emissions inventory questionnaire ("EIQ") for the Buick Mine/Mill Facility as an installation with a 40 C.F.R. Part 70 operating permit under 10 CSR 10-6.065.  The reports must be completed on State supplied EIQ forms.  10 CSR 10-6.110(3)(A)3.

170.  The Missouri EIQ consists of required forms and supplemental worksheets.  The instructions for completing the Form 2.T Hazardous Air Pollutant ("HAP") Worksheet require that all HAP emissions be reported on Form 2.T of the EIQ if a total of twenty (20) pounds or more per year of Category 1 HAPs is emitted from an emission point.

171.  Pursuant to the instructions for completing the Form 2.T HAP Worksheet, lead compounds and nickel compounds are Category 1 HAPs.  See also 10 CSR 10-6.020(3)(C);

DRRC multimedia Complaint

Section 112(b) of the CAA, 42 U.S.C. § 7312(b).  Doe Run has reported lead emissions for the

Buick Mine/Mill Facility in amounts greater than twenty (20) pounds per year.  Therefore, Doe

Run was required to report all HAP emissions from the Buick Mine/Mill Facility on Form 2.T.

172.  Doe Run has reported only lead emissions in its annual EIQs submitted in calendar

years 2003 through 2005 for the Buick Mine/Mill Facility.

173.  Upon information and belief, other HAPs associated with crushing and grinding

lead ores at the Buick Mine/Mill Facility include chromium, manganese, nickel, arsenic,

selenium, cadmium, antimony, and mercury.

174.  Doe Run has reported nickel releases above twenty (20) pounds as part of its

Emergency Planning and Community Right-to-Know Toxics Release Inventory submissions for

the Buick Mine/Mill Facility in calendar years 2001 through 2005.

175.  Doe Run did not report nickel emissions as part of its EIQ submissions for the

Buick Mine/Mill Facility in calendar years 2003 through 2005.

176.  Doe Run listed the size of the tailings disposal pond (emission point EP-48) at the

Buick Mine/Mill Facility as 100 acres in its EIQ submissions in calendar years 2003 through

2005.  The tailings disposal pond emits particulate matter of ten (10) microns or less ($PM_{10}$).

Doe Run estimates its $PM_{10}$ emissions from the tailings disposal pond based on the size of the

pond.

177.  During the 2006 Buick Mine/Mill Multimedia Inspection, NEIC inspectors asked

Doe Run to verify the size of the tailings pond.  In documentation provided after the inspection,

Doe Run admitted that the tailings pond is approximately 500 acres.  Doe Run had

underestimated the $PM_{10}$ emissions by a factor of five.  Therefore, Doe Run submitted inaccurate

DRRC multimedia Complaint

$PM_{10}$ emissions from the tailings disposal pond in its EIQ submission for the Buick Mine/Mill

Facility in calendar years 2003 through 2005.

## 2. HERCULANEUM LEAD SMELTER FACILITY

178.  At all times relevant to this action, Doe Run has been and is the owner and operator

of the Herculaneum Lead Smelter facility located at 881 Main Street, Herculaneum, MO 63048

(referred to herein as the "Herculaneum Lead Smelter Facility") including all of the components

of the facility that are the subject of the claims for relief in this Complaint.

### *PSD and NNSR Violations*

179.  At all times relevant to this complaint, the Herculaneum Lead Smelter Facility was

a "major emitting facility" and "major stationary source," for $SO_2$ and lead within the meaning of

the CAA and the PSD regulations in the Missouri SIP because it is a primary lead smelter that

has the potential to emit in excess of 100 tons of $SO_2$ and lead per year.

### *NSPS Violations*

180.  The Herculaneum Lead Smelter Facility is a primary lead smelter within the

meaning of 40 C.F.R. § 60.181 of the CAA, including all of the components of the facility that

are the subject of the claims for relief in this Complaint.

181.  At all times relevant to this complaint, the sintering machine and sintering machine

discharge end units at the Herculaneum Lead Smelter Facility were each "affected facilities"

subject to the NSPS, Subpart R, 40 C.F.R. §§ 60.180-60.186.

DRRC multimedia Complaint

### *Title V Violations*

182.  At all times relevant to this complaint, the Herculaneum Lead Smelter Facility was a "major source" within the meaning of Title V of the CAA and the Missouri Title V program regulations (10 CSR 10-6.065).

183.  On November 10, 1999, Doe Run submitted a Title V permit application for the Herculaneum Lead Smelter Facility to MDNR.

184.  On December 17, 2007, MDNR issued Title V/Part 70 Operating Permit No. OP2006-011B to the Herculaneum Lead Smelter Facility.

185.  At all times relevant to this Complaint, the Herculaneum Lead Smelter Facility was subject to the requirements of the 2007 Consent Judgment incorporated by reference into Doe Run's Title V/Part 70 Operating Permit No. OP2006-011B as Condition PW008.

186.  On May 21, 2009, MDNR sent Doe Run a certified letter requesting the sinter wheel machine tunnel ventilation rate data in accordance with Section 2.A.F. of the 2007 Consent Judgment.

187.  On June 5, 2009, Doe Run submitted the sinter machine wheel tunnel amperage data with a cover letter for the period of December 4, 2008 to April 23, 2009.

188.  Upon review of the information, MDNR found that the data received showed Doe Run was not in compliance with the 2007 Consent Judgment.

189.  The data showed that the sinter wheel machine tunnel was not continuously operated and maintained at 15,000 actual cubic feet per minute.

190.  The data showed Doe Run failed to continuously measure the sinter wheel machine tunnel ventilation from April 7, 2008 forward.

DRRC multimedia Complaint

191.  The data showed fan amperages rather than flow rates as required by the 2007 Consent Judgment.  The use of fan amperages had not been approved by MDNR in accordance with the 2007 Consent Judgment.

### NESHAP Violations

192.  At all times relevant to this Complaint, the Herculaneum Lead Smelter Facility was subject to the requirements of 40 C.F.R. Part 63, Subpart TTT.

193.  The Herculaneum Lead Smelter Facility is a primary lead smelter within the meaning of 40 C.F.R. § 63.1542, including all the components of that facility that are the subject of the violations in this Complaint.

194.  The Herculaneum Lead Smelter Facility was an "existing lead smelter facility" within the meaning of 40 C.F.R. Part 63, Subpart TTT in 1999.

195.  Doe Run did not submit the reports required by 40 C.F.R. § 63.1549(e) and 40 C.F.R. § 63.10 from 2003 through 2008.  MDNR issued a Notice of Violation to Doe Run on January 11, 2008.

## B.    CLEAN WATER ACT: General Allegations

196.  As a result of their mining, milling and smelting operations, Defendants discharged wastewater, including stormwater, that contained various "pollutants" as that term is defined in Section 502(6) of the CWA, 33 U.S.C. § 1362(6), and 40 C.F.R. § 122.2, including, but not limited to, cadmium, copper, lead, thallium, zinc, biological oxygen demand, total suspended solids, pH, fecal coliform, and oil and grease.

DRRC multimedia Complaint

## 1. BRUSHY CREEK MINE/MILL FACILITY

197.  During the relevant time period, Doe Run owned and operated a lead, zinc and copper mine and mill located at Missouri Highway Route KK, Bunker, MO 63629 (referred to herein as the "Brushy Creek Mine/Mill Facility").

198.  At all relevant times, the Brushy Creek Mine/Mill Facility "discharged pollutants," as that term is defined in Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), and 40 C.F.R. § 122.2, to Lick Creek, a tributary of Bills Creek which flows to the West Fork of the Black River.

199.  Lick Creek, Bills Creek, and the West Fork of the Black River are each a "navigable water" and "water of the United States" as those terms are defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

200.  The Brushy Creek Mine/Mill Facility, including all outfalls and other conveyances, is a "point source" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

201.  Doe Run's discharge of pollutants from a point source or point sources at the Brushy Creek Mine/Mill Facility to waters of the United States is subject to Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and requires a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

202.  MDNR issued State Operating Permit No. MO-0001848 for the Brushy Creek Mine/Mill Facility, effective on September 5, 2003, with an expiration date of September 4, 2008.  The terms of State Operating Permit No. MO-0001848 remained in effect pending reissuance of the permit.  The permit was reissued effective February 26, 2010, with an expiration date of February 25, 2015, and modified on July 13, 2010.  Doe Run filed an appeal of

DRRC multimedia Complaint

certain provisions of that permit on March 26, 2010 and subsequently filed an amendment to the appeal.  No provisions of the permit were stayed pending resolution of the appeal.

203.  State Operating Permit No. MO-0001848 (attached as Appendix A-1) established effluent limitations, standard and special operating conditions, as well as monitoring and reporting requirements for discharges from each respective outfall at the Brushy Creek Mine/Mill Facility.

204.  On or about August 7 through 9, 2006, EPA's inspectors conducted a compliance sampling inspection (the "2006 Brushy Creek CWA Inspection") at the Brushy Creek Mine/Mill Facility on behalf of EPA, Region 7, pursuant to the authority of Section 308(a) of the CWA, 33 U.S.C. § 1318(a).

205.  EPA has reviewed the findings of the 2006 Brushy Creek CWA Inspection and Doe Run's operational records and Discharge Monitoring Reports ("DMRs") from the Brushy Creek Mine/Mill Facility to ascertain Doe Run's compliance with the CWA, the regulations promulgated thereunder, and Doe Run's Permit No. MO-0001848.

206.  On numerous occasions since at least October 9, 2004, Doe Run's Brushy Creek Mine/Mill Facility has discharged and continues to discharge pollutants from one or more outfalls in excess of applicable numeric effluent limitations in State Operating Permit No. MO-0001848 (List of Violations Based on Self-Reported Data attached as Appendix C).

207.  Based on a review of Doe Run's DMRs for the Brushy Creek Mine/Mill Facility filed since October 2004, Doe Run has violated State Operating Permit No. MO-0001848 WET requirements on numerous occasions at one or more outfalls (List of WET Violations Based on Self-Reported Data attached as Appendix B).  In addition, analysis of samples collected from

DRRC multimedia Complaint

Outfall 001 during EPA's 2006 Brushy Creek CWA Inspection demonstrated the discharge

failed to meet the WET limitations of Permit No. MO-0001848.

208.  During the 2006 Brushy Creek CWA Inspection, EPA inspectors observed that Doe

Run had failed to clearly mark Outfalls 001, 002, 003, and 004 in the field at the Brushy Creek

Mine/Mill Facility in violation of the CWA and Doe Run's Permit No. MO-0001848.

## 2.  BUICK MINE/MILL FACILITY

209.  During the relevant time period, Doe Run owned and operated the Buick Mine/Mill

Facility.

210.  At all relevant times, the Buick Mine/Mill Facility "discharged pollutants," as that

term is defined in Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), and 40

C.F.R. § 122.2, to Strother Creek.

211.  Strother Creek is a "navigable water" and "water of the United States" as those

terms are defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

212.  The Buick Mine/Mill Facility, including all outfalls and other conveyances, is a

"point source" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

213.  Doe Run's discharge of pollutants from a point source or point sources at the Buick

Mine/Mill Facility to waters of the United States is subject to Section 301(a) of the CWA, 33

U.S.C. § 1311(a), and requires a permit issued pursuant to Section 402 of the CWA, 33 U.S.C.

§ 1342.

214.  MDNR issued State Operating Permit No. MO-0002003 for the Buick Mine/Mill

Facility, effective on March 9, 1990, with an expiration date of March 8, 1995.  Doe Run

submitted a permit application dated September 8, 1994, and MDNR administratively extended

DRRC multimedia Complaint

the terms of State Operating Permit No. MO-0002003, pending reissuance of the permit.  The permit was reissued effective September 25, 2009, with an expiration date of September 24, 2014, and modified on July 13, 2010.  Doe Run filed an appeal of certain provisions of that permit on October 23, 2009 and subsequently filed an amendment to the appeal.  No provisions of the permit were stayed pending resolution of the appeal.

215.  State Operating Permit No. MO-0002003 (attached as Appendix A-2) established effluent limitations, standard and special operating conditions, as well as monitoring and reporting requirements for discharges from each respective outfall at the Buick Mine/Mill Facility.

216.  On or about February 28 through March 2, 2005, EPA's inspectors conducted a compliance sampling  inspection (the "2005 Buick Mine/Mill CWA Inspection") at the Buick Mine/Mill Facility on behalf of EPA, Region 7, pursuant to the authority of Section 308(a) of the CWA, 33 U.S.C. § 1318(a).  On March 2, 2005, at the conclusion of the 2005 Buick Mine/Mill CWA Inspection, EPA inspectors issued Doe Run a Notice of Potential State Operating Permit Violations ("NOPV").

217.  NEIC, EPA, and MDNR inspectors also conducted the 2006 Buick Mine/Mill Multimedia Inspection on February 6 through 9, 2006, during which CWA compliance was assessed.

218.  EPA has reviewed the findings of the 2005 Buick Min/Mill CWA Inspection, the 2006 Buick Mine/Mill Multimedia Inspection, and Doe Run's operational records and DMRs from the Buick Mine/Mill Facility to ascertain Doe Run's compliance with the CWA, the regulations promulgated thereunder, and Doe Run's Permit No. MO-0002003.

DRRC multimedia Complaint

219.  On numerous occasions since at least October 9, 2004, Doe Run's Buick Mine/Mill Facility discharged and continues to discharge pollutants from one or more outfalls in excess of applicable numeric effluent limitations in State Operating Permit No. MO-0002003 (List of Violations Based on Self-Reported Data attached as Appendix C).  In addition, analysis of samples collected from Outfall 002 during the 2005 Buick Mine/Mill CWA Inspection, demonstrated the discharge exceeded numeric effluent limitations for total zinc and were acutely toxic to one test organism.

220.  During the 2006 Buick Mine/Mill Multimedia Inspection, Doe Run personnel indicated that pH and temperature monitoring at Outfalls 002 and 003 is conducted using a hand-held pH/temperature meter.  The results of the field monitoring are recorded in a field log.  Doe Run personnel indicated that calibration of the pH/temperature meter occurs before field monitoring, but this could not be verified because the calibrations had not been recorded. Therefore, Doe Run failed to properly calibrate its monitoring equipment and/or maintain complete calibration records for such equipment as required by State Operating Permit No. MO-0002003.

221.  A review of Doe Run's DMRs, from January 2003 through December 2005, indicate that Doe Run has failed to perform some of the required WET tests and/or submit the reports relating to WET tests as required by State Operating Permit No. MO-0002003 (List of WET Violations Based on Self-Reported Data attached as Appendix B).

222.  The 2006 Buick Mine/Mill Multimedia Inspection revealed that Doe Run was not correctly preserving permit compliance samples.

DRRC multimedia Complaint

223.  During the 2006 Buick Mine/Mill Multimedia Inspection, Doe Run personnel admitted that Doe Run had never collected a zoo plankton sample as required by State Operating Permit No. MO-0002003.

224.  During the 2006 Buick Mine/Mill Multimedia Inspection, Doe Run personnel admitted that from June through December 2004, Doe Run failed to perform daily rainfall monitoring as required by State Operating Permit No. MO-0002003.

225.  During the 2006 Buick Mine/Mill Multimedia Inspection, EPA determined that at least for calendar years 2004 and 2005, Doe Run failed to complete annual operating and maintenance reports for Outfall 001, as required by State Operating Permit No. MO-0002003.

### 3.  BUICK RESOURCE RECYCLING FACILITY

226.  During the relevant time period, Buick LLC and/or Doe Run owned and/or operated the Buick Resource Recycling Facility, a secondary smelter located at HC 1, Box 1395, 18594 Highway KK, Boss, MO 65440 (referred to herein as the "Buick Resource Facility").

227.  At all relevant times, the Buick Resource Facility "discharged pollutants," as that term is defined in Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), and 40 C.F.R. § 122.2, to an unnamed tributary of Crooked Creek, which flows to Crooked Creek.

228.  The unnamed tributary of Crooked Creek and Crooked Creek are each a "navigable water" and "water of the United States" as those terms are defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

229.  The Buick Resource Facility, including all outfalls and other conveyances, is a "point source" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

DRRC multimedia Complaint

230. Buick LLC's/Doe Run's discharge of pollutants from a point source or point sources at the Buick Resource Facility to waters of the United States is subject to Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and requires a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

231. MDNR issued State Operating Permit No. MO-0000337 for the Buick Resource Facility, effective August 23, 2002, with an expiration date of August 22, 2007. The permit was modified on February 23, 2007. The terms of State Operating Permit No. MO-0000337 have been extended pending reissuance of the permit.

232. State Operating Permit No. MO-0000337 (attached as Appendix A-3) established effluent limitations, standard and special operating conditions, as well as monitoring and reporting requirements for discharges from each respective outfall at the Buick Resource Facility.

233. EPA has reviewed Buick LLC's/Doe Run's operational records and DMRs from the Buick Resource Facility to ascertain Buick LLC's/Doe Run's compliance with the CWA, the regulations promulgated thereunder, and Buick LLC's/Doe Run's Permit No. MO-0000337.

234. On numerous occasions since at least October 9, 2004, Buick LLC's/Doe Run's Buick Resource Facility has discharged and continues to discharge pollutants from one or more outfalls in excess of applicable numeric effluent limitations in State Operating Permit No. MO-0000337 (List of Violations Based on Self-Reported Data attached as Appendix C).

235. Based on a review of Buick LLC's/Doe Run's DMRs for the Buick Resource Facility filed since October 2004, Buick LLC/Doe Run has violated State Operating Permit No.

DRRC multimedia Complaint

MO-0000337 WET requirements on numerous occasions at one or more outfalls (List of WET Violations Based on Self-Reported Data attached as Appendix B).

236.  Based on a review of Buick LLC's/Doe Run's DMRs for the Buick Resource Facility filed since October 2004, Buick LLC/Doe Run has failed to perform some of the required WET analysis and/or submit the reports relating to WET tests as required by State Operating Permit No. MO-0000337 (List of WET Violations Based on Self-Reported Data attached as Appendix B).

## 4.  FLETCHER MINE/MILL FACILITY

237.  During the relevant time period, Doe Run owned and operated a lead, zinc and copper mine and mill located at Missouri Highway TT, Bunker, MO 63629 (referred to herein as the "Fletcher Mine/Mill Facility").

238.  At all relevant times, the Fletcher Mine/Mill Facility "discharged pollutants," as that term is defined in Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), and 40 C.F.R. § 122.2, to Bee Fork Creek.

239.  Bee Fork Creek is a "navigable water" and "water of the United States" as those terms are defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

240.  The Fletcher Mine/Mill Facility, including all outfalls and other conveyances, is a "point source" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

241.  Doe Run's discharge of pollutants from a point source or point sources at the Fletcher Mine/Mill Facility to waters of the United States is subject to Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and requires a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

DRRC multimedia Complaint

242.  MDNR issued State Operating Permit No. MO-0001856 for the Fletcher Mine/Mill Facility, effective July 30, 2002, with an expiration date of July 29, 2007.  Doe Run filed an appeal covering several provisions of the permit in October 2002.  The terms of State Operating Permit No. MO-0001856 were extended pending reissuance of the permit.  The permit was reissued effective November 13, 2009, with an expiration date of November 12, 2014, and modified on July 28, 2010.  Doe Run filed an appeal of certain provisions of that permit on December 11, 2009 and subsequently filed amendments to the appeal.  No provisions of the permit were stayed pending resolution of the appeal.

243.  State Operating Permit No. MO-0001856 (attached as Appendix A-4) established effluent limitations, standard and special operating conditions, as well as monitoring and reporting requirements for discharges from each respective outfall at the Fletcher Mine/Mill Facility.

244.  On or about August 7 through 9, 2006, EPA's inspectors conducted a compliance sampling  inspection (the "2006 Fletcher Mine/Mill CWA Inspection") at the Fletcher Mine/Mill Facility on behalf of EPA, Region 7, pursuant to the authority of Section 308(a) of the CWA, 33 U.S.C. § 1318(a).  On August 9, 2006, at the conclusion of the 2006 Fletcher Mine/Mill CWA Inspection, EPA inspectors issued Doe Run an NOPV.

