UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and, ) | |
| STATE OF MISSOURI, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:10CV01895 JCH |
| ) | |
| THE DOE RUN RESOURCES ) | |
| CORPORATION, THE DOE RUN ) | |
| RESOURCES CORPORATION d/b/a ) | |
| THE DOE RUN COMPANY, and ) | |
| THE BUICK RESOURCE RECYCLING ) | |
| FACILITY, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Nadist, LLC's Motion to Intervene (Doc. No. 8) and the Motion of the United States of America for Entry of Case Management Order and to Strike Count V of Nadist Complaint in Intervention (Doc. No. 19). These motions are fully briefed and ready for disposition.

### BACKGROUND

Nadist, LLC ("Nadist") owns land near the Sweetwater Mine and Mill ("Sweetwater"). (Motion to Intervene, ¶1). Nadist leases mineral rights to some of that land to the Doe Run Resources Corporation pursuant to a Mineral Lease. (Id.). On June 23, 2006, Nadist filed a lawsuit ("Nadist litigation") asking the Court to order Doe Run to comply with the applicable environmental laws, to remedy the contamination caused by its violation of those laws and to enforce the terms of the Mineral Lease. (Id., ¶2; see 4:06cv969-CDP). On June 4, 2008, the State of Missouri moved to intervene in the Nadist litigation. (Motion to Intervene, ¶3). Nadist solicited the United States of

America ("United States") to intervene in the Nadist litigation, but the United States declined. (Plaintiff United States' Memorandum in Response to Nadist, LLC's Motion to Intervene and in Support of Motion for Entry of Case Management Order and to Strike Count V of Intervener Complaint ("US Memorandum"), Doc. No. 20, p. 3).

In October 2009, the United States and the State of Missouri ("Government Plaintiffs") began negotiations with The Doe Run Resources Corporation, The Doe Run Resources Corporation d/b/a The Doe Run Company, and The Buick Resource Recycling Facility, LLC ("Doe Run" or "Defendants"). (Id., p. 2). The negotiations related to Defendants' violations of environmental laws at Defendants' primary lead smelter in Herculaneum, Missouri, and several other facilities. (Id., pp. 2-3). The United States excluded violations at Sweetwater from its negotiations with Defendants in this matter because Nadist and the State were pursuing violations at Defendants' Sweetwater facility in the Nadist litigation. (Id., p. 3).

On October 8, 2010, the Government Plaintiffs filed the instant lawsuit, alleging violations of various state and federal environmental laws. (Doc. No. 1).[1] Simultaneous with filing the instant Complaint, the United States lodged a Consent Decree to resolve the claims in the Complaint. (Doc. No. 2).

On November 19, 2010, Nadist filed a Motion to Intervene, pursuant to Fed.R.Civ.P. 24(a). Nadist claims that it has a right to intervene under the Clean Water Act ("CWA"), the Resource Conservation and Recovery Act ("RCRA") and the Clean Air Act ("CAA"). Nadist states that it has an interest in the Consent Decree and this lawsuit because it owns property near Sweetwater and

---

[1]The United States notes that, with the exception of Count 46 of the Government Plaintiffs' Complaint alleging violations of a 2007 RCRA Section 7003 Administrative Order on Consent between the Environmental Protection Agency and Doe Run Addressing the Defendants' transportation operations (transportation AOC), the Government Plaintiffs' Complaint does not allege violations at the Sweetwater facility. (US Memorandum, p. 3).

because the Consent Decree impacts Does Run's performance under the Mineral Lease. Nadist claims that its ability to protect its interests may be impaired by this litigation. (Motion to Intervene, ¶7). Specifically, Doe Run has argued that several issues in the Nadist litigation under the CWA are mooted by the proposed entry of the Consent Decree. (Nadist's Memorandum in Support of Motion to Intervene ("Nadist Memorandum"), Doc. No. 9, pp. 4-5).

## STANDARD OF REVIEW

Under Fed.R.Civ.P. 24(a), "[o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Notes to Subdivision (a) of Fed.R.Civ.Pro. 24.

Under Fed.R.Civ.P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A district court enjoys liberal discretion under Rule 12(f). Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc., 278 F.3d 742, 748 (8th Cir. 2001); Stanbury Law Firm, v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000). "Despite this broad discretion however, striking a party's pleadings is an extreme measure, and, as a result, ... 'motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" Stanbury Law Firm, P.A., 221 F.3d at 1063 (citing Lunsford v. United States, 570 F.2d 221, 229.

## DISCUSSION

**I.      Motion to Intervene**

The proposed Consent Decree requires Defendants to perform several tasks. First, the smelter in Herculaneum, Missouri must be shut down by December 31, 2013. (Consent Decree, Doc. No. 2-1, ¶14.a). The Consent Decree also requires a modification to the transportation administrative order on consent ("AOC"). (US Memorandum, p. 4). Finally, Defendants must establish financial assurance trust funds for the future cleanup of several mining and milling facilities and must spend $2 million on community mitigation projects. (Id., p. 5).