245.  EPA has reviewed the findings of the 2006 Fletcher Mine/Mill CWA Inspection and Doe Run's operational records and DMRs from the Fletcher Mine/Mill Facility to ascertain Doe Run's compliance with the CWA, the regulations promulgated thereunder, and Doe Run's Permit No. MO-0001856.

DRRC multimedia Complaint

246.  On several occasions since at least October 9, 2004, Doe Run's Fletcher Mine/Mill Facility discharged pollutants from one or more outfalls in excess of applicable numeric effluent limitations in State Operating Permit No. MO-0001856 (List of Violations Based on Self-Reported Data attached as Appendix C).

247.  Based on a review of Doe Run's DMRs for the Fletcher Mine/Mill Facility filed since October 2004, Doe Run has violated State Operating Permit No. MO-0001856 WET requirements on at least one occasion at one or more outfalls (List of WET Violations Based on Self-Reported Data attached as Appendix B).

248.  During the 2006 Fletcher Mine/Mill CWA Inspection, EPA inspectors observed that Doe Run had failed to clearly mark Outfalls 001, 002, 003, and 004 in the field at the Fletcher Mine/Mill Facility in violation of the CWA and Doe Run's Permit No. MO-0001856.

## 5.  GLOVER LEAD SMELTER FACILITY and GLOVER DOE RUN/ASARCO SLAG PILE FACILITY

249.  During the relevant time period, Doe Run owned and operated a primary lead smelter at Route 1, Box 60, 42850 Highway 49, Annapolis, MO 63620 (referred to herein as the "Glover Lead Smelter Facility").

250.  At all relevant times, the Glover Lead Smelter Facility "discharged pollutants," as that term is defined in Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), and 40 C.F.R. § 122.2, to Scoggins Branch, which flows to Big Creek.

251.  Scoggins Branch and Big Creek are each a "navigable water" and "water of the United States" as those terms are defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

DRRC multimedia Complaint

252.  The Glover Lead Smelter Facility, including all outfalls and other conveyances, and two in-stream monitoring points, is a "point source" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

253.  Doe Run's discharge of pollutants from a point source or point sources at the Glover Lead Smelter Facility to waters of the United States is subject to Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and requires a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

254.  MDNR issued State Operating Permit No. MO-0001121 for the Glover Lead Smelter Facility, effective on November 6, 1998, with an expiration date of November 5, 2003. Doe Run submitted a permit application and MDNR administratively extended the terms of State Operating Permit No. MO-0001121, pending reissuance of the permit.  The permit was reissued effective March 23, 2007, with an expiration date of March 22, 2012.  Doe Run filed an appeal of certain provisions of that permit on April 20, 2007 and subsequently filed an amendment to the appeal.  No provisions of the permit were stayed pending resolution of the appeal.

255.  State Operating Permit No. MO-0001121 (attached as Appendix A-5), as issued in 1998 and as reissued in 2007, established effluent limitations, standard and special operating conditions, as well as monitoring and reporting requirements for discharges from each respective outfall at the Glover Lead Smelter Facility.

256.  MDNR issued State Operating Permit No. MO-0127434 for construction and clean-up activities at the Glover Doe Run/ASARCO Slag Pile Facility, effective on January 24, 2003, with an expiration date of January 23, 2008.  The permit has expired and has not been reissued.

DRRC multimedia Complaint

257.  State Operating Permit No. MO-0127434 (attached as Appendix A-6), as issued in 2003, established effluent limitations, standard and special operating conditions, as well as monitoring and reporting requirements for discharges from each respective outfall at the Glover Lead Smelter Facility.

258.  On or about July 8 through 9, 2008, EPA's inspectors conducted a compliance sampling inspection at the Glover Lead Smelter Facility (the "2008 Glover Lead Smelter CWA Inspection"), including the Doe Run/ASARCO slag pile at the Glover Lead Smelter Facility (the "2008 Doe Run/ASARCO Slag Pile CWA Inspection"), on behalf of EPA, Region 7, pursuant to the authority of Section 308(a) of the CWA, 33 U.S.C. § 1318(a).

259.  EPA has reviewed the findings of the 2008 Glover Lead Smelter CWA Inspection and the 2008 Doe Run/ASARCO Slag Pile CWA Inspection and Doe Run's operational records and DMRs from the Glover Lead Smelter Facility to ascertain Doe Run's compliance with the CWA, the regulations promulgated thereunder, and Doe Run's State Operating Permit No. MO-0001121.

260.  Analysis of stream samples collected by EPA during the 2008 Glover Lead Smelter CWA Inspection and 2008 Doe Run/ASARCO Slag Pile CWA Inspection demonstrated that the levels of pollutants in the stream exceeded water quality criteria.

261.  On numerous occasions since at least October 9, 2004, Doe Run's Glover Lead Smelter Facility has discharged and continues to discharge pollutants from one or more outfalls in excess of applicable numeric effluent limitations in State Operating Permit No. MO-0001121 (List of Violations Based on Self-Reported Data attached as Appendix C).

DRRC multimedia Complaint

262.  Based on a review of Doe Run's DMRs for the Glover Lead Smelter Facility filed since October 2004, Doe Run has failed to perform some of the required WET tests and/or submit the reports relating to WET tests as required by State Operating Permit No. MO-0001121 (List of WET Violations Based on Self-Reported Data attached as Appendix B).

263.  Based on a review of Doe Run's DMRs for the Glover Lead Smelter Facility filed since October 2004, Doe Run has violated State Operating Permit No. MO-0001121 WET requirements on one or more occasions at one or more outfalls (List of WET Violations Based on Self-Reported Data attached as Appendix B).

264.  During the 2008 Doe Run/ASARCO Slag Pile CWA Inspection, an EPA inspector saw evidence that stormwater from the Glover Doe Run/ASARCO Slag Pile Facility flows directly into the unnamed tributary of Scoggins Branch rather than to the collection sump leading to the authorized outfalls.

265.  All discharges from the Glover Doe Run/ASARCO Slag Pile Facility at locations other than authorized outfalls are violations of State Operating Permit No. MO-0001121 and Section 301 of the CWA, 33 U.S.C. § 1311(a).

266.  On or about April 26, 2010, MDNR's inspectors conducted a compliance inspection at the Glover Lead Smelter Facility (the "2010 Glover Lead Smelter and Stormwater Outfalls CWA Inspection"), including the wastewater treatment facilities serving the Glover Lead Smelter Facility and the stormwater outfalls of the Doe Run and Doe Run/Asarco Slag Piles.  On June 23, 2010, MDNR issued to Doe Run a report on the 2010 Glover Lead Smelter and Stormwater Outfalls CWA Inspection and Notice of Violation No. 18803 SE.

DRRC multimedia Complaint

267.  During the 2010 Glover Lead Smelter and Stormwater Outfalls CWA Inspection, MDNR staff observed that the gates to the sanitary wastewater treatment system extended aeration wastewater facility, which discharges through Outfall 001, were not locked and that there were no warning signs posted on each side of the sanitary wastewater treatment system enclosure in violation of 10 C.S.R. 20-8.020(11)(C)11F and G, respectively, the CWA, and Doe Run's State Operating Permit No. MO-0001121.

268.  During the 2010 Glover Lead Smelter and Stormwater Outfalls CWA Inspection, MDNR staff observed that Doe Run had failed to properly mark Outfall 001 at the location where samples are collected in violation of the CWA and Doe Run's State Operating Permit No. MO-0001121.

269.  During the 2010 Glover Lead Smelter and Stormwater Outfalls CWA Inspection, MDNR staff observed that Doe Run had failed to remove and properly manage slag from the Glover Lead Smelter Facility slag piles that had escaped from the berm around the slag piles after a rain event on approximately May 8, 2009, in violation of RSMo 644.051.1(1) and 644.076.1.

## 6. HERCULANEUM LEAD SMELTER FACILITY

270.  During the relevant time period, Doe Run owned and operated the Herculaneum Lead Smelter Facility.

271.  At all relevant times, the Herculaneum Lead Smelter Facility "discharged pollutants," as that term is defined in Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), and 40 C.F.R. § 122.2, to the Mississippi River.

DRRC multimedia Complaint

272.  The Mississippi River is a "navigable water" and "water of the United States" as those terms are defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

273.  The Herculaneum Lead Smelter Facility, including all outfalls and other conveyances, is a "point source" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

274.  Doe Run's discharge of pollutants from a point source or point sources at the Herculaneum Lead Smelter Facility to waters of the United States is subject to Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and requires a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

275.  MDNR issued State Operating Permit No. MO-0000281 for the Herculaneum Lead Smelter Facility, effective on February 28, 2003, with an expiration date of February 27, 2008. The terms of State Operating Permit No. MO-0000281 remain in effect pending reissuance of the permit.

276.  State Operating Permit No. MO-0000281 (attached as Appendix A-7) established effluent limitations, standard and special operating conditions, as well as monitoring and reporting requirements for discharges from each respective outfall at the Herculaneum Lead Smelter Facility.

277.  On or about March 20 through 23, 2007, EPA's inspectors conducted a compliance sampling inspection (the "2007 Herculaneum Lead Smelter CWA Inspection") at the Herculaneum Lead Smelter Facility on behalf of EPA, Region 7, pursuant to the authority of Section 308(a) of the CWA, 33 U.S.C. § 1318(a).

DRRC multimedia Complaint

278.  EPA has reviewed the findings of the 2007 Herculaneum Lead Smelter CWA Inspection and Doe Run's operational records and DMRs from the Herculaneum Lead Smelter Facility to ascertain Doe Run's compliance with the CWA, the regulations promulgated thereunder, and Doe Run's Permit No. MO-0000281.

279.  On numerous occasions since at least October 9, 2004, Doe Run's Herculaneum Lead Smelter Facility has discharged and continues to discharge pollutants from one or more outfalls in excess of applicable numeric effluent limitations in State Operating Permit No. MO-0000281 (List of Violations Based on Self-Reported Data attached as Appendix C).  In addition, analysis of samples collected from Outfall 001 during EPA's 2007 Herculaneum Lead Smelter CWA Inspection demonstrated the discharge failed to meet some of the numeric effluent limitations of Permit No. MO-0000281.

280.  Based on a review of Doe Run's DMRs for the Herculaneum Lead Smelter Facility filed since October 2004, Doe Run has violated State Operating Permit No. MO-0000281 WET requirements on several occasions at one or more outfalls (List of WET Violations Based on Self-Reported Data attached as Appendix B).

281.  During the 2007 Herculaneum Lead Smelter CWA Inspection, EPA inspectors observed that Doe Run had failed to clearly mark Outfall 005 in the field at the Herculaneum Lead Smelter Facility in violation of the CWA and Doe Run's Permit No. MO-0000281.

## 7.  VIBURNUM MINE #35 (CASTEEL) FACILITY

282.  During the relevant time period, Doe Run owned and operated a lead, zinc, and copper mine located at Missouri State Highway 32, Bixby, MO 65439 (referred to herein as the "Viburnum Mine #35 Facility").

DRRC multimedia Complaint

283.  At all relevant times, the Viburnum Mine #35 Facility "discharged pollutants," as that term is defined in Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), and 40 C.F.R. § 122.2, to an unnamed tributary to Crooked Creek, then to Crooked Creek.

284.  The unnamed tributary to Crooked Creek and Crooked Creek are each a "navigable water" and "water of the United States" as those terms are defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

285.  The Viburnum Mine #35 Facility, including all outfalls and other conveyances, is a "point source" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

286.  Doe Run's discharge of pollutants from a point source or point sources at the Viburnum Mine #35 Facility to waters of the United States is subject to Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and requires a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

287.  MDNR issued State Operating Permit No. MO-0100226 for the Viburnum Mine #35 Facility, effective on August 8, 2003, with an expiration date of August 7, 2008.  Doe Run timely submitted a permit application and MDNR administratively extended the terms of State Operating Permit No. MO-0100226 pending reissuance of the permit.  The permit was reissued effective March 19, 2010, with an expiration date of March 18, 2015, and modified on July 13, 2010.  Doe Run filed an appeal of certain provisions of that permit on April 16, 2010 and subsequently filed an amendment to the appeal.  No provisions of the permit were stayed pending resolution of the appeal.

288.  State Operating Permit No. MO-0100226 (attached as Appendix A-9) established effluent limitations, standard and special operating conditions, as well as monitoring and

DRRC multimedia Complaint

reporting requirements for discharges from each respective outfall at the Viburnum Mine #35 Facility.

289.  EPA has reviewed Doe Run's operational records and DMRs from the Viburnum Mine #35 Facility to ascertain Doe Run's compliance with the CWA, the regulations promulgated thereunder, and Doe Run's Permit No. MO-0100226.

290.  On numerous occasions since October 9, 2004, Doe Run's Viburnum Mine #35 Facility has discharged and continues to discharge pollutants from one or more outfalls in excess of applicable numeric effluent limitations in State Operating Permit No. MO-0100226 (List of Violations Based on Self-Reported Data attached as Appendix C).

291.  Based on a review of Doe Run's DMRs for the Viburnum Mine #35 Facility filed since October 2004, Doe Run has violated State Operating Permit No. MO-0100226 WET requirements on one or more occasions at one or more outfalls (List of WET Violations Based on Self-Reported Data attached as Appendix B).

## 8.  VIBURNUM MINE/MILL FACILITY

292.  During the relevant time period, Doe Run owned and operated a lead, zinc, and copper mine and/or mill located at P.O. Box 500, Viburnum, MO 65566 (referred to herein as the "Viburnum Mine/Mill Facility" or "Viburnum 28 & 29").

293.  At all relevant times, the Viburnum Mine/Mill Facility "discharged pollutants," as that term is defined in Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), and 40 C.F.R. § 122.2, to Indian Creek and/or an unnamed tributary to Indian Creek.

294.  Indian Creek and the unnamed tributary to Indian Creek are each a "navigable water" and "water of the United States" as those terms are defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

295.  The Viburnum Mine/Mill Facility, including all outfalls and other conveyances, is a "point source" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

296.  Doe Run's discharge of pollutants from a point source or point sources at the Viburnum Mine/Mill Facility to waters of the United States is subject to Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and requires a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

297.  MDNR issued State Operating Permit No. MO-0000086 for the Viburnum Mine/Mill Facility, effective on June 30, 1989, with an expiration date of June 29, 1994.  The terms of State Operating Permit No. MO-0000086 remained in effect pending reissuance of the permit.  The permit was reissued effective December 4, 2009, with an expiration date of December 3, 2014, and modified on July 13, 2010.  Doe Run filed an appeal of certain provisions of that permit on January 4, 2010 and subsequently filed an amendment to the appeal. No provisions of the permit were stayed pending resolution of the appeal.

298.  State Operating Permit No. MO-0000086 (attached as Appendix A-8) established effluent limitations, standard and special operating conditions, as well as monitoring and reporting requirements for discharges from each respective outfall at the Viburnum Mine/Mill Facility.

DRRC multimedia Complaint

299.  EPA has reviewed Doe Run's operational records and DMRs from the Viburnum Mine/Mill Facility to ascertain Doe Run's compliance with the CWA, the regulations promulgated thereunder, and Doe Run's Permit No. MO-0000086.

300.  On numerous occasions since October 9, 2004, Doe Run's Viburnum Mine/Mill Facility has discharged and continues to discharge pollutants from one or more outfalls in excess of applicable numeric effluent limitations in State Operating Permit No. MO-0000086 (List of Violations Based on Self-Reported Data attached as Appendix C).

301.  Based on a review of Doe Run's DMRs for the Viburnum Mine/Mill Facility filed since October 2004, Doe Run has failed to perform some of the required WET tests and/or submit the reports relating to WET tests as required by State Operating Permit No. MO-0000086 (List of WET Violations Based on Self-Reported Data attached as Appendix B).

### 9.  WEST FORK MINE/MILL FACILITY

302.  During the relevant time period, Doe Run owned and operated a lead, zinc, and copper mine and mill located at 6854 Missouri State Highway KK, Bunker, MO 63629 (referred to herein as the "West Fork Mine/Mill Facility").

303.  At all relevant times, the West Fork Mine/Mill Facility "discharged pollutants," as that term is defined in Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), and 40 C.F.R. § 122.2, to the West Fork of the Black River.

304.  West Fork of the Black River is a "navigable water" and "water of the United States" as those terms are defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

DRRC multimedia Complaint

305.  The West Fork Mine/Mill Facility, including all outfalls and other conveyances, is a "point source" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

306.  Doe Run's discharge of pollutants from a point source or point sources at the West Fork Mine/Mill Facility to waters of the United States is subject to Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and requires a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

307.  MDNR issued State Operating Permit No. MO-0100218 for the West Fork Mine/Mill Facility, effective on August 2, 1996, with an expiration date of August 1, 2001.  The permit was modified on September 25, 1998, when Doe Run purchased the West Fork Mine/Mill Facility.  The terms State Operating Permit No. MO-0100218 remained in effect pending reissuance of the permit.  The permit was reissued effective March 12, 2010, with an expiration date of March 11, 2015, and modified on July 13, 2010.  Doe Run filed an appeal of certain provisions of that permit on April 9, 2010 and subsequently filed an amendment to the appeal. No provisions of the permit were stayed pending resolution of the appeal.

308.  State Operating Permit No. MO-0100218 (attached as Appendix A-10) established effluent limitations, standard and special operating conditions, as well as monitoring and reporting requirements for discharges from each respective outfall at the West Fork Mine/Mill Facility.

309.  On or about February 7 through 10, 2005, EPA's inspectors conducted a compliance sampling  inspection (the "2005 West Fork CWA Inspection") at the West Fork Mine/Mill Facility on behalf of EPA, Region 7, pursuant to the authority of Section 308(a) of the

DRRC multimedia Complaint

CWA, 33 U.S.C. § 1318(a).  On February 9, 2005, at the conclusion of the 2005 West Fork

CWA Inspection, EPA inspectors issued Doe Run an NOPV.

310.  EPA has reviewed the findings of the 2005 West Fork CWA Inspection and Doe

Run's operational records and DMRs from the West Fork Mine/Mill Facility to ascertain Doe

Run's compliance with the CWA, the regulations promulgated thereunder, and Doe Run's Permit

No. MO-0100218.

311.  On numerous occasions since at least October 9, 2004, Doe Run's West Fork

Mine/Mill Facility has discharged and continues to discharge pollutants from one or more

outfalls in excess of applicable numeric effluent limitations in State Operating Permit No. MO-

0100218 (List of Violations Based on Self-Reported Data attached as Appendix C).

312.  Based on a review of Doe Run's DMRs for the West Fork Mine/Mill Facility filed

since October 2004, Doe Run has violated State Operating Permit No. MO-0100218 WET

requirements on numerous occasions at one or more outfalls (List of WET Violations Based on

Self-Reported Data attached as Appendix B).  In addition, analysis of samples collected from

Outfall 001 during EPA's 2005 West Fork CWA Inspection demonstrated the discharge failed to

meet the WET limitations of Permit No. MO-0100218.

313.  During the 2005 West Fork CWA Inspection, Doe Run personnel indicated that the

Ozark Testing is under contact with Doe Run to perform laboratory analysis for certain pollutant

parameters, including fecal coliform.  EPA inspectors reviewed the analytical data submitted by

Ozark Testing for each month in 2004 and noted that the fecal coliform holding time had been

exceeded on numerous occasions.  After the 2005 West Fork CWA Inspection, Doe Run

DRRC multimedia Complaint

personnel provide the EPA inspector with information regarding sample collection times for the fecal coliform samples.

314.  Pursuant to State Operating Permit No. MO-0100218, which incorporates the provisions of 40 C.F.R. § 136.3 (Table II), the maximum allowable holding time for fecal coliform samples is six hours from the time of collection.

315.  The EPA inspector determined, based on information provide by Doe Run and Doe Run's contractor, that the allowable holding time for fecal coliform had been exceeded on seven out of the twelve samples results reported in 2004.