Sweetwater is one of Doe Run's facilities that would be affected by entry of the Consent Decree. The Sweetwater facility is affected by the Consent Decree in a few ways. First, Sweetwater is subject to the amended terms of the transportation AOC.[2] Second, Sweetwater is subject to the compliance measures, interim alternative CWA effluent discharge limits, and the process to expedite resolution of CWA permit appeals.[3] Finally, Sweetwater is subject to the requirements to establish financial assurance trust funds and to enclose the lead concentrate handling, loading and storage areas at the facility. (US Memorandum, p. 6).

Nadist claims that the common issues between the Nadist lawsuit and the Consent Decree and the plain language of the statutes "dictate that Nadist has a right to intervene in this lawsuit" under Fed.R.Civ.P. 24(a). (Nadist Memorandum, p. 5). Section 505 of the CWA, Section 7002 of RCRA and Section 304 of the CAA allow intervention as a matter of right.

---

[2] Except for violations of the Transportation AOC as alleged in the Government Plaintiffs' Complaint that involve the Sweetwater facility, the Consent Decree does not release Defendants from liability for past environmental violations at the Sweetwater facility. (US Memorandum, p. 5; Consent Decree, ¶¶233-34).

[3] "Where interim alternative [Clean Water Act] effluent discharge limits have been negotiated for certain Doe Run facilities (see Appendix B of the Decree), the Government Plaintiffs['] covenant not to sue Doe Run for the original permit limits from the date of lodging through the deadline set forth in Appendix B if Doe Run is meeting the interim alternative limits; the alternative limits are subject to stipulated penalties." (US Memorandum, pp. 5-6; Consent Decree, ¶¶192, 235).

Section 505 of the CWA provides:

> No action may be commenced– ... if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

33 U.S.C. §1365(b)(1)(B).

Section 7002 of the RCRA provides:

> In any action under subsection (a)(1)(B) of this section in a court of the United States, any person may intervene as a matter of right when the applicant claim an interest relating to the subject of the action and he is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest...

42 U.S.C. §6972.

Section 304 of the CAA provides:

> No action may be commenced under subsection (a)(1)(A) of this section --...if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

42 U.S.C. §7604(b)(1)(B).

The Court finds that the statutes allow Nadist to intervene as a matter of right. Although they claim the impact is minimal, Government Plaintiffs and the Defendants admit that the proposed Consent Decree affects Nadist's property at Sweetwater. (US Memorandum, pp. 5-6; Defendants' Response to Nadist, LLC's Motion to Intervene and Motion for Entry of Case Management Order ("Defendants' Memorandum"), Doc. No. 21, p. 4). Given Nadist's interest in the property and, accordingly, the Consent Decree, Nadist has a statutory right to intervene and the Court grants its Motion to Intervene pursuant to Rule 24(a)(1) of the Federal Rules of Civil Procedure.

## II. Motion for Entry of CMO and to Strike Count V

A.    CMO

Government Plaintiffs and Defendants, however, ask this Court to enter a case management order ("CMO") that would limit the scope of Nadist's intervention. The United States proposes allowing Nadist to intervene "for the limited purpose of providing objections to the Consent Decree regarding Sweetwater and to preserve claims Nadist asserts it has for attorneys' fees incurred" in the Nadist lawsuit. (US Memorandum, p. 7). The United States warns that, otherwise ,Nadist may seek discovery from the parties, which will derail consideration of the public comments on the Consent Decree. (US Memorandum, p. 8). Or, Nadist may attempt to inject ancillary issues into this litigation which would distract from and obstruct entry of the proposed Consent Decree. Id.; see United States v. Duke Energy Corp., 171 F. Supp. 2d 560, 565 (M.D.N.C. 2001) ("Applicants have an unconditional right to intervene, but this does not prevent the imposition of reasonable limitations on Applicants' participation to ensure the efficient adjudication of the litigation."); Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 383, 94 L. Ed. 2d 389, 107 S. Ct. 1177 (1987)(Brennan, J., concurring)("Restrictions on participation may . . . be placed on an intervenor of right and on an original party."). Defendants argue that Nadist can address any Sweetwater-specific claims that are not addressed by the Consent Decree in the Nadist litigation. (Defendants' Memorandum, p. 6). The United States and Defendants also assert that Nadist's concerns regarding the Consent Decree can be addressed by providing public comment during the public comment period. (US Memorandum, pp. 6-7, 12; Defendants' Memorandum, p. 2).[4]

The Court finds that the CMO proposed by the Government Plaintiffs and Defendants hamstrings any real, effective participation by Nadist in the litigation. None of the cases cited by the

---

[4]The public comment period was from October 15, 2010 until December 14, 2010 and a public meeting regarding the Consent Decree was held in Herculaneum, Missouri on December 9, 2010. (US Memorandum, p. 6). The United States considered the issues raised in Nadist's proposed pleadings as part of the comment review process. (Id., p. 6, n. 8).