316.  On or about April 27, 2010, MDNR's inspectors conducted a compliance inspection at the West Fork Mine/Mill Facility (the "2010 West Fork CWA Inspection").  On May 10, 2010, MDNR issued Doe Run a report on the 2010 West Fork CWA Inspection and Notice of Violation No. 18772 SE.

317.  During the 2010 West Fork CWA Inspection, MDNR staff observed that the Outfall 002 extended aeration domestic wastewater treatment system was in a state of complete disrepair, with broken, missing and disconnected parts; that untreated flow was discharging from the facility; and that there was no fence or gate restricting access to the facility, in violation of 10 C.S.R. 20-8.020(11)(C)11F and G, respectively, the CWA, and Doe Run's State Operating Permit No. MO-0100218.

318.  During the 2010 West Fork CWA Inspection, MDNR staff observed that Doe Run had failed to mark Outfalls 002 and 004 in violation of the CWA and Doe Run's State Operating Permit No. MO-0100218.

DRRC multimedia Complaint

319.  During the 2010 Glover Lead Smelter and Stormwater Outfalls CWA Inspection, MDNR staff observed that Doe Run had failed to remove and properly manage a large quantity of spent media from the Outfall 001 treatment system, which was located in an area subject to stormwater runoff to the West Fork of the Black River, in violation of RSMo 644.051.1(1) and 644.076.1.

## C.    RESOURCE CONSERVATION AND RECOVERY ACT (RCRA): General Allegations

### 1. BUICK MINE/MILL FACILITY

320.  During the relevant time period, Doe Run owned and operated the Buick Mine/Mill Facility.

321.  The Buick Mine/Mill Facility was a facility within the meaning of 40 C.F.R. § 260.10.

322.  During and/or after the 2006 Buick Mine/Mill Multimedia Inspection, NEIC and EPA conducted a site inspection and reviewed Doe Run's operational records to ascertain Doe Run's compliance with RCRA and the regulations promulgated thereunder.

323.  On February 7, 2006, during the 2006 Buick Mine/Mill Multimedia Inspection, NEIC observed a chunk of paint-appearing material on the ground near a dumpster.  NEIC also observed what appeared to be the same paint-appearing material in the dumpster.  The dumpster was open on the top, and was not marked in compliance with RCRA.  Based on NEIC's on-site inspection, the dumpster was not being operated in compliance with the less-than-180-day RCRA accumulation container requirements set forth in 40 C.F.R. § 262.34(d)(2).  Analytical

DRRC multimedia Complaint

testing by Doe Run after the inspection indicated that the waste paint material was a hazardous waste exhibiting the RCRA toxicity characteristic for lead (D008).

324.  On February 8, 2006, during the 2006 Buick Mine/Mill Multimedia Inspection, NEIC observed floor sweepings contaminated with used oil in trash containers in the mine maintenance shop.  Doe Run provided a waste profile for the floor sweepings that characterized the waste as a hazardous waste exhibiting the RCRA toxicity characteristic for lead (D008). When taken to the surface, the contents of the dumpsters are placed in the general trash roll-off and disposed at a local sanitary landfill.

325.  During the 2006 Buick Mine/Mill Multimedia Inspection, Doe Run personnel indicated that the parts washer fluids and spent filters from the parts washer used at the facility were transported to the Buick Resource Facility by Buick Mine/Mill Facility personnel to have the lead reclaimed from the wastes.  A hazardous waste manifest is not used to ship the spent parts washing fluids and solids to the Buick Resource Facility.  A waste profile provided by Doe Run subsequent to the inspection indicated that the spent solvent and filter solids are F001, F002, F003, and D008 hazardous wastes.

326.  Inspection records for the "safe pad," the RCRA 180-day accumulation area at the Buick Mine/Mill Facility, and observations by NEIC during the 2006 Buick Mine/Mill Multimedia Inspection indicated that the "safe pad" was not being inspected in accordance with RCRA generator requirements.  A review of completed work orders that were represented by Doe Run as inspection records for the "safe pad" indicated that the work orders do not reference the "safe pad," and the tasks for the nearby fuel station storage area do not specify drum or container inspection.  NEIC also observed a spill of antifreeze-appearing material on February 8,

DRRC multimedia Complaint

2006.  A completed work order for the inspection on the same day made no reference to a spill. In addition, based on the records provided by Doe Run, completed work orders were missing for the weeks of May 23, 2005, November 14, 2005, and January 9, 2006, and on two occasions, more than one week passed between inspections (e.g., from March 1 to 11, 2005, and from November 29 to December 13, 2005).

327.  At the time of the 2006 Buick Mine/Mill Multimedia Inspection, Doe Run had not conducted waste determinations for the following wastes, which were subsequently identified as hazardous wastes: spent ZEP parts washer solvent, ZEP parts washer filter solids, waste paint, and spent bead blast media from the surface shop.

328.  During the 2006 Buick Mine/Mill Multimedia Inspection, Doe Run personnel indicated that the spent bead blast media is transported to the Buick Resource Facility by Buick Mine/Mill Facility personnel.  A hazardous waste manifest is not used to ship the spent bead blast media to the Buick Resource Facility.

329.  During the 2006 Buick Mine/Mill Multimedia Inspection, NEIC observed the following unlabeled containers in the mine:

- Collection totes (500-gallon) near the service pit in the maintenance area.

- 55-gallon drum which collected drainage from used oil filters in the maintenance area pit.

- Collection totes in temporary storage (staging) en route to the surface near the personnel/service elevator.  The same totes (still unmarked) were observed at the surface at the "safe pad."

- 55-gallon drums at a staging area near the maintenance area.

DRRC multimedia Complaint

The materials contained in the unlabeled/unmarked units were all identified by Doe Run personnel as used oil.

330.  During the 2006 Buick Mine/Mill Multimedia Inspection, NEIC observed the following unlabeled containers in the aboveground maintenance shop:

- Open drum for collecting used vehicle motor oil/gear lube.

- Above ground portion of below-grade exterior concrete tank storing used oil generated from maintenance activities was not labeled/marked "used oil."

- Fill pipe to the below-grade exterior concrete tank storing used oil generated from maintenance activities was not labeled/marked "used oil."

The materials contained in the unlabeled/unmarked units were all identified by Doe Run personnel as used oil.

331.  During the 2006 Buick Mine/Mill Multimedia Inspection, NEIC observed that the drums used to accumulate the lubricant applied to and draining from the bull gears of the rod and ball mills appeared to be in poor condition, with the sides bulging on one.  Doe Run had characterized this lubricant as "used grease" instead of as "used oil."

332.  During the 2006 Buick Mine/Mill Multimedia Inspection, the inspectors observed used oil spills in the maintenance shop, rod and ball mill and on the soils surrounding the above ground portion of a below-grade concrete tank storing used oil.

## 2.  HERCULANEUM LEAD SMELTER FACILITY

333.  During the relevant time period, Doe Run owned and operated the Herculaneum Lead Smelter Facility.

DRRC multimedia Complaint

334.  The Herculaneum Lead Smelter Facility was a facility within the meaning of 40 C.F.R. § 260.10.

335.  On June 21 through 23, 2005, NEIC and EPA's inspectors conducted a RCRA compliance inspection (the "2005 Herculaneum RCRA Inspection") at the Herculaneum Lead Smelter Facility.

336.  During and/or after the 2005 Herculaneum RCRA Inspection, EPA conducted a site inspection and reviewed Doe Run's operational records to ascertain Doe Run's compliance with RCRA and the regulations promulgated thereunder.

337.  On June 23, 2005, at the conclusion of the 2005 Herculaneum RCRA Inspection, EPA inspectors issued Doe Run an NOV pursuant to the requirements of RCRA.  In a November 6, 2006 letter to Doe Run, EPA notified Doe Run of additional violations identified as a result of the 2005 Herculaneum RCRA Inspection.

338.  Castable material is used at the Herculaneum Lead Smelter Facility as a refractory to keep heat from dissipating and must be replaced periodically.  The spent castable is a hazardous waste, exhibiting the toxicity characteristics of cadmium (D006) and lead (D008).

339.  During the 2005 Herculaneum RCRA Inspection the inspector observed that Doe Run placed spent castable hazardous waste in a pile on the ground near the "hazardous waste" roll-off container used to store spent castable.

340.  During the 2005 Herculaneum RCRA Inspection the inspector observed that weekly inspection logs show that inspections of the spent castable waste roll-off container were not conducted weekly.  There were eleven missed weekly inspections since July 30, 2003, varying from 11 days to 31 days between inspections.

DRRC multimedia Complaint

341.  At the time of the 2005 Herculaneum RCRA Inspection, the spent castable waste roll-off container was not labeled per Department of Transportation ("DOT") requirements.  The roll-off container did not have the required DOT "poison" placard.

342.  Upon information and belief, the filter press material generated from the Herculaneum Lead Smelter Facility's wastewater treatment plant is a hazardous waste, exhibiting the toxicity characteristics of cadmium (D006) and lead (D008).

343.  During the 2005 Herculaneum RCRA Inspection, the inspector observed a railcar containing filter press material from the wastewater treatment plant in the wastewater treatment plant filter press building area.  The railcar was damaged on the sides and filter press material could be seen through several corroded holes.  Soils in the area appeared to contain filter press material.  The area near the wastewater treatment plant filter press building was upgradient from the Mississippi River.  The filter press material appeared to have flowed downgradient toward the Mississippi River.

344.  During the 2005 Herculaneum RCRA Inspection, the inspector reviewed the facility's hazardous waste contingency plan and observed that Herculaneum's contingency plan: (a) does not describe actions personnel must take in response to fires, explosions, and releases of hazardous waste; (b) does not include locations and capabilities of emergency equipment in its emergency equipment list; (c) does not list or lists incorrect home telephone numbers of the emergency coordinator and alternates; and (d) does not include a description of the arrangements made with emergency response agencies.

345.  Emergency coordinators at the Herculaneum Lead Smelter Facility are listed in the facility's contingency plan as managing hazardous waste.  At the time of the 2005 Herculaneum

DRRC multimedia Complaint

RCRA Inspection, Doe Run did not include its emergency coordinator or alternates at the

Herculaneum Lead Smelter Facility in introductory and annual hazardous waste training.

346.  During the 2005 Herculaneum RCRA Inspection, the inspectors observed a leaking

valve on piping leading from an above ground sulfuric acid storage tank.  The leak was within a

bermed area used as secondary containment for the storage tank and lime rock is used around the

acid storage tanks to neutralize any spill or leak.  Although the facility had placed a metal pan

under the leak and lime rock under the pan, the acid had overflowed, and compromised the pan,

and had dissolved the lime rock down to the underlying soil.  Doe Run knew there was a leak,

but did not repair the leak until it was pointed out by the inspectors.  In its July 18, 2005,

response to the Notice of Violation issued at the end of the inspection, Doe Run admitted the

leaking sulfuric acid would be a corrosive (D002) hazardous waste if disposed.

347.  During the 2005 Herculaneum RCRA Inspection, soil samples were collected from

various places on the Herculaneum Lead Smelter Facility property and from off-site property.

The level of contaminants required for a sample to fail the Toxicity Characteristic Leachate

Procedure ("TCLP") test for lead, cadmium, or mercury is greater than or equal to 5 mg/L for

lead, greater than or equal to 1 mg/L for cadmium, and greater than or equal to 0.2 mg/L for

mercury.  40 C.F.R. § 261.24.  The following soil samples failed the TCLP test for lead,

cadmium and/or mercury:

- Sample 002, filter press material sampled from the ground underneath the railcar

  containing filter press material, failed the TCLP test for lead and cadmium.  The

  documented lead level was 17.1 mg/L.  The cadmium level was documented at 37.1

  mg/L.

DRRC multimedia Complaint

- Sample 003, filter press material sampled from the ground between the third railroad track west of the wastewater treatment building, failed the TCLP test for lead and cadmium.  The documented lead level was 18.7 mg/L.  The cadmium level was documented at 44.8 mg/L.

- Sample 004A, filter press material sampled from the water treatment effluent outfall near the grate, failed the TCLP test for lead and cadmium.  The documented lead level was 19.9 mg/L.  The cadmium level was documented at 37.7 mg/L.

- Sample 004B, filter press material sampled from the water treatment effluent front grate, failed the TCLP test for lead and cadmium.  The documented lead level was 20.2 mg/L.  The cadmium level was documented at 39.4 mg/L.

- Sample 004C, filter press material sampled from the water treatment effluent front grate, failed the TCLP test for lead and cadmium.  The documented lead level was 17.6 mg/L.  The cadmium level was documented at 38.2 mg/L.

- Sample 005, soil sampled from the acid plant north of the neutralization pit, failed the TCLP test for lead and cadmium.  The documented lead level was 6.33 mg/L.  The cadmium level was documented at 1.82 mg/L.

- Sample 006, soil sampled from the acid plant south of the neutralization pit, failed the TCLP test for lead and cadmium.  The documented lead level was 590 mg/L.  The cadmium level was documented at 3.76 mg/L.

- Sample 010, soil sampled off-site and north of the plant boundary near the railroad tracks in publicly accessible areas, failed the TCLP test for lead, cadmium, and

DRRC multimedia Complaint

mercury.  The documented lead level was 390 mg/L.  The cadmium level was documented at 11.5 mg/L.  The mercury level was documented at 0.837 mg/L.

• Sample 011, soil sampled from on-site property located north of plant on the west side of the railroad tracks, failed the TCLP test for lead and cadmium.  The documented lead level was 1,040 mg/L.  The cadmium level was documented at 41.0 mg/L.

348.  During the 2005 Herculaneum RCRA Inspection, the inspectors observed a 30 gallon container of used oil located in the maintenance building that had dented stiffening rings.  The inspectors also observed, in the used oil storage area, a 55 gallon container of used oil that had a badly dented top.

349.  During the 2005 Herculaneum RCRA Inspection, the inspectors observed a large spill of used oil at the used oil storage area.  The inspectors also observed soil stained with used oil.  At the time of the inspection, upon information and believe, it appeared that the large spill and stained soil had been occurring over a long period of time.  At the time of the inspection, the inspectors did not see any indication that Doe Run was taking action to clean up the used oil.

350.  On May 19, 2009, MDNR's inspectors conducted a hazardous waste compliance evaluation inspection (the "2009 Herculaneum RCRA Inspection") at the Herculaneum Lead Smelter Facility.

351.  During the 2009 Herculaneum RCRA Inspection, the MDNR inspectors observed a 55-gallon satellite drum of spray paint waste from aerosol paint cans located in the lead shipping dock area.  The used aerosol paint cans are punctured and allowed to drain into a 55-gallon drum.  The waste in the drum is then mixed with an absorbent, such as sawdust or oil dry.  Doe

DRRC multimedia Complaint

Run personnel indicated that Doe Run disposes of this mixture through the on-site blast furnace where it is eventually put into a burn kettle.  The punctured paint cans are also worked back into the process in the same manner as the spray paint waste.

352.  At the time of the 2009 Herculaneum RCRA Inspection, Doe Run had not conducted a waste determination for the spray paint waste.

353.  During the 2009 Herculaneum RCRA Inspection, the MDNR inspectors observed a 55 gallon drum of used oil located outside the roundhouse that was rusted and deteriorated.  A 55 gallon drum of oil in the same location was open.  The drum was approximately two-thirds full and appeared to contain a mixture of rain water and oil.  The oil did not appear to be a useable product.

354.  During the 2009 Herculaneum RCRA Inspection, the MDNR inspectors observed the following unlabeled containers: sixteen 55 gallons drums of used oil, located in the maintenance shop; one 16 gallon container of used oil, located in the roundhouse; and one 55 gallon drum of used oil, located outside the roundhouse.

355.  During the 2009 Herculaneum RCRA Inspection, the MDNR inspectors observed numerous piles of debris on the ground throughout the Herculaneum Lead Smelter Facility.  The piles of debris included, but were not limited to, scrap iron, wood waste, copper wire, belts, gloves, cardboard, pallets, siding, scrap metal, bricks and chunks of rock.  The debris is primarily generated from maintenance and repair operations at the blast furnaces.  The debris accumulates for approximately one month or until the blast furnace is taken out of operation for maintenance.  Doe Run personnel indicated that the bricks and large chunks of rock get disposed of as hazardous waste.

DRRC multimedia Complaint

## 3. BUICK RESOURCE RECYCLING FACILITY

356.  During the relevant time period, Buick LLC and/or Doe Run owned and/or operated the Buick Resource Facility.

357.  On September 27, 1989 MDNR issued a Hazardous Waste Management Facility, Part I permit, Permit Number MOD059200089, to Doe Run for the Buick Resource Facility. The permit has been renewed and modified on several occasions.  Permit number MOD059200089 was reissued on March 15, 2005, and is effective through March 15, 2015 and its conditions are applicable during the relevant time period of this action.  The current permit is issued to Buick LLC as owner and Doe Run as operator of the Buick Resource Facility.

358.  Permit Number MOD059200089 has special permit conditions and schedule of compliance provisions which include but are not limited to, the following:

a.  Special Permit condition III.C.8.a (40 C.F.R. § 264.1101) requires Permittee to use controls and practices to ensure containment of the hazardous waste within the containment buildings by maintaining the primary barrier free of significant cracks, gaps, corrosion, or other deterioration that could cause hazardous waste to be released from the primary barrier;

b.  Special permit condition III.C.6.a (40 C.F.R. § 264.1101) requires the Permittee to maintain, for the Battery Bunker and Paste Storage Area, a primary barrier to prevent the migration of hazardous constituents into this barrier;

c.  Special permit condition I.G.1 (40 C.F.R. § 264.175) requires the Permittee to design and operate containment systems for the Palletized Storage Area so that a base shall underlie the containers, which is free of cracks or gaps and is sufficiently impervious to contain leaks, spills, and accumulated precipitation until the collected material is detected and removed;

DRRC multimedia Complaint

      d.  Special permit condition III.C.1 (40 C.F.R. § 264.1101) requires the Permittee to design and operate the containment buildings such that they are completely enclosed with a floor, walls, and a roof to prevent exposure to the elements (e.g., precipitation, wind, run-on), and to assure containment of the maximum permitted quantity of managed waste;

      e.  Schedule of compliance provision I.F requires the Permittee to submit to MDNR a certification by an independent professional engineer registered in Missouri as outlined in Special Permit Condition III.C.9., certifying that all containment buildings meet the design and operating conditions outlined in the Permit or a schedule to implement all upgrades. The schedule must not exceed 365 days after final permit modification.  After all upgrades are completed, the Permittee must submit the certification as outlined in Special Permit Condition III.C.9.  Special Permit Condition III.C.9 states that the Permittee shall obtain a certification by an independent professional engineer registered in Missouri that each containment building design meets the requirements of this Permit.  These certifications must be placed in the facility's operating record;

      f.  Special permit condition III.C.8.c (40 C.F.R. § 264.1101)  requires Permittee to use controls and practices to ensure containment of the hazardous waste within the containment buildings by operating decontamination stations at the heavy equipment exit of each containment building to prevent the tracking of wastes out of the buildings by decontaminating all waste/material-handling vehicles prior to their exiting a containment building.  No waste/material-handling vehicle shall exit any containment building without being decontaminated except during periods of freezing temperatures and/or weather conditions

DRRC multimedia Complaint

conducive to ice formation on travel surfaces. All rinsate must be collected and properly managed;

g.   Special permit condition VI.C.10 (10 CSR 25-7.264(2)(N)) requires, as specified in the approved permit application, a concrete roadway to be utilized between the treated slag staging area and the perimeter of the landfill.  The roadway must be cleaned and repaired or resurfaced as necessary to provide a hard surfaced road that is capable of supporting truck traffic and can be cleaned by a mechanical sweeper.  Upon commencement of landfill operations, the haul road will be incorporated into the facility's overall plant sweeping program. The haul road will be mechanically swept at least once each day that treated slag is hauled to the landfill, except during periods of inclement weather and/or freezing weather conditions; and

h.   Special permit condition III.C.12 (40 C.F.R. § 264.1101) requires Permittee to inspect the containment building areas and area immediately surrounding the containment buildings at least once every seven calendar days for the purposes of detecting any signs of releases of hazardous waste;

i.   Special permit condition VI.A (40 C.F.R. Part 268 Land Disposal Restrictions);

j.   Special permit condition III.B.3 and III.C.5;

k.   260.390.1(1) RSMo - Storage of hazardous waste;

l.   10 CSR 25-5.262(1) incorporating by reference 40 C.F.R. § 262.11 Hazardous waste determinations; and

m.   requirement to construct and operate the facility in accordance with the final approved permit application including, but not limited to, section F.3.5 (Leak Detection Liquid Collection and Removal System) of the permit application.

DRRC multimedia Complaint

359.  On March 3 through 5, 2009, EPA and state inspectors conducted a RCRA compliance inspection (the "March 2009 Buick Resource RCRA Inspection") at the Buick Resource Facility.

360.  On March 5, 2009, at the conclusion of the March 2009 Buick Resource RCRA Inspection, EPA inspectors issued Buick LLC/Doe Run an NOV pursuant to the requirements of RCRA.

361.  EPA reviewed the findings of the March 2009 Buick Resource RCRA Inspection and Buick LLC's/Doe Run's operational records to ascertain Buick LLC's/Doe Run's compliance with RCRA, the regulations promulgated thereunder and Permit Number MOD059200089.

362.  On March 3-4, 2009, during the March 2009 Buick Resource RCRA Inspection, the inspectors observed that none of the containment buildings, including the battery bunker and paste storage area, reverbatory furnace building and blast furnace feed building, were being maintained to prevent releases.  The inspectors observed that all of the containment buildings had gaps, holes and other deterioration in the walls, doors and ceiling/roof which would allow releases of hazardous waste and/or hazardous constituents.  During the visual inspection of the palletized storage area the inspectors observed gaps where the concrete floor butts against the outer wall indicating the base of this container storage area was not impervious and, therefore, allowed the release of hazardous waste.

363.  During the March 2009 Buick Resource RCRA Inspection the inspectors observed that the doors had not been upgraded for the vehicle entrances to the containment buildings. Pursuant to the Schedule of Compliance in Permit Number MOD059200089, Buick LLC/Doe

DRRC multimedia Complaint

Run was to upgrade the doors to the vehicle entrances of the containment buildings.  The existing vehicle entrance doors do not come all the way to the floor and allow releases from the containment buildings.  MDNR provided several extensions of time for the completion of the upgrade of the doors.  The last extension expired on February 26, 2009.

364.  The inspectors observed, during the March 2009 Buick Resource RCRA Inspection, that the heavy equipment decontamination stations for the containment buildings consist of a low area with water located outside of the containment buildings.  Heavy equipment drives through the water to remove waste from the vehicle tires.  The decontamination stations are all positioned to decontaminate the vehicles after the vehicles leave the containment building allowing waste to be tracked out of the containment building.

365.  At the time of the March 2009 Buick Resource RCRA Inspection the inspectors observed that the roadway between the treated slag staging area and the perimeter of the landfill was not a concrete roadway.  The roadway was gravel and could not be cleaned by a mechanical sweeper.  Landfill operation had commenced at the time of the inspection.  This lack of a concrete roadway is allowing hazardous waste to build up within and along the roadway from the treated slag staging area to the landfill.

366.  During the March 2009 Buick Resource RCRA Inspection the inspectors observed indications of releases immediately surrounding the containment buildings.  The inspectors reviewed the weekly inspection logs and discovered that there was no indication that the areas immediately surrounding the containment buildings were being inspected.  During the inspection Buick LLC/Doe Run indicated that the areas immediately surrounding the containment buildings were not being inspected.

DRRC multimedia Complaint

367.  At the time of the March 2009 Buick Resource RCRA Inspection, Buick LLC/Doe Run had not conducted waste determinations for the following wastes: shredded battery casings and materials in the decommissioned air ducts.

368.  The Buick Resource Facility generates spent refractory brick from its blast furnace. During the March 2009 Buick Resource RCRA Inspection Buick LLC/Doe Run indicated that the spent refractory brick is managed and disposed as a D007 and D008 characteristic hazardous waste and is stored on-site for less than 90 days prior to disposal.  During the March 2009 Buick Resource RCRA Inspection the inspectors observed spent refractory brick stored in a 20 yd3 roll-off container.  Buick LLC/Doe Run indicated that the roll-off container containing the spent refractory brick was to be transported off-site for disposal later that day.  The inspectors observed a marking on the container indicating it was hazardous waste, but did not observe any Department of Transportation labeling on the container.

369.  On September 29 - 30, 2009 MDNR conducted a hazardous waste compliance evaluation inspection (the "September 2009 Buick Resource RCRA Inspection") at the Buick Resource Facility.

370.  On March 12, 2010 MDNR issued Buick LLC/Doe Run an inspection report and NOV #5655CF listing the following violations noted during the September 2009 Buick Resource RCRA Inspection: a) failure to keep the containment completely enclosed to maintain the primary barrier in violation of 40 C.F.R. § 264.1101(C)(1) as incorporated in 10 CSR 25-7.264.2 and Special Permit Condition III.C.1; and b) failure to keep roadway leading to the landfill clean in violation of Special Permit Condition VI.C.10.

DRRC multimedia Complaint

371.  On November 17, 2009 MDNR conducted a site visit (the "November 2009 Buick

Resource RCRA Inspection") at the Buick Resource Facility.

372.  On February 2, 2010 MDNR issued Buick LLC/Doe Run an NOV listing the

following unsatisfactory features noted during the November 2009 Buick Resource RCRA

Inspection: a) failure to assure containment of the managed waste by allowing it to spill out the

doors of the containment building - Bins 16 and 17 of the covered materials storage bins building

had material spilling out of the bottom of the doors in violation of 40 C.F.R. § 264.1101(a)(1) as

incorporated in 10 CSR 25-7.264(2) and Special Permit Condition III.C.1; b) at the time of the

inspection, the roadway still was not completely installed to the entrance of the landfill in

violation of Special Permit Condition VI.C.10; c) failure to operate the decontamination station

at the blast furnace feed storage building in such a way to prevent tracking outside of the

containment building in violation of 40 C.F.R. § 264.1101(c)(iii) as incorporated in 10 CSR 25-

7.264(2) and Special Permit Condition III.C.8.c.; d) failure to properly collect and manage

rinsate at the decontamination station located outside of the reverberatory feed storage building;

the decontamination station was overflowing, allowing decontamination water to run over

ground out of the decontamination station in violation of Special Permit Condition III.C.8.c.; e)

free liquid was present in the covered materials storage bins building - bin 15; the covered

materials storage bins building is covered by the Permit Number MOD059200089 and designed

to store dry material only, in violation of Special Permit Conditions III.B.3. and III.C.5.;

f) failure to keep the battery bunker and paste storage completely enclosed; during the

approximately 10 - 15 minutes this area was observed, the doors at the loading/unloading area of

the battery bunker were open when trailers were not being unloaded and the door to the blast

DRRC multimedia Complaint

furnace feed storage building and the soda slag/reverb furnace feed building were open at the time of the inspection in violation of 40 C.F.R. § 264.1101(c)(1) as incorporated in 10 CSR 25-7.264(2) and Special Permit Condition III.C.1; g) failure to maintain the primary barrier of the slag storage area staging bins in violation of Special Permit Condition III.C.8.a.; h) modifying a permitted storage area (slag storage area staging bins) without prior approval from MDNR by breaching the primary barrier in violation of 40 C.F.R. § 270.42 as incorporated in 10 CSR 25-7.270; i) failure to notify the facility mailing list of a Class 1 Permit Modification approved on August 5, 2009 in violation of 40 C.F.R. § 270.42(a)(1 )(ii), as incorporated in 10 CSR 10-25-7.270; j) failure to construct and maintain a 6 foot tall wall around the slag storage area staging bins in accordance with the approved permit application submitted on June 4, 2001 and approved March 15, 2005; k) failure to manage leachate from the battery bunker leak detection system in accordance with the approved permit application; l) failed to submit a certification by an independent professional engineer registered in Missouri as outlined in Special Permit Condition III.C.9. certifying that all containment buildings meet the design and operating conditions outlined in the approved Permit Number MOD059200089 in violation of Schedule of Compliance I.F.; and m) treating slag in the slag storage area staging bins, which are permitted for storage only, not treatment, in violation of Special Permit Condition III.B.6.

373.  On December 29 - 30, 2009 MDNR conducted a hazardous waste compliance evaluation inspection (the "December 2009 Buick Resource RCRA Inspection") at the Buick Resource Facility.  On March 12, 2010 MDNR issued Buick LLC/Doe Run an inspection report and  NOV #5658CF listing the following violations noted during the December 2009 Buick Resource RCRA Inspection: a) failure to keep maintain containment building to prevent releases

DRRC multimedia Complaint

of hazardous wastes from the primary barrier in violation of 40 C.F.R. § 264.1101(C)(1) as

incorporated in 10 CSR 25-7.264.2 and Special Permit Condition III.C.1; b) failure to determine

if wastes are hazardous or non-hazardous in violation of 10 CSR 25-5.262(1) incorporating 40

C.F.R. § 262.11; c) failure to collect and properly maintain rinsate from a decontamination

station in violation of Special Permit Condition III.C.8.c.; and d) storage of hazardous waste in

an unpermitted area in violation of 260.390.1(1) RSMo.

### 4. TRANSPORTATION ORDER

374.  Doe Run mines ores rich in various metals at several locations in Southeast,

Missouri.  The ore is crushed, milled and chemically treated to produce concentrates very high in

metal content.  The three concentrates produced from the mines in Southeast, Missouri are lead,

copper, and zinc concentrates.  The concentrates are then transported to Doe Run's smelter in

Herculaneum, Missouri for the production of metal, or a port facility in Scott City, Missouri, for

sale on the world market.  The method of transport of the metal concentrates is by over-the-road

trucks.

375.  The EPA found that the past and present handling and transportation of lead

concentrate, ore and other lead-bearing materials at the locations in Southeast Missouri may

present an imminent and substantial endangerment to human health and/or the environment due

to residential yards, public roads and road-sides becoming contaminated with high

concentrations of lead along the transportation routes.  As a result, in May 2007, the EPA and

Doe Run entered into the Transportation Order, an Administrative Order on Consent under the

authority of Section 7003 of RCRA, 42 U.S.C. § 6973, to address the transportation of lead-

DRRC multimedia Complaint

bearing materials between at least nine facilities owned or operated by Doe Run in Southeast, Missouri.  The Transportation Order became effective on May 9, 2007.

376.  Under the Transportation Order, Doe Run was required to implement measures to limit the release of lead concentrate, ore and other lead-bearing materials from vehicles transporting those materials to, from, and between Doe Run's facilities onto publicly accessible streets, roads and residential yards to amounts that would not accumulate to levels that could pose a threat to human health or the environment and to construct truck washes at each of its facilities to wash and inspect the trucks transporting lead-bearing materials.  The Transportation Order included detailed requirements for washing trucks, inspecting trucks and making necessary repairs, enclosing materials during transit, washing roads and streets, sampling roads and residential properties, addressing spills, and monitoring.

377.  Between August 27, 2008 and October 3, 2008, the EPA conducted oversight of the actions being performed by Doe Run to comply with the Transportation Order ("2008 Transportation Inspection").  EPA observed numerous violations of the Transportation Order. On October 7, 2009, EPA provided a written report to Doe Run outlining the violations of the Transportation Order.

378.  During this inspection EPA observed numerous violations of the Transportation Order, including failure to properly wash lead-bearing vehicles, failure to properly inspect lead-bearing vehicles, failure to properly cover or enclose lead-bearing materials, failure to make necessary repairs to trucks, allowing defective trucks to transport lead-bearing materials, and leaking of lead-bearing materials from trucks.

DRRC multimedia Complaint

**D.      EMERGENCY PLANNING AND COMMUNITY RIGHT TO KNOW ACT (EPCRA): General Allegations**

379.  Doe Run is the "owner or operator" of the Herculaneum Lead Smelter Facility and the Buick Mine/Mill Facility within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a) and (b).

380.  Doe Run's Herculaneum Lead Smelter Facility is a "facility" at which "hazardous chemicals" are produced, used, or stored, as defined by Section 329(3) and (4) of EPCRA, 42 U.S.C. § 11049(3) and (4).

381.  Upon information and belief, on or about March 22, 2005, there were "releases" of lead sulfate, a CERCLA Hazardous Substance, from the Doe Run Herculaneum Lead Smelter Facility into the environment in quantities equal to or greater than the RQ (10 pounds).  Doe Run failed to immediately notify the SERC (State Authority) and the LEPC (Local Authority) of releases of CERCLA Hazardous Substances in an amount greater than or equal to the RQ from their Herculaneum Lead Smelter Facility, as required by Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a) and (b).

382.  At its Buick Mine/Mill Facility Doe Run owns and operates a "facility" within the meaning of Section 329(4) of EPCRA, 42 U.S.C. § 11029(4), and 40 C.F.R. § 372.

383.  Pursuant to Section 313 of EPCRA, 42 U.S.C. § 11023, Doe Run is required to report regarding propylene, cyanide compounds, lead compounds, zinc compounds, and copper compounds at its Buick Mine/Mill Facility.

384.  Based on observations, discussions with Doe Run personnel, and a review of documentation during the 2006 Buick Mine/Mill Multimedia Inspection, the inspectors noted the

DRRC multimedia Complaint

following EPCRA Section 313 reporting errors for the Buick Mine/Mill Facility: a) Doe Run

failed to report propylene in reporting years 2002, 2003, and 2004 and cyanide compounds in

reporting years 2002 and 2004 even though threshold levels were exceeded; b) Doe Run either

over or under reported the amount of water releases of lead compounds and zinc compounds in

reporting years 2002, 2003, and 2004; c) Doe Run used the wrong range code to report water

releases of copper compounds in reporting years 2002, 2003, and 2004; and d) Doe Run failed to

include off-site transfers in the reports submitted for reporting years 2002, 2003, and 2004.  In

addition, during the inspection Doe Run could not provide copies of the reports submitted for

reporting year 2003.

## E.   COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT: General Allegations

385.  Doe Run's Herculaneum Lead Smelter Facility is a "facility," as defined by Section

101(9) of CERCLA, 42 U.S.C. § 9601(9).

386.  Doe Run is in charge of the Herculaneum Lead Smelter Facility within the meaning

of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

387.  Upon information and belief, on or about March 22, 2005, there were "releases" of

lead sulfate, a hazardous substance as defined by Section 101(22) and (14) of CERCLA, 42

U.S.C. § 9601(22) and (14), at the Doe Run Herculaneum Lead Smelter Facility in an amount

greater than or equal to the RQ (10 pounds).  Doe Run failed to immediately notify the NRC of

the releases of a hazardous substances in an amount greater than or equal to the RQ from the

Herculaneum Lead Smelter Facility, as required by Section 103 of CERCLA, 42 U.S.C. § 9603.

DRRC multimedia Complaint

388.  The release(s) identified in Paragraph 387 of this Complaint from the Herculaneum Lead Smelter Facility was not a "federally permitted release" as that term is used in Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), and 40 C.F.R. Part 302.6, and defined in Section 101(10) of CERCLA, 42 U.S.C. § 9601(10).

### CLAIMS FOR RELIEF

**Count 1 - Clean Air Act**
**Buick Mine/Mill:**
**Missouri Title V/Part 70 Operating Permit Violations - Failure to Install Pressure Drop Monitor**

389.  The allegations of Paragraphs 1-88 and 152-177 above are re-alleged and incorporated herein by reference.

390.  Defendant Doe Run violated Sections 110 and 502(a) of the Clean Air Act, the Missouri SIP, and Federally enforceable provisions of its Part 70 Operating Permit No. OP2003-011 for the Buick Mine/Mill Facility, and Federal and State regulations by:

a.  failing to comply with the equipment and operation limitations, monitoring, and recordkeeping requirements for concrete batch plants #1 and #2 (EU0020 and EU0030) imposed by Permit No. OP2003-011 on at least one or more occasions in the five year period immediately preceding the filing of this Complaint; and

b.  submitting annual and semiannual certifications that improperly certify that Doe Run was in compliance with all of the requirements of Permit No. OP2003-011 on one or more occasion(s) in the five year period immediately preceding the filing of this Complaint.

391.  Pursuant to Section 113(b) of the CAA, 42 U.S.C. §§ 7413(b), and the Debt Collection Improvement Act of 1996 (28 U.S.C. § 2461) Doe Run is subject to injunctive relief

DRRC multimedia Complaint

and civil penalties of up to $27,500 per day for each violation at the Buick Mine/Mill Facility

occurring after January 30, 1997 but before March 16, 2004, up to $32,500 per day per violation

of the CAA occurring on or after March 16, 2004 but before January 13, 2009, and up to $37,500

per day per violation of the CAA occurring on or after January 13, 2009.

392.     Section 643.151.1, RSMo makes it unlawful for any person to cause or permit

any air pollution by emission of any air contaminant from any air contaminant source in

violation of the Law or any rule promulgated by the Air Conservation Commission.

393.  Section 643.075, RSMo makes it unlawful for any person to construct an air

contaminant source without a construction permit, and Section 643.078, RSMo makes it

unlawful for any person to operate an air contaminant source without an operating (Part 70 or

Title V) permit.

394.  Pursuant to Section 643.151, RSMo Doe Run is subject to claims for injunctive

relief and civil penalties not to exceed ten thousand dollars ($10,000) for each violation per day,

or part thereof, the violation continues to occur, or both, as the court may deem appropriate.

**Count 2 - Clean Air Act**
**Buick Mine/Mill:**
**Missouri Title V/Part 70 Operating Permit Violations - Failure to Notify**

395.  The allegations of Paragraphs 1-88 and 152-177 above are re-alleged and

incorporated herein by reference.

396.  Defendant Doe Run violated Section 502(a) of the Clean Air Act and Federally

enforceable provisions of its Part 70 Operating Permit No. OP2003-011 for the Buick Mine/Mill

Facility, and Federal and State Regulations by failing to comply with the Operational Flexibility

DRRC multimedia Complaint

notice requirements imposed by Permit No. OP2003-011 and the Missouri SIP on at least one
occasion in the five year period immediately preceding the filing of this Complaint.

397.  Unless restrained by an Order of the Court, these and similar violations are likely to
continue.

398.  Pursuant to Section 113(b) of the CAA, 42 U.S.C. §§ 7413(b), and the Debt
Collection Improvement Act of 1996 (28 U.S.C. § 2461) Doe Run is subject to injunctive relief
and civil penalties of up to $27,500 per day for each violation at the Buick Mine/Mill Facility
occurring after January 30, 1997 but before March 16, 2004, up to $32,500 per day per violation
of the CAA occurring on or after March 16, 2004 but before January 13, 2009, and up to $37,500
per day per violation of the CAA occurring on or after January 13, 2009.

399.  Section 643.151.1, RSMo makes it unlawful for any person to cause or permit any
air pollution by emission of any air contaminant from any air contaminant source in violation of
the Law or any rule promulgated by the Air Conservation Commission.

400.  Section 643.075, RSMo makes it unlawful for any person to construct an air
contaminant source without a construction permit, and Section 643.078, RSMo makes it
unlawful for any person to operate an air contaminant source without an operating (Part 70 or
Title V) permit.

401.  Pursuant to Section 643.151, RSMo Doe Run is subject to claims for injunctive
relief and civil penalties not to exceed ten thousand dollars ($10,000) for each violation per day,
or part thereof, the violation continues to occur, or both, as the court may deem appropriate.

DRRC multimedia Complaint

## Count 3 - Clean Air Act
## Buick Mine/Mill:
## Missouri SIP Violations - Failure to Submit Accurate EIQs

402.  The allegations of Paragraphs 1-88 and 152-177 above are re-alleged and incorporated herein by reference.

403.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run violated 10 CSR 10-6.110(1)(A) by failing to report all HAP emissions, including, but not limited to, emissions of nickel compounds, from the Buick Mine/Mill Facility on its EIQ Form 2.T.

404.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run violated 10 CSR 10-6.110(1)(A) by submitting inaccurate EIQ reports that underestimated the PM10 emissions from the tailings disposal area (emission point EP-48) at the Buick Mine/Mill Facility.

405.  Defendant Doe Run has violated and continues to violate the CAA and the Missouri SIP.  Unless restrained by an order of this Court, these and similar violations are likely to continue.

406.  Pursuant to Section 113(b) of the CAA, 42 U.S.C. §§ 7413(b), and the Debt Collection Improvement Act of 1996 (28 U.S.C. § 2461) Doe Run is subject to injunctive relief and civil penalties of up to $27,500 per day for each violation at the Buick Mine/Mill Facility occurring after January 30, 1997 but before March 16, 2004, up to $32,500 per day per violation of the CAA occurring on or after March 16, 2004 but before January 13, 2009, and up to $37,500 per day per violation of the CAA occurring on or after January 13, 2009.

DRRC multimedia Complaint

407.  Section 643.151.1, RSMo makes it unlawful for any person to cause or permit any air pollution by emission of any air contaminant from any air contaminant source in violation of the Law or any rule promulgated by the Air Conservation Commission.

408.  Section 643.075, RSMo makes it unlawful for any person to construct an air contaminant source without a construction permit, and Section 643.078, RSMo makes it unlawful for any person to operate an air contaminant source without an operating (Part 70 or Title V) permit.

409.  Pursuant to Section 643.151, RSMo Doe Run is subject to claims for injunctive relief and civil penalties not to exceed ten thousand dollars ($10,000) for each violation per day, or part thereof, the violation continues to occur, or both, as the court may deem appropriate.

## Count 4 - Clean Air Act
### Herculaneum Lead Smelter Facility:
### PSD Violations

410.  The allegations of Paragraphs 1-88 and 178-195 above are re-alleged and incorporated herein by reference.

411.  At various times, Doe Run commenced construction and operation of one or more major modifications, as defined in the CAA and the Missouri SIP, at the Herculaneum Lead Smelter Facility.  These modifications included one or more physical changes or changes in the method of operation at the Herculaneum Lead Smelter Facility sulfuric acid plant and sinter machine, including, but not limited to, the following individual or combination of such modifications: (1) the replacement of the No. 4 baghouse with a hot electrostatic precipitator, replacement of the venturi (wet) scrubber, and replacement of the booster blower in or about 1990; (2) the replacement of the wet electrostatic precipitator in or about 1995; and (3) the

DRRC multimedia Complaint

replacement of the main blower and the gas cooling tower in or about 1998-2000. These

modifications resulted in significant net emissions increases, as defined by 40 C.F.R.

§ 52.21(b)(3)(i) and 10 CSR 10-6.020(2)(N)(2), of SO2.

412. Doe Run has violated and continues to violate Sections 110 and 165(a) of the CAA,

42 U.S.C. §§ 7410 and 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and the

Missouri SIP at 10 CSR 10-6.060(8) by, among other things, undertaking such modifications and

continuing to operate the modified Herculaneum Lead Smelter Facility without: (a) obtaining a

PSD permit as required by 40 C.F.R. § 52.21(i) and the Missouri SIP at 10 CSR 10-6.060(8); and

(b) applying BACT for SO2, as required by 40 C.F.R. § 52.21(j) and the Missouri SIP at 10 CSR

10-6.060(8)(B). Unless restrained by an order of this Court, these and similar violations are

likely to continue.

413. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of

the CAA, 42 U.S.C. § 7477, the PSD violations set forth above subject Doe Run to injunctive

relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead

Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation

occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation

occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each

violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection

Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69

Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec.

11, 2008).

DRRC multimedia Complaint

414.  Section 643.151.1, RSMo makes it unlawful for any person to cause or permit any air pollution by emission of any air contaminant from any air contaminant source in violation of the Law or any rule promulgated by the Air Conservation Commission.

415.  Section 643.075, RSMo makes it unlawful for any person to construct an air contaminant source without a construction permit, and Section 643.078, RSMo makes it unlawful for any person to operate an air contaminant source without an operating (Part 70 or Title V) permit.

416.  Pursuant to Section 643.151, RSMo Doe Run is subject to claims for injunctive relief and civil penalties not to exceed ten thousand dollars ($10,000) for each violation per day, or part thereof, the violation continues to occur, or both, as the court may deem appropriate.

### Count 5 - Clean Air Act
### Herculaneum Lead Smelter Facility:
### NNSR Violations

417.  The allegations of Paragraphs 1-88 and 178-195 above are re-alleged and incorporated herein by reference.

418.  At various times, Doe Run commenced construction and operation of one or more major modifications, as defined in the CAA and the Missouri SIP, at the Herculaneum Lead Smelter Facility.  These modifications included one or more physical changes or changes in the method of operation at the Herculaneum Lead Smelter Facility sulfuric acid plant and sinter machine, including, but not limited to, the replacement of the wet electrostatic precipitator in or about 1995.  These modifications resulted in a significant net emissions increase of lead, as defined in the Clean Air Act and the Missouri SIP.

DRRC multimedia Complaint

419.  Doe Run has violated and continues to violate the Nonattainment NSR provisions of the CAA and the Missouri SIP by, among other things, undertaking such modifications and continuing to operate the modified Herculaneum Lead Smelter Facility without: (a) obtaining a Nonattainment NSR permit as required by the Missouri SIP at 10 CSR 10-6.060(7); and (b) installing and operating LAER technology for their lead emissions, as required by the Missouri SIP.  42 U.S.C. § 7503(a) and 10 CSR 10-6.060(7)(C).  Doe Run also failed to obtain and operate with the Federally enforceable emission offsets at least as great as the modified source's emissions.  10 CSR 10-6.060(7)(B).  Unless restrained by an order of this Court, these and similar violations are likely to continue.

420.  As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of the CAA, 42 U.S.C. § 7477, the violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

421.  Section 643.151.1, RSMo makes it unlawful for any person to cause or permit any air pollution by emission of any air contaminant from any air contaminant source in violation of the Law or any rule promulgated by the Air Conservation Commission.

422.  Section 643.075, RSMo makes it unlawful for any person to construct an air contaminant source without a construction permit, and Section 643.078, RSMo makes it unlawful for any person to operate an air contaminant source without an operating (Part 70 or Title V) permit.

423.  Pursuant to Section 643.151, RSMo Doe Run is subject to claims for injunctive relief and civil penalties not to exceed ten thousand dollars ($10,000) for each violation per day, or part thereof, the violation continues to occur, or both, as the court may deem appropriate.

**Count 6 - Clean Air Act**
**Herculaneum Lead Smelter Facility:**
**NSPS Violations**

424.  The allegations of Paragraphs 1-88 and 178-195 above are re-alleged and incorporated herein by reference.

425.  Doe Run reconstructed, as that term is defined at 40 C.F.R. § 60.15, the sintering machine and sintering machine discharge end at the Herculaneum Lead Smelter Facility after October 16, 1974.  The modification or reconstruction of the sintering machine and sintering machine discharge end caused Doe Run to be subject to 40 C.F.R. Part 60, Subpart R.

426.  Doe Run failed to keep records of and notify EPA of the reconstruction of its affected facilities at the Herculaneum Lead Smelter Facility in violation of 40 C.F.R. § 60.7.

DRRC multimedia Complaint

427.  Doe Run failed to conduct a performance test within 180 days after the reconstruction of its affected facilities at the Herculaneum Lead Smelter Facility and to furnish the EPA a written report of the results, in violation of 40 C.F.R. § 60.8.

428.  Since the reconstruction of the affected facilities at the Herculaneum Lead Smelter Facility, Doe Run has operated the sintering machine in such a manner that the emission limitation of 0.065 percent by volume of SO2 has been exceeded, in violation of 40 C.F.R. § 60.183(a).

429.  At all times relevant to this Complaint, the sintering machine and sintering machine discharge end units at the Herculaneum Lead Smelter Facility were not equipped with a properly installed, calibrated, and maintained continuous emission monitor which meets Performance Specification 2 in 40 C.F.R. Part 60 Appendix B and therefore has been and is in violation of 40 C.F.R. § 60.13, 40 C.F.R. § 60.185.

430.  Unless restrained by an order of this Court, these and similar violations are likely to continue.

431.  As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of the CAA, 42 U.S.C. § 7477, the NSPS violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection

DRRC multimedia Complaint

Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

432.  Section 643.151.1, RSMo makes it unlawful for any person to cause or permit any air pollution by emission of any air contaminant from any air contaminant source in violation of the Law or any rule promulgated by the Air Conservation Commission.

433.  Section 643.075, RSMo makes it unlawful for any person to construct an air contaminant source without a construction permit, and Section 643.078, RSMo makes it unlawful for any person to operate an air contaminant source without an operating (Part 70 or Title V) permit.

434.  Pursuant to Section 643.151, RSMo Doe Run is subject to claims for injunctive relief and civil penalties not to exceed ten thousand dollars ($10,000) for each violation per day, or part thereof, the violation continues to occur, or both, as the court may deem appropriate.

### Count 7 - Clean Air Act
### Herculaneum Lead Smelter Facility:
### Title V Violations - Operation with a Deficient Permit

435.  The allegations of Paragraphs 1-88, 178-195, and 410-423 above are re-alleged and incorporated herein by reference.

436.  As set forth above, Doe Run commenced one or more major modifications at the Herculaneum Lead Smelter Facility sulfuric acid plant and sinter machine, as defined under the PSD and NSR regulations in the Missouri SIP.  As a result, these modifications triggered the requirements to, among other things, obtain permits establishing emissions limitations that meet

DRRC multimedia Complaint

BACT and LAER and operate in compliance with BACT and LAER.  Doe Run failed to satisfy

these requirements.

437.  Doe Run failed to submit a complete application for a Title V operating permit for

Herculaneum Lead Smelter Facility that identified all applicable requirements, including, but not

limited to, the requirement to apply, install and operate BACT for SO2 and LAER for lead;

accurately certified compliance with such requirements; contained a compliance plan for all

applicable requirements for which the source was not in compliance (including the requirements

to meet BACT and LAER); and contained other specific information that may be necessary to

implement and enforce the applicable requirements of the CAA, Title V, the Missouri SIP, or to

determine the applicability of such requirements, and also failed to supplement or correct the

Title V permit applications for the Herculaneum Lead Smelter Facility, as required by Sections

502, 503, and 504 of the CAA, 42 U.S.C. §§ 7661a, 7661b, and 7661c; the regulations at 40

C.F.R. Part 70, including but not limited to 40 C.F.R. §§ 70,1(b), 70.5, 70.6, and 70.7(b); and the

Missouri Title V provisions at 10 CSR 10-6.065.

438.  Doe Run failed to obtain a proper or adequate Title V operating permit for

Herculaneum Lead Smelter Facility that contained emission limitations for SO2 that met BACT

and emission limitations for lead that met LAER as required by Section 504(a) of the CAA, 42

U.S.C. § 7661c(a), and 40 C.F.R. §§ 70.1(b), 70.6(a), and the applicable state Title V

regulations.  As a result, Doe Run has operated the Herculaneum Lead Smelter Facility without

meeting such limitations and without having an operating permit that requires compliance with

such limitations or that contains a compliance plan for all applicable requirements for which the

plant is not in compliance.

DRRC multimedia Complaint

439.  Doe Run's conduct has violated and continues to violate Sections 502(a), 503, and 504(a) of the CAA, 42 U.S.C. §§ 7661a(a), 7661b, and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Missouri Title V operating permit program regulations (10 CSR 10-6.065).  Unless restrained by an order of this Court, these and similar violations are likely to continue.

440.  As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of the CAA, 42 U.S.C. § 7477, the violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

441.  Section 643.151.1, RSMo makes it unlawful for any person to cause or permit any air pollution by emission of any air contaminant from any air contaminant source in violation of the Law or any rule promulgated by the Air Conservation Commission.

442.  Section 643.075, RSMo makes it unlawful for any person to construct an air contaminant source without a construction permit, and Section 643.078, RSMo makes it unlawful for any person to operate an air contaminant source without an operating (Part 70 or Title V) permit.

DRRC multimedia Complaint

443.  Pursuant to Section 643.151, RSMo Doe Run is subject to claims for injunctive

relief and civil penalties not to exceed ten thousand dollars ($10,000) for each violation per day,

or part thereof, the violation continues to occur, or both, as the court may deem appropriate.

**Count 8 - Clean Air Act**
**Herculaneum Lead Smelter Facility:**
**Missouri Title V Violations - Failure to Comply With Permit Requirements**

444.  The allegations of Paragraphs 1-88 and 178-195 above are re-alleged and

incorporated herein by reference.

445.  Doe Run violated the 2007 Consent Judgment incorporated by reference into its

Title V/Part 70 Operating Permit No. 2006-011B, Condition PW008 by failing to continuously

operate and maintain the sinter wheel machine tunnel at a rate of 15,000 actual cubic feet per

minute; failing to continuously monitor the sinter machine wheel tunnel ventilation from April 7,

2008 forward; and failing to use flow rates or amperage rates that were approved by MDNR.

446.  Unless restrained by an Order of the Court, these and similar violations are likely to

continue.

447.  As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of

the CAA, 42 U.S.C. § 7477, the violations set forth above subject Doe Run to injunctive relief

and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter

Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring

after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring

on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation

occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection

DRRC multimedia Complaint

Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69

Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec.

11, 2008).

448.  Section 643.151.1, RSMo makes it unlawful for any person to cause or permit any

air pollution by emission of any air contaminant from any air contaminant source in violation of

the Law or any rule promulgated by the Air Conservation Commission.

449.  Section 643.075, RSMo makes it unlawful for any person to construct an air

contaminant source without a construction permit, and Section 643.078, RSMo makes it

unlawful for any person to operate an air contaminant source without an operating (Part 70 or

Title V) permit.

450.  Pursuant to Section 643.151, RSMo Doe Run is subject to claims for injunctive

relief and civil penalties not to exceed ten thousand dollars ($10,000) for each violation per day,

or part thereof, the violation continues to occur, or both, as the court may deem appropriate.

### Count 9 - Clean Air Act
### Herculaneum Lead Smelter Facility:
### NESHAP Violations - Failure to Submit Reports

451.  The allegations of Paragraphs 1-88 and 178-195 above are re-alleged and

incorporated herein by reference.

452.  Defendant Doe Run violated Section 112 of the CAA, 42 U.S.C. § 7412 and 40

C.F.R. Part 63, Subpart TTT by failing to submit the reports as required by 40 C.F.R.

§§ 63.1549(e) and 63.10 from 2004 through 2008.

453.  Unless restrained by an Order of the Court, these and similar violations are likely to

continue.

DRRC multimedia Complaint

454.  As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of the CAA, 42 U.S.C. § 7477, the violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

455.  Section 643.151.1, RSMo makes it unlawful for any person to cause or permit any air pollution by emission of any air contaminant from any air contaminant source in violation of the Law or any rule promulgated by the Air Conservation Commission.

456.  Section 643.075, RSMo makes it unlawful for any person to construct an air contaminant source without a construction permit, and Section 643.078, RSMo makes it unlawful for any person to operate an air contaminant source without an operating (Part 70 or Title V) permit.

457.  Pursuant to Section 643.151, RSMo Doe Run is subject to claims for injunctive relief and civil penalties not to exceed ten thousand dollars ($10,000) for each violation per day, or part thereof, the violation continues to occur, or both, as the court may deem appropriate.

DRRC multimedia Complaint

## Count 10 - Clean Water Act
## Brushy Creek Mine/Mill Facility:
## Violation of Effluent Limitations

458.  The allegations of Paragraphs 1-11, 89-112, and 196-208 above are re-alleged and incorporated herein by reference.

459.  On numerous occasions in the five year period immediately preceding the filing of this Complaint, Doe Run discharged pollutants from one or more outfall at the Brushy Creek Mine/Mill Facility (Appendices B and C) into waters of the United States in violation of the limitations, conditions, and requirements of State Operating Permit No. MO-0001848 including, but not limited to, numerical effluent limitations and limitations and requirements for WET in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

460.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0001848 are likely to continue.

461.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Brushy Creek Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.

DRRC multimedia Complaint

§ 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004),

codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

462.  Operating a water contaminant source, a wastewater collection system, which

discharges untreated wastewater into waters of the State, without a Missouri State Operating

Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and

(5)(A).

463.  Placing or causing or permitting to be placed a water contaminant in a location

where it is reasonably certain to cause pollution to waters of the State is a violation of

§§ 644.051.1(1) and 644.076.1, RSMo.

464.  Discharging water contaminants into waters of the State which reduce the water

quality of such waters below the water quality standards established by the Missouri Clean Water

Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

465.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten

thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants

violated the Missouri Clean Water Law.

### Count 11 - Clean Water Act
### Brushy Creek Mine/Mill Facility:
### Violation of Permit Requirements - Failure to Perform/Submit WET Tests and Mark Permitted Outfalls

466.  The allegations of Paragraphs 1-11, 89-112, and 196-208 above are re-alleged and

incorporated herein by reference.

467.  On one or more occasions in the five year period immediately preceding the filing

of this Complaint, Doe Run failed to perform required WET tests for the Brushy Creek

DRRC multimedia Complaint

Mine/Mill Facility and/or failed to submit the report relating to WET testing (Appendix B) in

violation of the conditions and requirements of its State Operating Permit No. MO-0001848 in

violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to

Section 402 of the CWA, 33 U.S.C. § 1342.

468.  As of approximately August 2006, Doe Run had failed to clearly mark all Outfall

locations at the Brushy Creek Mine/Mill Facility in violation of the conditions and requirements

of its State Operating Permit No. MO-0001848, and therefore in violation of Section 301(a) of

the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33

U.S.C. § 1342.

469.  Unless restrained by an order of the Court, these and similar violations of the CWA

and Doe Run's Permit No. MO-0001848 are likely to continue.

470.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d),

the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up

to $25,000 per day for each violation at the Brushy Creek Mine/Mill Facility occurring on or

before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but

before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004

but before January 13, 2009, and $37,500 per day for each violation occurring on or after

January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28

U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.

§ 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004),

codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

471.   Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

472.   Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

473.   Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

474.   Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

### Count 12 - Clean Water Act
### Buick Mine/Mill Facility:
### Violation of Effluent Limitations

475.   The allegations of Paragraphs 1-11, 89-112, 196, and 209-225 above are re-alleged and incorporated herein by reference.

476.   On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run discharged pollutants from one or more outfalls at the Buick Mine/Mill Facility (Appendices B and C) into waters of the United States in violation of the limitations, conditions, and requirements of State Operating Permit No. MO-0002003 including, but not limited to, the numerical effluent limitations and limitations and requirements for WET

DRRC multimedia Complaint

in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

477.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0002003 are likely to continue.

478.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

479.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

480.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

DRRC multimedia Complaint

481.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

482.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of Ten Thousand Dollars ($10,000.00) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

**Count 13 - Clean Water Act
Buick Mine/Mill Facility:
Violation of Permit Requirements**

483.  The allegations of Paragraphs 1-11, 89-112, 196, and 209-225 above are re-alleged and incorporated herein by reference.

484.  As of August 2005, Doe Run had failed to retain, for at least three years, all quarterly WET test results for Outfall 002 at the Buick Mine/Mill Facility as required pursuant to Part I Section A.7 of the Standard Conditions for State Operating Permits, incorporated into Section B. of State Operating Permit No. MO-0002003, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

485.  As of August 2006, Doe Run had failed to perform pH/temperature calibration and/or maintain complete calibration records as required pursuant to Part I Section A.7 of the Standard Conditions for State Operating Permits incorporated into Section B. of State Operating Permit No. MO-0002003, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

DRRC multimedia Complaint

486.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run failed to annually collect a zoo plankton sample from the body of water that creates Outfall 002 as required pursuant to Section C.2 of State Operating Permit No. MO-0002003, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

487.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run failed to follow the WET test procedures as set forth in Section C.2.(a) of State Operating Permit No. MO-0002003, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

488.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run failed to daily monitor and report rainfall as required pursuant to Section C.4 of State Operating Permit No. MO-0002003, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

489.  During at least calendar years 2004 and 2005, Doe Run failed to complete annual operating and maintenance reports for Outfall 001 as required pursuant to Section A of State Operating Permit No. MO 0002003, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

490.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0002003 are likely to continue.

491.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up

DRRC multimedia Complaint

to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before

January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before

March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but

before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13,

2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461

note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61

Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R.

Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

492.  Operating a water contaminant source, a wastewater collection system, which

discharges untreated wastewater into waters of the State, without a Missouri State Operating

Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and

(5)(A).

493.  Placing or causing or permitting to be placed a water contaminant in a location

where it is reasonably certain to cause pollution to waters of the State is a violation of

§§ 644.051.1(1) and 644.076.1, RSMo.

494.  Discharging water contaminants into waters of the State which reduce the water

quality of such waters below the water quality standards established by the Missouri Clean Water

Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

495.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten

thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants

violated the Missouri Clean Water Law.

DRRC multimedia Complaint

## Count 14 - Clean Water Act
## Buick Resource Facility:
## Violation of Effluent Limitations

496.  The allegations of Paragraphs 1-11, 89-112, 196, and 226-236 above are re-alleged and incorporated herein by reference.

497.  On numerous occasions in the five year period immediately preceding the filing of this Complaint, Buick LLC and/or Doe Run discharged pollutants from one or more outfalls at the Buick Resource Facility (Appendices B and C) into waters of the United States in violation of the limitations, conditions, and requirements of State Operating Permit No. MO-0000337 including, but not limited to, numerical effluent limitations and limitations and requirements for WET, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

498.  Unless restrained by an order of the Court, these and similar violations of the CWA and Buick LLC's and/or Doe Run's Permit No. MO-0000337 are likely to continue.

499.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Buick LLC and/or Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Resource Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69

DRRC multimedia Complaint

Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

500.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

501.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

502.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

503.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

**Count 15 - Clean Water Act**
**Buick Resource Facility:**
**Violation of Permit Requirements - Failure to Perform/Submit WET Tests**

504.  The allegations of Paragraphs 1-11, 89-112, 196, and 226-236 above are re-alleged and incorporated herein by reference.

505.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Buick LLC and/or Doe Run failed to perform WET tests and/or submit WET test results for the Buick Resource Facility (Appendix B) in violation of the conditions and

DRRC multimedia Complaint

requirements of its State Operating Permit No. MO-0000337, and therefore in violation of

Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of

the CWA, 33 U.S.C. § 1342.

506.  Unless restrained by an order of the Court, these and similar violations of the CWA

and Buick LLC's and/or Doe Run's Permit No. MO-0000337 are likely to continue.

507.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d),

the CWA violations set forth above subject Buick LLC and/or Doe Run to injunctive relief and

civil penalties of up to $25,000 per day for each violation at the Buick Resource Recycling

Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring

after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring

on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation

occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection

Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69

Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec.

11, 2008).

508.  Operating a water contaminant source, a wastewater collection system, which

discharges untreated wastewater into waters of the State, without a Missouri State Operating

Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and

(5)(A).

DRRC multimedia Complaint

509.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

510.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

511.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

### Count 16 - Clean Water Act
### Fletcher Mine/Mill Facility:
### Violation of Effluent Limitations

512.  The allegations of Paragraphs 1-11, 89-112, 196, and 237-248 above are re-alleged and incorporated herein by reference.

513.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run discharged pollutants from one or more outfalls at the Fletcher Mine/Mill Facility (Appendices B and C) into waters of the United States in violation of the limitations, conditions, and requirements of State Operating Permit No. MO-0001856 including, but not limited to, the numerical effluent limitations and requirements for WET in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

514.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0001856 are likely to continue.

DRRC multimedia Complaint

515.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Fletcher Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

516.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

517.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

518.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

DRRC multimedia Complaint

519.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

**Count 17 - Clean Water Act**
**Fletcher Mine/Mill Facility:**
**Violation of Permit Requirements - Failure to Mark Permitted Outfalls**

520.  The allegations of Paragraphs 1-11, 89-112, 196, and 237-248 above are re-alleged and incorporated herein by reference.

521.  Doe Run failed to clearly mark all outfall locations at the Fletcher Mine/Mill Facility in violation of the conditions and requirements of its State Operating Permit No. MO-0001856, and therefore in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

522.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Fletcher Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

523.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

524.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

525.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

526.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

**Count 18 - Clean Water Act**
**Glover Lead Smelter Facility:**
**Violation of Effluent Limitations**

527.  The allegations of Paragraphs 1-11, 89-112, 196, and 249-269 above are re-alleged and incorporated herein by reference.

528.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run discharged pollutants from one or more outfalls at the Glover Lead Smelter Facility (Appendices B and C) into waters of the United States in violation of the limitations, conditions, and requirements of State Operating Permit No. MO-0001121 including, but not limited to, the numerical effluent limitations and limitations and requirements for WET

DRRC multimedia Complaint

in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

529.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Glover Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

530.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

531.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

532.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

DRRC multimedia Complaint

533.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

**Count 19 - Clean Water Act**
**Glover Lead Smelter Facility:**
**Violation of Permit Requirements - Failure to Perform/Submit WET Tests**

534.  The allegations of Paragraphs 1-11, 89-112, 196, and 249-269 above are re-alleged and incorporated herein by reference.

535.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run failed to perform WET tests and/or submit WET test results for the Glover Lead Smelter Facility (Appendix B) in violation of the conditions and requirements of its State Operating Permit No. MO-0001121, and therefore in violation of  Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

536.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0001121 are likely to continue.

537.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Glover Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461

DRRC multimedia Complaint

note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

538.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

539.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

540.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

541.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

### Count 20 - Clean Water Act
### Glover Lead Smelter Facility:
### Violation of Permit Requirements

542.  The allegations of Paragraphs 1-11, 89-112, 196, and 249-269 above are re-alleged and incorporated herein by reference.

543.  Doe Run failed to secure and post warning signs at the sanitary wastewater treatment system extended aeration wastewater facility at the Glover Lead Smelter Facility in

DRRC multimedia Complaint

violation of the conditions and requirements of its State Operating Permit No. MO-0001856, and therefore in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

544.  Doe Run failed to clearly mark all outfall locations at the Glover Lead Smelter Facility in violation of the conditions and requirements of its State Operating Permit No. MO-0001856, and therefore in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

545.  Doe Run failed to operate and maintain facilities at the Glover Lead Smelter Facility in violation of the conditions and requirements of its State Operating Permit No. MO-0001856, and therefore in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

546.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0001121 are likely to continue.

547.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Glover Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61

DRRC multimedia Complaint

Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R.

Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

548.  Operating a water contaminant source, a wastewater collection system, which

discharges untreated wastewater into waters of the State, without a Missouri State Operating

Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and

(5)(A).

549.  Placing or causing or permitting to be placed a water contaminant in a location

where it is reasonably certain to cause pollution to waters of the State is a violation of

§§ 644.051.1(1) and 644.076.1, RSMo.

550.  Discharging water contaminants into waters of the State which reduce the water

quality of such waters below the water quality standards established by the Missouri Clean Water

Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

551.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten

thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants

violated the Missouri Clean Water Law.

**Count 21 - Clean Water Act**
**Glover Doe Run/ASARCO Slag Pile Facility:**
**Discharge Without a Permit**

552.  The allegations of Paragraphs 1-11, 89-112, 196, and 249-269 above are re-alleged

and incorporated herein by reference.

553.  On all occasions in the five year period immediately preceding the filing of this

Complaint that Doe Run discharged pollutants including, but not limited to, storm water runoff

the from the Glover Doe Run/ASARCO Slag Pile Facility from any point source other than

DRRC multimedia Complaint

permitted outfalls, as indicated by observations of EPA's inspector in July 2008, Doe Run

discharged pollutants to waters of the United States without a permit issued pursuant to Section

402 of the CWA, 33 U.S.C. § 1342,  in violation of Section 301(a) of the CWA, 33 U.S.C.

§ 1311(a).

554.  Unless restrained by an order of the Court, these and similar violations of the CWA

and Doe Run's Permit No. MO-0001121 are likely to continue.

555.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d),

the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up

to $25,000 per day for each violation at the Glover Doe Run/ASARCO Slag Pile Facility

occurring on or before January 30, 1997, $27,500 per day for each violation occurring after

January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or

after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation

occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection

Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69

Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec.

11, 2008).

556.  Operating a water contaminant source, a wastewater collection system, which

discharges untreated wastewater into waters of the State, without a Missouri State Operating

Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and

(5)(A).

DRRC multimedia Complaint

557.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

558.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

559.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

## Count 22 - Clean Water Act
### Herculaneum Lead Smelter Facility:
### Violation of Effluent Limitations

560.  The allegations of Paragraphs 1-11, 89-112, 196, and 270-281 above are re-alleged and incorporated herein by reference.

561.  On numerous occasions in the five year period immediately preceding the filing of this Complaint, Doe Run discharged pollutants from one or more outfalls at the Herculaneum Lead Smelter Facility (Appendices B and C) into waters of the United States in violation of the limitations, conditions, and requirements of State Operating Permit No. MO-0000281 including, but not limited to, the numerical effluent limitations and limitations and requirements for WET in violation of  Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

562.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0000281 are likely to continue.

DRRC multimedia Complaint

563.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

564.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

565.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

566.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

DRRC multimedia Complaint

567.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

### Count 23 - Clean Water Act
### Herculaneum Lead Smelter Facility:
### Violation of Permit Requirements

568.  The allegations of Paragraphs 1-11, 89-112, 196, and 270-281 above are re-alleged and incorporated herein by reference.

569.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run failed to conduct required effluent monitoring and/or submit complete and accurate DMRs (Appendix C) in violation of State Operating Permit No. MO-0000281, and therefore in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

570.  Doe Run failed to clearly mark all outfall locations at the Herculaneum Lead Smelter Facility in violation of the conditions and requirements of State Operating Permit No. MO-0000281 in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

571.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0000281 are likely to continue.

572.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but

DRRC multimedia Complaint

before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

573.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

574.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

575.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

576.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

DRRC multimedia Complaint

## Count 24 - Clean Water Act
## Viburnum Mine #35 Facility:
## Violation of Effluent Limitations

577.  The allegations of Paragraphs 1-11, 89-112, 196, and 282-291 above are re-alleged and incorporated herein by reference.

578.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run discharged pollutants from one or more outfalls at the Viburnum Mine #35 Facility (Appendices B and C) into waters of the United States in violation of the limitations, conditions, and requirements of State Operating Permit No. MO-0100226 including, but not limited to, the numerical effluent limitations and limitations and requirements for WET in violation of  Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

579.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0100226 are likely to continue.

580.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Viburnum Mine #35 Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61

DRRC multimedia Complaint

Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R.

Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

581.  Operating a water contaminant source, a wastewater collection system, which

discharges untreated wastewater into waters of the State, without a Missouri State Operating

Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and

(5)(A).

582.  Placing or causing or permitting to be placed a water contaminant in a location

where it is reasonably certain to cause pollution to waters of the State is a violation of

§§ 644.051.1(1) and 644.076.1, RSMo.

583.  Discharging water contaminants into waters of the State which reduce the water

quality of such waters below the water quality standards established by the Missouri Clean Water

Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

584.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten

thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants

violated the Missouri Clean Water Law.

### Count 25 - Clean Water Act
### Viburnum Mine/Mill Facility:
### Violation of Effluent Limitations

585.  The allegations of Paragraphs 1-11, 89-112, 196, and 292-301 above are re-alleged

and incorporated herein by reference.

586.  On one or more occasions in the five year period immediately preceding the filing

of this Complaint, Doe Run discharged pollutants from one or more outfalls at the Viburnum

Mine/Mill Facility (Appendices B and C) into waters of the United States in violation of the

DRRC multimedia Complaint

limitations, conditions, and requirements of State Operating Permit No. MO-0000086 including, but not limited to, the numerical effluent limitations and limitations and requirements for WET in violation of  Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

587.  Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0000086 are likely to continue.

588.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Viburnum Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

589.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

DRRC multimedia Complaint

590. Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

591. Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

592. Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

**Count 26 - Clean Water Act**
**West Fork Mine/Mill Facility:**
**Violation of Effluent Limitations**

593. The allegations of Paragraphs 1-11, 89-112, 196, and 302-319 above are re-alleged and incorporated herein by reference.

594. On numerous occasions in the five year period immediately preceding the filing of this Complaint, Doe Run discharged pollutants from one or more outfalls at the West Fork Mine/Mill Facility (Appendices B and C) into waters of the United States in excess of the limitations, conditions, and requirements of State Operating Permit No. MO-0100218 including, but not limited to, the numeric effluent limitations and limitations and requirements for WET in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

595. Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0100218 are likely to continue.

DRRC multimedia Complaint

596.  As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the West Fork Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

597.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

598.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

599.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

DRRC multimedia Complaint

600.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

### Count 27 - Clean Water Act
### West Fork Mine/Mill Facility:
### Violation of Permit Requirements

601.  The allegations of Paragraphs 1-11, 89-112, 196, and 302-319 above are re-alleged and incorporated herein by reference.

602.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run failed to perform WET tests for one or more outfalls at the West Fork Mine/Mill Facility (Appendix B) and/or failed to submit the report relating to WET testing in violation of the conditions and requirements of State Operating Permit No. MO-0100218 including, but not limited to, the numeric effluent limitations and limitations and requirements for WET in violation of  Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

603.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run failed to follow proper analytical procedures when analyzing samples from Outfall 001 and 002 for fecal coliform as required pursuant to State Operating Permit No. MO-0100218, and therefore in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

604.  Doe Run failed to operate and maintain the extended aeration domestic wastewater treatment system facility at the West Fork Mine/Mill Facility in violation of the conditions and requirements of its State Operating Permit No. MO-0100218, and therefore in violation of

DRRC multimedia Complaint

Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

605. Doe Run failed to manage industrial treatment system media at the West Fork Mine/Mill Facility in violation of the conditions and requirements of its State Operating Permit No. MO-0100218, and therefore in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

606. Doe Run failed to clearly mark all outfall locations at the West Fork Mine/Mill Facility in violation of the conditions and requirements of its State Operating Permit No. MO-0100218, and therefore in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

607. Unless restrained by an order of the Court, these and similar violations of the CWA and Doe Run's Permit No. MO-0100218 are likely to continue.

608. As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the CWA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the West Fork Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

609.  Operating a water contaminant source, a wastewater collection system, which discharges untreated wastewater into waters of the State, without a Missouri State Operating Permit is a violation of § 644.051.2 and § 644.076.1, RSMo, and 10 CSR 20-6.010(1)(A) and (5)(A).

610.  Placing or causing or permitting to be placed a water contaminant in a location where it is reasonably certain to cause pollution to waters of the State is a violation of §§ 644.051.1(1) and 644.076.1, RSMo.

611.  Discharging water contaminants into waters of the State which reduce the water quality of such waters below the water quality standards established by the Missouri Clean Water Commission is a violation of §§ 644.051.1(2) and 644.076.1, RSMo, and 10 CSR 20-7.031.

612.  Section 644.076.1, RSMo authorizes the State to impose civil penalties of ten thousand dollars ($10,000) per violation per day for each day, or part thereof, the defendants violated the Missouri Clean Water Law.

### Count 28 - Resource Conservation And Recovery Act
### Buick Mine/Mill Facility:
### Failure to Comply With Missouri Hazardous Waste Generator Requirements

613.  The allegations of Paragraphs 1-11, 113-128, and 320-332 above are re-alleged and incorporated herein by reference.

614.  A generator who accumulates waste on-site for any period must inspect all areas regularly, including daily inspections for those areas subject to spills, and remedy any problems quickly enough to prevent risks to human health and the environment.  10 CSR 25-5.262(2)(C)2.C.  If the generator generates less than 1000 kg per month of nonacute hazardous waste, it need not have a containment system as described in part 10 CSR 25-5.262(2)(C)2.D.(I),

DRRC multimedia Complaint

provided that the storage area is sloped or is otherwise designed and operated to drain and remove liquid resulting from precipitation, or the containers are elevated or are otherwise protected from contact with accumulated liquid. 10 CSR 25-5.262(1), as modified by 10 CSR 25-5.262(2)(C).2.D.

615.  Doe Run submitted notification as a Small Quantity Generator at the Buick Mine/Mill Facility in 1996.

616.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run did not comply with the requirements of 10 CSR 25-5.262(2)(C), including those set forth in Paragraph 614, at its Buick Mine/Mill Facility.

617.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

618.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

619.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

**Count 29 - Resource Conservation And Recovery Act**
**Buick Mine/Mill Facility:**
**Operation as a Treatment, Storage and Disposal Facility Without a Permit**

620.  The allegations of Paragraphs 1-11, 113-128, and 320-332 above are re-alleged and incorporated herein by reference.

621.  42 U.S.C. § 6925(a) and §§ 260.390(1) and 260.395.7-.11, RSMo require owners or operators of a hazardous waste treatment, storage, or disposal facility to obtain TSD permits or interim status.  Disposal of hazardous waste without a TSD permit or interim status is prohibited. Id.  Storage of hazardous waste without a TSD permit or interim status is prohibited except in compliance with the requirements of 10 CSR 25-5.262(1), incorporating 40 C.F.R. § 262.34(d). Id.

622.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run has disposed of hazardous waste at the Buick Mine/Mill Facility.

623.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run has stored hazardous waste at the Buick Mine/Mill Facility, but has not complied with the requirements of 10 CSR 25-5.262, incorporating 40 C.F.R. § 262.34(d), applicable to generators who generate greater than 100 kg but less than 1,000 kg of hazardous waste in a calendar month.

DRRC multimedia Complaint

624.  Doe Run has violated RCRA § 3005(a), 42 U.S.C. § 6925(a), and §§ 260.390(1) and 260.395.7-.11, RSMo by owning and/or operating a hazardous waste disposal facility without a TSD permit or interim status.

625.  Doe Run has violated RCRA § 3005(a), 42 U.S.C. § 6925(a), and §§ 260.390(1) and 260.395.7-.11, RSMo by owning and/or operating a hazardous waste storage facility without a TSD permit or interim status.

626.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

627.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

628.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

DRRC multimedia Complaint

## Count 30 - Resource Conservation And Recovery Act
## Buick Mine/Mill Facility:
### Land Disposal Restrictions Violations

629.  The allegations of Paragraphs 1-11, 113-128, and 320-332 above are re-alleged and incorporated herein by reference.

630.  EPA regulations at 40 C.F.R. Part 268 and Missouri regulations at 10 CSR 25-7.268, which incorporates the federal regulations by reference, identifies hazardous wastes that are restricted from land disposal and defines those limited circumstances under which an otherwise prohibited waste may continue to be land disposed.

631.  Pursuant to 40 C.F.R. §§ 268.34 and 261.24, lead (D008) is a prohibited hazardous waste with a regulatory limit of 5.0 mg/L.  Lead waste may only be land disposed if it no longer exhibits a prohibited characteristic of hazardous waste at the point of land disposal.

632.  An inspection of the Buick Mine/Mill Facility and review of Doe Run's records indicated that Doe Run violated land disposal restrictions by disposing of hazardous wastes that exhibited a prohibited characteristic for lead over the regulatory limit at the point of land disposal.

633.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

634.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but

DRRC multimedia Complaint

before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

635. Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

**Count 31 - Resource Conservation And Recovery Act**
**Buick Mine/Mill Facility:**
**Offering Waste Without a Manifest and Transporting Waste Without a Permit**

636. The allegations of Paragraphs 1-11, 113-128, and 320-332 above are re-alleged and incorporated herein by reference.

637. Hazardous waste generators that transport their hazardous waste off-site must use a hazardous waste transporter with a valid hazardous waste license, provide a manifest to the transporter for each load of hazardous waste transported from the premises where it was generated, and transport such waste only to an authorized transport, storage, or disposal facility. 40 C.F.R Part 262, Subpart B, as incorporated by reference at 10 CSR 25-5.262(1) and modified by 10 CSR 25-5.262(2)(B); § 260.380.1(5), (6), and (7), RSMo.

638. On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run transported waste from its Buick Mine/Mill Facility to its Buick Resource Facility in violation of the requirements of the Missouri regulations regarding

DRRC multimedia Complaint

manifesting and proper shipment of hazardous waste promulgated pursuant to § 260.380.1,

RSMo, including those identified in Paragraph 637.

640.  Unless restrained by an order of the Court, these and similar violations are likely to

continue.

640.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g),

the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up

to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before

January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before

March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but

before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13,

2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461

note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61

Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R.

Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

641.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil

penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or

continues to occur, or both.

### Count 32 - Resource Conservation And Recovery Act
### Buick Mine/Mill Facility:
### Failure to Determine Whether Wastes Were Hazardous

642.  The allegations of Paragraphs 1-11, 113-128, and 320-332 above are re-alleged and

incorporated herein by reference.

DRRC multimedia Complaint

643.  Pursuant to 40 C.F.R. § 262.11 and 10 CSR 25-5.262(1), any person who generates a solid waste must determine if that waste is a hazardous waste, using prescribed methods.  The generator must retain copies of the results of such waste determinations for at least three years after the waste is sent for treatment, storage, or disposal.  40 C.F.R. § 262.40(c) and 10 CSR 25-5.262(1).

644.  At the time of the 2006 Buick Mine/Mill Multimedia Inspection, Doe Run had not completed hazardous waste determinations on the following solid wastes generated at the Buick Mine/Mill Facility: spent ZEP parts washer solvent, ZEP parts washer filter solids, waste paint, and spent bead blast media.

645.  At the time of the 2006 Buick Mine/Mill Multimedia Inspection, Doe Run had no records of the results of any hazardous waste determinations on any of the following solid wastes generated at the Buick Mine/Mill Facility: spent ZEP parts washer solvent, ZEP parts washer filter solids, waste paint, and spent bead blast media.

646.  At the time of the 2006 Buick Mine/Mill Multimedia Inspection, Doe Run had not completed hazardous waste determinations on all of the solid wastes stored at the Buick Mine/Mill Facility.

647.  Doe Run violated the requirements of Subchapter III of RCRA and § 260.380, RSMo by failing to conduct hazardous waste determinations and failing to maintain records of hazardous waste determinations in accordance with 40 C.F.R. §§ 262.11and 262.40, incorporated by reference at 10 CSR 25-5.262(1).

648.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

DRRC multimedia Complaint

649.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

650.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

### Count 33 - Resource Conservation And Recovery Act
### Buick Mine/Mill Facility:
### Failure to Comply With Used Oil Management and Handling Requirements

651.  The allegations of Paragraphs 1-11, 113-128, and 320-332 above are re-alleged and incorporated herein by reference.

652.  Used oil spills must be cleaned up upon the detection of a release. 40 C.F.R. § 279.22, as incorporated by reference at 10 CSR 25-11.279(1).

653.  Containers of used oil must be labeled with the words "Used Oil". 40 C.F.R. § 279.22, as incorporated by reference at 10 CSR 25-11.279(1).

DRRC multimedia Complaint

654.  During the 2006 Buick Mine/Mill Multimedia Inspection, NEIC inspectors observed numerous containers of used oil that were not labeled with the words "Used Oil."

655.  During the 2006 Buick Mine/Mill Multimedia Inspection, NEIC inspectors observed used oil spills in the maintenance shop, rod and ball mill and on the soils surrounding the above ground portion of a below-grade concrete tank storing used oil.  Upon information and belief, Doe Run detected or should have detected these releases.

656.  Doe Run failed to stop, contain, and/or cleanup the used oil spills.

657.  Doe Run violated RCRA § 3014, 42 U.S.C. § 6935 and RSMo § 260.380, by failing to manage used oil at the Buick Mine/Mill Facility in accordance with applicable Missouri laws and regulations.

658.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

659.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

660.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

**Count 34 - Resource Conservation And Recovery Act**
**Buck Mine/Mill Facility:**
**Failure to Establish Cost Estimate for Closure**

661.  The allegations of Paragraphs 1-11, 113-128, and 320-332 above are re-alleged and incorporated herein by reference.

662.  Owners and operators of treatment, storage and disposal facilities are required by 40 C.F.R. § 264.140(a) and 10 CSR 25-7.264(2)(H) to meet the requirements of 40 C.F.R. § 264.142 (Cost Estimate for Closure) and 10 CSR 25-7.264(2)(H).

663.  40 C.F.R. § 264.142(a) and 10 CSR 25-7.264(2)(H), require that the owner or operator must have a detailed written estimate, in current dollars, of the cost of closing the facility in accordance with the requirements in 40 C.F.R. §§ 264.111 through 264.115, and applicable closure requirements in 40 C.F.R. § 264.197 for hazardous waste tanks and 40 C.F.R. § 264.228 for hazardous waste surface impoundments.

664.  At the time of the 2006 inspection, Defendants did not have a detailed written estimate, in current dollars, of the cost of closing the facility in accordance with the requirements in 40 C.F.R. §§ 264.111 through 264.115, applicable closure requirements in 40 C.F.R. § 264.197 and 40 C.F.R. § 264.228, and 10 CSR 25-7.264(2)(J) and 10 CSR 25-7.264(2)(K).

665.  Doe Run has violated 40 C.F.R. § 264.142(a) and 10 CSR 25-7.264(2)(H) by failing to establish a cost estimate for closure.

DRRC multimedia Complaint

666.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

667.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

668.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

### Count 35 - Resource Conservation And Recovery Act
### Buick Mine/Mill Facility:
### Failure to Establish Adequate Financial Assurance for Closure

669.  The allegations of Paragraphs 1-11, 113-128, and 320-332 above are re-alleged and incorporated herein by reference.

670.  Owners and operators of treatment, storage and disposal facilities are required by 40 C.F.R. § 264.140(a) and 10 CSR 25-7.264(2)(H), to meet the requirements of 40 C.F.R. § 264.143 (Financial Assurance for Closure) and 10 CSR 25-7.264(2)(H).

DRRC multimedia Complaint

671.  40 C.F.R. § 264.143(a) and 10 CSR 25-7.264(2)(H) require that the owner or operator of each facility must establish financial assurance for closure of the facility, and must choose from the options as specified in paragraphs (a) through (f) of 40 C.F.R. § 264.143.

672.  At the time of the 2006 inspection, Defendant had not established adequate financial assurance for closure of the facility using any of the options specified in paragraphs (a) through (f) of 40 C.F.R. § 264.143 and 10 CSR 25-7.264(2)(H).

673.  Doe Run has violated 40 C.F.R. § 264.143 and 10 CSR 25-7.264(2)(H) by failing to establish adequate financial assurance for closure.

674.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

675.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Mine/Mill Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

676.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

## Count 36 - Resource Conservation And Recovery Act
### Herculaneum Lead Smelter Facility:
### Operation as a Treatment, Storage and Disposal Facility Without a Permit

677.  The allegations of Paragraphs 1-11, 113-128, and 333-355 above are re-alleged and incorporated herein by reference.

678.  42 U.S.C. § 6925(a) and §§ 260.390(1) and 260.395.7-.11, RSMo require owners or operators of a hazardous waste treatment, storage, or disposal facility to obtain TSD permits or interim status.  Disposal of hazardous waste without a TSD permit or interim status is prohibited. Id.  Storage of hazardous waste without a TSD permit or interim status is prohibited except in compliance with the requirements of 10 CSR 25-5.262, incorporating 40 C.F.R. § 262.34(d).  Id.

679.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run has disposed of hazardous waste containing lead, cadmium, and mercury at the Herculaneum Smelter Facility without a TSD permit or interim status.

680.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run stored hazardous waste containing lead, cadmium, and mercury at the Herculaneum Smelter Facility without a TSD permit or interim status.

681.  Doe Run has violated RCRA § 3005(a), 42 U.S.C. § 6925(a), and §§ 260.390(1) and 260.395.7-.11, RSMo by owning and/or operating a hazardous waste disposal facility without a TSD permit or interim status.

DRRC multimedia Complaint

682.  Doe Run has violated RCRA § 3005(a), 42 U.S.C. § 6925(a), and §§ 260.390(1) and 260.395.7-.11, RSMo by owning and/or operating a hazardous waste storage facility without a TSD permit or interim status.

683.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

684.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

685.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

### Count 37 - Resource Conservation And Recovery Act
### Herculaneum Lead Smelter Facility:
### Land Disposal Restrictions Violations

686.  The allegations of Paragraphs 1-11, 113-128, and 333-355 above are re-alleged and incorporated herein by reference.

DRRC multimedia Complaint

687.  EPA regulations at 40 C.F.R. Part 268 and Missouri regulations at 10 CSR 25-7.268, which incorporates the federal regulations by reference, identifies hazardous wastes that are restricted from land disposal and defines those limited circumstances under which an otherwise prohibited waste may continue to be land disposed.

688.  Pursuant to 40 C.F.R. §§ 268.34 and 261.24, cadmium (D006), lead (D008), and mercury (D009) are prohibited hazardous wastes with a regulatory limit of 1.0 mg/L, 5.0 mg/L, and 0.2 mg/L, respectively.  Cadmium, lead, and mercury waste may only be land disposed if they no longer exhibit a prohibited characteristic of hazardous waste at the point of land disposal.

689.  Pursuant to 40 C.F.R. §§ 268.37 and 261.22, sulfuric acid is a prohibited hazardous waste exhibiting the characteristic of corrosivity (D002).  A corrosive hazardous waste may only be land disposed if it no longer exhibits a prohibited characteristic of hazardous waste at the point of land disposal.

690.  An inspection of the Herculaneum Smelter Facility and review of Doe Run's records indicated that on one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run violated land disposal restrictions by disposing of hazardous wastes exhibiting characteristics for lead, cadmium, mercury, and corrosivity over the regulatory limits.

691.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

692.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or

Page 156 of 182

DRRC multimedia Complaint

before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

693.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

**Count 38 - Resource Conservation And Recovery Act
Herculaneum Lead Smelter Facility:
Failure to Comply With Missouri Hazardous Waste Generator Requirements**

694.  The allegations of Paragraphs 1-11, 113-128, and 333-355 above are re-alleged and incorporated herein by reference.

695.  A generator of hazardous waste must register with the State for each location at which it generates hazardous waste § 260.380.1, RSMo, 10 CSR 25-5.262(1,) as modified by 10 CSR 25-5.262(2)(A).

696.  A generator who accumulates waste on-site for any period must inspect all areas regularly, including daily inspections for those areas subject to spills, and remedy any problems quickly enough to prevent risks to human health and the environment, 10 CSR 25-5.262(2)(C)2.C.  If the generator generates more than 1,000 kg per month of nonacute hazardous wastes ("Large Quantity Generator"), it must also have a containment system that will protect

DRRC multimedia Complaint

containers from contact with accumulated liquids, is free of cracks or gaps and is sufficiently impervious to contain leaks, spills and accumulated precipitation until the collected material is detected and removed, 10 CSR 25-5.262(1), as modified by 10 CSR 25-5.262(2)(C)2.D.

697.  Pursuant to 10 CSR 25-5.262(2)(C)1., a Large Quantity Generator must, for the entire time hazardous waste is accumulated in storage on-site, package, mark and label hazardous waste containers in compliance with the requirements of 40 C.F.R. § 262.32 and 40 C.F.R. Part 262 Subpart C, as incorporated and modified by 10 CSR 25-5.262.

698.  Pursuant to 10 CSR 25-5.262(2)(C)2., a Large Quantity Generator who accumulates waste on-site without a permit or interim status must comply with the requirements of 40 C.F.R. Part 265 Subpart D (Contingency Plan and Emergency Procedures) as incorporated in 10 CSR 25- 7.265(1) and modified in 10 CSR 25-7.265(2)(D).  More specifically, 40 C.F.R. §§ 265.52(a), (c), (d), and (e) require that a Large Quantity Generator maintain a contingency plan that: describes the actions facility personnel must take to comply with 40 C.F.R. §§ 265.51 and 265.56 in response to fires, explosions, or release of hazardous waste or hazardous waste constituents to air, soil, or surface water at the facility; lists all emergency equipment at the facility, where this equipment is required, and the location and a physical description of each item on the list, and a brief outline of its capabilities; lists names, addresses, and phone numbers (office and home) of all persons qualified to act as emergency coordinator, and this list must be kept up to date; and describes arrangements agreed to by local police departments, fire departments, hospitals, contractors, and State and local emergency response teams to coordinate emergency services pursuant to 40 C.F.R. § 265.37.

DRRC multimedia Complaint

699.  Pursuant to 10 CSR 25-5.262(2)(C)2., a Large Quantity Generator who accumulates waste on-site without a permit or interim status must comply with the requirements of 40 C.F.R. § 265.16 as incorporated in 10 CSR 25-7.265(1) and modified in 10 CSR 25-7.265(2)(D) by, among other things, training facility personnel to perform their duties in a way that ensures the facility's compliance with the requirements of 40 C.F.R. Part 265.  The owner or operator must ensure that this program includes all the elements described in the document required under subparagraph (d)(3) of 40 C.F.R. § 265.16.  Rule 40 C.F.R. § 265.16(b) requires facility personnel to successfully complete the training program within six months of the date of their employment or assignment to the facility, or to a new position at a facility, whichever is later.

700.  Large Quantity Generators may accumulate hazardous waste on-site for 90 days or less without a permit or without having interim status, provided that they maintain and operate their facility to minimize the possibility of a fire, explosion, or release of hazardous waste which could threaten human health or the environment, pursuant to 40 C.F.R. § 262.34(a)(4), as incorporated by reference at 10 CSR 25-5.262(1), referencing 40 C.F.R. Part 265, Subpart C (Preparedness and Prevention), which is incorporated by reference at 10 CSR 25-7.265(1), as incorporated and modified by 10 CSR 25-5.262.

701.  Doe Run submitted notification as a Large Quantity Generator at the Herculaneum Lead Smelter Facility in 1980.  At all times relevant to this Complaint, the Herculaneum Lead Smelter Facility was a Large Quantity Generator.

702.  Doe Run did not comply with the requirements of CSR 25-5.262(2)(C), including those set forth in Paragraphs 696-700, at its Herculaneum Smelter Facility.

DRRC multimedia Complaint

703.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

704.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

705.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

## Count 39 - Resource Conservation And Recovery Act
## Herculaneum Lead Smelter Facility:
## Failure to Determine Whether Wastes Were Hazardous

706.  The allegations of Paragraphs 1-11, 113-128, and 333-355 above are re-alleged and incorporated herein by reference.

707.  Pursuant to 40 C.F.R. § 262.11 and 10 CSR 25-5.262(1), any person who generates a solid waste must determine if that waste is a hazardous waste, using prescribed methods.  The generator must retain copies of the results of such waste determinations for at least three years

DRRC multimedia Complaint

after the waste is sent for treatment, storage, or disposal.  40 C.F.R. § 262.40(c) and 10 CSR 25-5.262(1).

708.  At the time of the 2005 Herculaneum RCRA Inspection, Doe Run had not completed a hazardous waste determination on the solid waste generated by a leaking sulfuric acid material from a valve in the piping leading from an above ground storage tank at the Herculaneum Smelter Facility.

709.  At the time of the 2005 Herculaneum RCRA Inspection, Doe Run had no records of the results of a hazardous waste determination on the solid waste generated from a leaking sulfuric acid material from a valve in the piping leading from an above ground storage tank at the Herculaneum Smelter Facility.

710.  At the time of the 2005 Herculaneum RCRA Inspection and the 2009 Herculaneum RCRA Inspection, Doe Run had not completed hazardous waste determinations on all of the solid wastes stored and/or disposed of at the Herculaneum Smelter Facility, including those listed in Paragraphs 346 and 352.

711.  Doe Run violated the requirements of Subchapter III of RCRA and § 260.380, RSMo by failing to conduct a hazardous waste determination and failing to maintain records of a hazardous waste determination in accordance with 40 C.F.R. §§ 262.11and 262.40, incorporated by reference at 10 CSR 25-5.262(1).

712.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

713.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up

DRRC multimedia Complaint

to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or

before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but

before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004

but before January 13, 2009, and $37,500 per day for each violation occurring on or after

January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28

U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.

§ 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004),

codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

714.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil

penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or

continues to occur, or both.

### Count 40 - Resource Conservation And Recovery Act
### Herculaneum Lead Smelter Facility:
### Failure to Comply With Used Oil Management and Handling Requirements

715.  The allegations of Paragraphs 1-11, 113-128, and 333-355 above are re-alleged and

incorporated herein by reference.

716.  Used oil spills must be cleaned up upon the detection of a release. 40 C.F.R.

§ 279.22, as incorporated by reference at 10 CSR 25-11.279(1).

717.  Containers used to store used oil must be in good condition (no severe rusting,

apparent structural defects or deterioration); and not leaking (no visible leaks).  40 C.F.R.

§ 279.22, as incorporated by reference at 10 CSR 25-11.279(1).

DRRC multimedia Complaint

718.  During the 2005 Herculaneum RCRA Inspection and the 2009 Herculaneum RCRA Inspection, inspectors observed 55-gallon and 30-gallon containers of used oil that were not in good condition.

719.  During the 2005 Herculaneum RCRA Inspection, inspectors observed used oil spills and soils stained with used oil in the used oil storage area.  Upon information and belief, Doe Run detected or should have detected these spills.

720.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe Run violated RCRA § 3014, 42 U.S.C. § 6935 and § 260.380, RSMo by failing to manage used oil at the Herculaneum Lead Smelter Facility in accordance with applicable Missouri laws and regulations.

721.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

722.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

723.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

**Count 41 - Resource Conservation And Recovery Act
Herculaneum Lead Smelter Facility:
Failure to Establish Cost Estimate for Closure**

724.  The allegations of Paragraphs 1-11, 113-128, and 333-355 above are re-alleged and incorporated herein by reference.

725.  Owners and operators of treatment, storage and disposal facilities are required by 40 C.F.R. § 264.140(a) and 10 CSR 25-7.264(2)(H) to meet the requirements of 40 C.F.R. § 264.142 (Cost Estimate for Closure) and 10 CSR 25-7.264(2)(H).

726.  40 C.F.R. § 264.142(a) and 10 CSR 25-7.264(2)(H), require that the owner or operator must have a detailed written estimate, in current dollars, of the cost of closing the facility in accordance with the requirements in 40 C.F.R. §§ 264.111 through 264.115, and applicable closure requirements in 40 C.F.R. § 264.197 for hazardous waste tanks and 40 C.F.R. § 264.228 for hazardous waste surface impoundments.

727.  At the time of the 2006 inspection, Defendants did not have a detailed written estimate, in current dollars, of the cost of closing the facility in accordance with the requirements in 40 C.F.R. §§ 264.111 through 264.115, applicable closure requirements in 40 C.F.R. § 264.197 and 40 C.F.R. § 264.228, and 10 CSR 25-7.264(2)(J) and 10 CSR 25-7.264(2)(K).

728.  Doe Run has violated 40 C.F.R. § 264.142(a) and 10 CSR 25-7.264(2)(H) by failing to establish a cost estimate for closure.

DRRC multimedia Complaint

729.   Unless restrained by an order of the Court, these and similar violations are likely to continue.

730.   As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

731.   Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

### Count 42 - Resource Conservation And Recovery Act
### Herculaneum Lead Smelter Facility:
### Failure to Establish Adequate Financial Assurance for Closure

732.   The allegations of Paragraphs 1-11, 113-128, and 333-355 above are re-alleged and incorporated herein by reference.

733.   Owners and operators of treatment, storage and disposal facilities are required by 40 C.F.R. § 264.140(a) and 10 CSR 25-7.264(2)(H), to meet the requirements of 40 C.F.R. § 264.143 (Financial Assurance for Closure) and 10 CSR 25-7.264(2)(H).

DRRC multimedia Complaint

734.  40 C.F.R. § 264.143(a) and 10 CSR 25-7.264(2)(H) require that the owner or operator of each facility must establish financial assurance for closure of the facility, and must choose from the options as specified in paragraphs (a) through (f) of 40 C.F.R. § 264.143.

735.  At the time of the 2006 inspection, Defendant had not established adequate financial assurance for closure of the facility using any of the options specified in paragraphs (a) through (f) of 40 C.F.R. § 264.143 and 10 CSR 25-7.264(2)(H).

736.  Doe Run has violated 40 C.F.R. § 264.143 and 10 CSR 25-7.264(2)(H) by failing to establish adequate financial assurance for closure.

737.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

738.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

739.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

**Count 43 - Resource Conservation And Recovery Act**
**Buick Resource Recycling Facility:**
**Violation of Permit Requirements**

740. The allegations of Paragraphs 1-11, 113-128, and 356-373 above are re-alleged and incorporated herein by reference.

741. Buick, LLC applied for a permit for the treatment, storage and disposal of hazardous waste pursuant to Section 3005 of RCRA, 42 U.S.C. § 6925 and § 260.375, RSMo.  On September 27, 1989 the MDNR issued a Hazardous Waste Management Facility, Part I permit, Permit Number MOD059200089, to Buick LLC for the Buick Resource Facility.  The permit was renewed and modified on several occasions.  Permit Number MOD059200089 was reissued on March 15, 2005 and is effective through March 15, 2015.

742.  Permit Number MOD059200089 has special permit conditions and schedule of compliance provisions as described in Paragraph 358.

743.  Doe Run failed to prevent releases of hazardous wastes from the Battery Bunker and Paste Storage Area, the Reverbatory Furnace Building and the Blast Furnace Feed Building, which are all containment buildings at its Buick Resource Facility.  The failure to prevent the releases from the containment buildings is a violation of Special Permit Condition III.C.8.a of Permit Number MOD059200089, Section 260.395.9, RSMo and 40 C.F.R. § 264.1101.

744.  By allowing releases to occur from the Battery Bunker and Paste Storage Area, the Reverbatory Furnace Building and the Blast Furnace Feed Building Doe Run failed to operate

DRRC multimedia Complaint

these buildings as containment buildings at its Buick Resource Facility.  The failure to operate

the buildings as containment buildings is a violation of Special Permit Condition III.C.6.a of

Permit Number MOD059200089, Section 260.395.9, RSMo and 40 C.F.R. § 264.1101.

745.  Doe Run failed to have the floor free of cracks or gaps in the Palletized Storage

Area of its Buick Resource Facility and, therefore, this container storage area did not have a base

underlying the containers which was free of cracks or gaps and sufficiently impervious to contain

leaks, spills, and accumulated precipitation.  The failure to properly operate this containment

system for the Palletized Storage Area is a violation of Special Permit Condition I.G.1 of Permit

Number MOD059200089, Section 260.395.9, RSMo and 40 C.F.R. § 264.175, incorporated by

reference at 10 CSR 25-7.264(1) and modified in 10 CSR 25-7.264(2)(I).

746.  By allowing the Battery Bunker and Paste Storage Area, the Reverbatory Furnace

Building and the Blast Furnace Feed Building to have holes in the metal siding and ceilings, gaps

along the walls and under doors, and open doors, Doe Run has failed to completely enclose the

containment buildings to prevent exposure to the elements and to assure containment of the

maximum permitted quantity of managed waste. This failure to completely enclose the

containment buildings is a violation of Special Permit Condition III.C.1 of Permit Number

MOD059200089, Section 260.395.9, RSMo and 40 C.F.R. § 264.1101.

747.  As part of the Schedule of Compliance contained in Permit Number

MOD059200089 Doe Run agreed to a schedule to upgrade the doors for the vehicle entrances to

the containment buildings.  The latest extension to this schedule required the upgrade to the

doors to be completed by February 26, 2009.  At the time of the inspection this upgrade was not

complete. By not completing this upgrade to the doors for the vehicle entrances Doe Run

DRRC multimedia Complaint

violated Schedule of Compliance Condition I.F of Permit Number MOD059200089 and Section 260.395.9, RSMo.

748.   Doe Run did not operate its decontamination stations to prevent tracking of wastes out of the containment buildings at the Buick Resource Facility.  By not decontaminating waste/material-handling vehicles prior to their exiting the containment buildings Doe Run violated Special Permit Condition III.C.8.c of Permit Number MOD059200089, Section 260.395.9, RSMo and 40 C.F.R. § 264.1101.

749.   Doe Run has not utilized a concrete roadway between the treated slag staging area and the perimeter of the landfill.  By having a gravel roadway, the roadway cannot be cleaned by a mechanical sweeper and the roadway cannot be included in the facility's overall plant sweeping program.  This lack of utilizing a concrete roadway between the treated slag staging area and the perimeter of the landfill is a violation of Special Permit Condition VI.C.10 of Permit Number MOD059200089 and Section 260.395.9, RSMo.

750.   Up to and including the time of the March 2009 Buick Resource RCRA Inspection, Doe Run was not inspecting the areas immediately surrounding the containment buildings.  This failure to inspect those areas immediately surrounding the containment buildings is a violation of Special Permit Condition III.C.12 of Permit Number MOD059200089, Section 260.395.9, RSMo and 40 C.F.R. § 264.1101.

751.   At the time of the September 2009 Buick Resource RCRA Inspection, Doe Run and Buick LLC were in violation of the following hazardous waste laws and provisions of Permit Number MOD059200089: 40 C.F.R. § 264.1101(C)(1) as incorporated in 10 CSR 25-7.264.2 and Special Permit Condition III.C.1; and Special Permit Condition VI.C.10.

DRRC multimedia Complaint

752.   At the time of the November 2009 Buick Resource RCRA Inspection, Doe Run and Buick LLC were in violation of the following hazardous waste laws and provisions of Permit Number MOD059200089: 40 C.F.R. § 264.l101(a)(l), as incorporated in 10 CSR 25-7.264(2) and Special Permit Condition III.C.1. of Permit Number MOD059200089; Special Permit Condition VI.C.10; 40 C.F.R. § 264.1101(c)(iii), as incorporated in 10 CSR 25-7.264(2) and Special Permit Conditions III.C.8.c.; Special Permit Condition III.B.3. and III.C.5.; 40 C.F.R. § 64.1101(c) (1), as incorporated in 10 CSR 25-7.264(2) and Special Permit Condition III.C.1.; Special Permit Condition III.C.8.a.; 40 C.F.R. § 270.42, as incorporated in 10 CSR 10-25-7.270; the requirement to construct and operate the facility in accordance with the approved permit application; Schedule of Compliance I.F.; and Special Permit Condition III.B.6.

753.   At the time of the December 2009 Buick Resource RCRA Inspection, Doe Run and Buick LLC were in violation of the following hazardous waste laws and provisions of Permit Number MOD059200089: 40 C.F.R. § 264.1101(C)(1) as incorporated in 10 CSR 25-7.264.2 and Special Permit Condition III.C.1; 10 CSR 25-5.262(1) incorporating 40 C.F.R. § 262.11; Special Permit Condition III.C.8.c.; and 260.390.1(1) RSMo.

754.   Unless restrained by an order of the Court, these and similar violations are likely to continue.

755.   As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run and Buick LLC to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Resource Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16,

DRRC multimedia Complaint

2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after

January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28

U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C.

§ 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004),

codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

756.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil

penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or

continues to occur, or both.

### Count 44 - Resource Conservation And Recovery Act
### Buick Resource Recycling Facility:
### Failure to Determine Whether Wastes Were Hazardous

757.  The allegations of Paragraphs 1-11, 113-128, and 356-373 above are re-alleged and

incorporated herein by reference.

758.  Pursuant to 40 C.F.R. § 262.11 and 10 CSR 25-5.262(1), any person who generates

a solid waste must determine if that waste is a hazardous waste, using prescribed methods.  The

generator must retain copies of the results of such waste determinations for at least three years

after the waste is sent for treatment, storage, or disposal.  40 C.F.R. § 262.40(c) and 10 CSR 25-

5.262(1).

759.  At the time of the March 2009 Buick Resource RCRA Inspection, Doe Run had not

completed hazardous waste determinations on the following solid wastes generated at the Buick

Resource Facility: shredded battery casings and materials in the decommissioned air ducts.

760.  At the time of the March 2009 Buick Resource RCRA Inspection, Doe Run had no

records of the results of any hazardous waste determinations on any of the following solid wastes

DRRC multimedia Complaint

generated at the Buick Resource Facility: shredded battery casings and materials in the

decommissioned air ducts.

761.  At the time of the March 2009 Buick Resource RCRA Inspection, Doe Run had not

completed hazardous waste determinations on all of the solid wastes stored at the Buick

Resource Facility.

762.  Doe Run violated the requirements of Subchapter III of RCRA and § 260.380,

RSMo by failing to conduct hazardous waste determinations and failing to maintain records of

hazardous waste determinations in accordance with 40 C.F.R. §§ 262.11 and 262.40,

incorporated by reference at 10 CSR 25-5.262(1).

763.  Unless restrained by an order of the Court, these and similar violations are likely to

continue.

764.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g),

the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up

to $25,000 per day for each violation at the Buick Resource Facility occurring on or before

January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before

March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but

before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13,

2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461

note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61

Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R.

Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

765.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

### Count 45 - Resource Conservation And Recovery Act
### Buick Resource Recycling Facility:
### Failure to Properly Label Hazardous Waste Containers

766.  The allegations of Paragraphs 1-11, 113-128, and 356-373 above are re-alleged and incorporated herein by reference.

767.  Pursuant to 40 C.F.R. § 262.31 and 10 CSR 25-5.262(2)(C)(1), before transporting or offering hazardous waste for transportation off-site, a generator must label each package in accordance with the applicable Department of Transportation ("DOT") regulations on hazardous waste under 49 C.F.R. Part 172.

768.  At the time of the March 2009 Buick Resource RCRA Inspection, Doe Run had placed refractory brick, a characteristic hazardous waste, in a roll-off container and was offering it for transportation off-site.  The material had been stored for less than 90 days.  Doe Run indicated that the refractory brick was scheduled to be picked later that day for disposal off-site. The roll-off container was marked as hazardous waste but was not labeled in accordance with DOT regulations.

769.  Doe Run violated the requirements of Subchapter III of RCRA and § 260.380, RSMo by failing to properly label a  hazardous waste container that was being offered for transport in accordance with 40 C.F.R. §§ 262.31, incorporated by reference at 10 CSR 25-5.262(2)(C)(1).

DRRC multimedia Complaint

770.  Unless restrained by an order of the Court, these and similar violations are likely to continue.

771.  As provided in Section 3008(a) and (g) of RCRA, 42 U.S.C. §§ 6928(a) and (g), the RCRA violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $25,000 per day for each violation at the Buick Resource Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

772.  Pursuant to § 260.425, RSMo, Doe Run is liable for injunctive relief and civil penalties of up to $10,000 per day for each day, or part thereof, the violation occurred or continues to occur, or both.

### Count 46 - Resource Conservation And Recovery Act
### Violation of Transportation Order

773.  The allegations of Paragraphs 1-11, 129-134, and 374-378 above are re-alleged and incorporated herein by reference.

774.  On May 2, 2007, Doe Run signed the Transportation Order agreeing to comply with its terms.  On May 9, 2007, the Transportation Order became effective.

DRRC multimedia Complaint

775.  By failing to properly wash trucks, failing to properly inspect trucks, failing to

properly cover or enclose lead-bearing materials, failing to make necessary repairs to trucks,

allowing defective trucks to transport lead-bearing materials, and allowing leaking of lead-

bearing materials from trucks Doe Run failed to comply with the provisions of the

Transportation Order and therefore, violated Section 7003 of RCRA, 42, U.S.C. § 6973.

776.  Unless restrained by an order of the Court, these and similar violations are likely to

continue.

777.  As provided in Section 7003(b) of RCRA, 42 U.S.C. § 6973(b),  the RCRA

violations set forth above subject Doe Run to injunctive relief and civil penalties of up to $5,000

per day for each violation of the Transportation Order occurring on or before January 30, 1997,

$5,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004,

$6,500 per day for each violation occurring on or after March 16, 2004 but before January 13,

2009, and $7,500 per day for each violation occurring on or after January 13, 2009, pursuant to

the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as

amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed.

Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part

19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

### Count 47 - Emergency Planning and Community Right-To-Know Act
### Herculaneum Lead Smelter Facility:
### Failure to Immediately Notify of Release

778.  The allegations of Paragraphs 1-11, 135-144, and 379-384 above are re-alleged and

incorporated herein by reference.

DRRC multimedia Complaint

779.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe run violated EPCRA Section 304, 42 U.S.C. § 11004, and 40 C.F.R. § 355.40 by failing to immediately notify the SERC and/or the LEPC of a release of CERCLA Hazardous Substance.

780.  Unless restrained by an Order of the Court, this and similar violations of EPCRA and 40 C.F.R. § 355.40 are likely to continue.

781.  As provided in Section 325(b) of EPCRA, 42 U.S.C. § 11045(b), the EPCRA violations set forth above subject Doe Run to civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

**Count 48 - Comprehensive Environmental Response, Compensation, and Liability Act Herculaneum Lead Smelter Facility: Failure to Immediately Notify of Release**

782.  The allegations of Paragraphs 1-11, 145-151, and 385-388 above are re-alleged and incorporated herein by reference.

783.  On one or more occasions in the five year period immediately preceding the filing of this Complaint, Doe run violated CERCLA Section 103, 42 U.S.C. § 9603, and

DRRC multimedia Complaint

40 C.F.R. § 302.6 by failing to immediately notify the NRC of a release of a hazardous substance.

784.  Unless restrained by an Order of the Court, this and similar violations of CERCLA and 40 C.F.R. § 302.6 are likely to continue.

785.  As provided in Section 109(c) of CERCLA, 42 U.S.C. § 9609(c), the CERCLA violations set forth above subject Doe Run to civil penalties of up to $25,000 per day for each violation at the Herculaneum Lead Smelter Facility occurring on or before January 30, 1997, $27,500 per day for each violation occurring after January 30, 1997 but before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004 but before January 13, 2009, and $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008).

DRRC multimedia Complaint

## UNITED STATES' AND THE STATE OF MISSOURI'S REQUEST FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court:

1.  Permanently enjoin Doe Run from operating the Herculaneum Lead Smelter Facility, including future modifications or reconstructions, except in accordance with the Clean Air Act and the Missouri Air Conservation Law and applicable regulatory requirements.

2.  Order Doe Run to remedy its past violations by, among other things, requiring Doe Run to employ, as appropriate, the Best Available Control Technology under PSD, Lowest Achievable Emission Rate under nonattainment NSR, or such other emissions control technology required by law, at the Herculaneum Lead Smelter Facility for each pollutant subject to regulation under the Clean Air Act.

3.  Order Doe Run to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act and the Missouri Air Conservation Law alleged above.

4.  Order Doe Run to apply for permits that are in conformity with the requirements of the Clean Air Act, the Missouri Air Conservation Law and Missouri SIP requirements.

5.  Order Doe Run to comply with the NSPS provisions of the Clean Air Act and the Missouri Air Conservation Law at the Herculaneum Lead Smelter Facility.

6.  Order such injunctive relief as necessary to compel Defendants to properly characterize and thereafter manage all RCRA hazardous waste generated at their Buick Mine/Mill Facility, Buick Resource Facility, and Herculaneum Lead Smelter Facility, as required by Section 3002 of RCRA, 42 U.S.C. § 6922, and 40 C.F.R. Part 262 and the authorized requirements of § 260.380, RSMo.

DRRC multimedia Complaint

7.      Order Defendants to take other appropriate actions to remedy, mitigate, and offset the

harm to public health and the environment caused by the violations of RCRA and the

Missouri Hazardous Waste Management Law alleged above and to comply with the

applicable provisions of RCRA and the Missouri Hazardous Waste Management Law

and the limitations and conditions of the applicable State Hazardous Waste Management

Facility Permit.

8.      Order Doe Run to comply with the provisions of the Administrative Order on Consent, In

the Matter of The Doe Run Transportation and Haul Route, Southeastern Missouri,

Docket No. RCRA-07-2007-0008, entered into by Doe Run and EPA pursuant to Section

7003 of RCRA and filed on May 9, 2007.

9.      Order such injunctive relief as necessary to prevent Defendants from discharging

pollutants except as expressly authorized by the CWA and the Missouri Clean Water Law

and the limitations and conditions of the applicable State Operating Permit.

10.     Order such injunctive relief as necessary to compel Defendants to take all steps necessary

to comply with the CWA and the Missouri Clean Water Law and the limitations and

conditions of the applicable State Operating Permit.

11.     Order such additional injunctive relief as necessary to compel Defendants to take all steps

necessary to comply with the CAA, Missouri Air Conservation Law, CWA, Missouri

Clean Water Law, CERCLA, EPCRA, RCRA, and the Missouri Hazardous Waste

Management Law and, where applicable, their implementing regulations.

12.     Assess civil penalties against Defendants not to exceed $25,000 per day for each

violation occurring prior to or on January 30, 1997; not to exceed $27,500 per day for

DRRC multimedia Complaint

each violation occurring after January 30, 1997 but before March 16, 2004; not to exceed

$32,500 per day for each violation occurring on or after March 16, 2004 but before

January 13, 2009; and not to exceed $37,500 per day for each violation occurring on or

after January 13, 2009 up to the date of judgment herein, pursuant to:  Section 325(c) of

EPCRA, 42 U.S.C. § 11045(c); Section 109(c) of CERCLA, 42 U.S.C. § 9609(c);

Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); Section 113(b) of the CAA, 42 U.S.C.

§ 7413(b); and Section 309(d) of the CWA, 33 U.S.C. § 1319)(d).

13.     Assess civil penalties against Doe Run not to exceed $6,500 per day for each violation

occurring on or after March 16, 2004 but before January 13, 2009, and $7,500 per day for

each violation occurring on or after January 13, 2009 up to the date of judgment herein,

pursuant to Section 7003(b) of RCRA, 42 U.S.C. § 6973(b).

14.     Award the United States and the State of Missouri their costs in this action.

15.     Grant the United States and the State of Missouri such other and further relief as this

Court deems just and proper.


Dated: October 7, 2010

DRRC multimedia Complaint

Respectfully submitted,

*Ignacia S. Moreno*

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

*Cynthia M. Ferguson*

CYNTHIA M. FERGUSON
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611 Benjamin Franklin Station
Washington, D.C.  20044-7611
Telephone: (202) 616-6560
Fax: (202) 514-4180
Email: cynthia.ferguson@usdoj.gov


LOCAL COUNSEL:

RICHARD G. CALLAHAN
United States Attorney
Eastern District of Missouri
SUZANNE J. MOORE
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St.  Louis, Missouri 63102
Telephone: (314) 539-2200


OF COUNSEL
DANA SKELLEY
PATRICIA GILLISPIE MILLER
SARA HERTZ
STEVEN L. SANDERS
Regional Counsel
U.S. Environmental Protection Agency Region VII
901 N. 5th Street
Kansas City, Kansas 66101

DANIELLE C. FIDLER
Attorney-Advisor
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue NW
Mail Code 2248-A
Washington, DC 20460

DRRC multimedia Complaint

ATTORNEYS FOR STATE OF MISSOURI

CHRIS KOSTER
Attorney General

Kara L. Valentine

Kara Valentine                           9/26/10
Assistant Attorneys General
Missouri Bar No. 40926
221 West High Street
P.O. Box 899
Jefferson City, MO  65102
phone: (573) 751-3640
fax:    (573) 751-8796
Email: kara.valentine@ago.mo.gov