- 6 -

United States allows the preemptive entry of an unduly restrictive CMO as advocated for here. (US Memorandum, pp. 9-10). The Government and Defendants' concern that Nadist will seek overly burdensome discovery that will derail approval of the Consent Decree is premature. Nadist has not yet asked for discovery and this Court has not had an opportunity to determine if additional discovery would be warranted. United States v. Wastecontrol of Florida, Inc., 730 F. Supp. 401, 404 (M.D. Fla. 1989) ("Courts do sometimes find under limited circumstances that the administrative record must be supplemented.").[5] The Court finds that limitations on discovery and/or precluding an evidentiary hearing should be addressed after the parties have had an opportunity to meet and confer as part of establishing a joint case management order. The Court will coordinate Nadist's participation in this litigation with that of the other parties as part of the Rule 16 conference. Accordingly, the Court denies the United States and Defendants' request for entry of the proposed CMO.

B.      Count V

The Government Plaintiffs and the Defendants also ask this Court to strike Count V of Nadist's proposed intervenor complaint because it asks this Court to modify the proposed Consent Decree. In Count V, Nadist alleges that the Consent Decree is impermissibly vague because it requires that Doe Run develop a number of plans in the future but those plans are not part of the Consent Decree. (Complaint in Intervention, pp. 23-24). Nadist asks this Court to enter an order, among other things, "modifying the consent decree to provide sufficient detail so as to render the

---

[5]Nadist has indicated that it will seek only limited discovery because it can utilize discovery from the Nadist lawsuit. See Plaintiff Nadist, LLC's Memorandum in Opposition to the United States' Motion for Entry of Case Management Order and to Strike Count V of Intervenor Complaint ("Nadist Opposition"), Doc. No. 34, p. 7 ("In the event Nadist should seek information not in its possession via the Nadist litigation, such information would relate to the specific issues involving the Sweetwater facility. These [issues] are limited and information relevant to these issues would also be limited.").

Consent Decree protective of human health and the environment and to afford Nadist and others an opportunity to fully understand Doe Run's obligations pursuant to the Consent Decree and evaluate the effect of the same." (Complaint in Intervention, p. 25).

Nadist claims that the requested relief is premature, given that the Court has not yet allowed Nadist to intervene. (Nadist Opposition, pp. 10-11). Nadist also asserts that "[i]t seems unlikely that district courts have been restrained to the degree suggested by the United States --restraint that amounts to a 'take it or leave it' approach to judicial consideration and review of proposed consent decrees.'" (Id., p. 11). Nadist, however, does not cite to any case law to support its claim that this Court possesses such expansive powers to modify the Consent Decree.

Several cases, however, support the position that this Court is constrained to a "take it or leave it" stance with respect to the Consent Decree. "The reviewing court does not have the power to modify a consent decree; it may only approve or reject it." United States v. Cannons Engineering Corp., 720 F. Supp. 1027, 1036 (D. Mass. 1989) (citing United States v. Jones & Laughlin Steel Corp., 804 F.2d 348 (6th Cir. 1986); Officers for Justice v. Civil Service Commission, 688 F.2d 615, 630 (9th Cir. 1982); Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 965 (3rd Cir. 1983)). Similar to other settlements, the Consent Decree is subject to approval, not modification, by the District Court. See United States v. Metropolitan St. Louis Sewer Dist., 952 F.2d 1040, 1044 (8th Cir. 1992) (quoting United States Envtl. Protection Agency v. City of Green Forest, 921 F.2d 1394, 1402 (8th Cir. 1990), cert. denied, 112 S.Ct. 414 (1991) ("Once the intervenors had an opportunity to file objections to the proposed consent decree, 'there is little else that they could have done.'").

The Court finds that modifying the Consent Decree is beyond its scope of authority. Nadist will have an opportunity to file its objections to the Consent Decree, but not to modify it.

Accordingly, the Court strikes Count V, but only to the extent that it asks this Court to modify the Consent Decree.

Accordingly,

**IT IS HEREBY ORDERED** that Nadist, LLC's Motion to Intervene (Doc. No. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion of the United States of America for Entry of Case Management Order and to Strike Count V of Nadist Complaint in Intervention (Doc. No. 19) is **GRANTED**, in part, and **DENIED**, in part. The United States' request for entry of a case management order is denied. The Court grants the United States' motion to strike Count V to the extent that Count V asks this Court to modify the Consent Decree.

Dated this 25th day of January, 2011.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE
