UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and, ) <br> STATE OF MISSOURI, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE DOE RUN RESOURCES ) <br> CORPORATION, THE DOE RUN ) <br> RESOURCES CORPORATION d/b/a ) <br> THE DOE RUN COMPANY, and ) <br> THE BUICK RESOURCE RECYCLING ) <br> FACILITY, LLC, ) <br> ) <br> Defendants. ) | Case No. 4:10CV01895 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Counts I Through IV of Nadist, LLC's Complaint in Intervention (Doc. No. 62). This matter is fully briefed and ready for disposition.

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46

(1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

## BACKGROUND

Nadist, LLC ("Nadist") owns land near the Sweetwater Mine and Mill ("Sweetwater"). Nadist leases mineral rights to some of the land near Sweetwater to the Doe Run Resources Corporation pursuant to a mineral lease. On June 23, 2006, Nadist filed a complaint against The Doe Run Resources Corporation d/b/a "The Doe Run Company" and DR Land Holdings, LLC. (4:06cv969 ("the Nadist Litigation"), Doc. No. 1), which is currently pending before the Honorable Judge Catherine Perry in this district. On October 30, 2009, Nadist filed a Second Amended Complaint against The Doe Run Resources Corporation d/b/a "The Doe Run Company," DR Acquisition Corp., DR Land Holdings, LLC, The Renco Group, Inc. and Ira L. Rennert. (4:06cv969, Doc. No. 275). In the Nadist Litigation, Nadist alleges that Doe Run caused hazardous and toxic substances, including lead, zinc and lead tailings, to contaminate the soil, air and water around Sweetwater, including Nadist's property. Nadist alleges causes of action for Violation of Resource Conservation and Recovery Act ("RCRA")-Hazardous Waste (Count I), Violation of RCRA-Solid Waste (Count II), Violation of the Clean Water Act ("CWA") (Count III), Violation of the Clean Air Act ("CAA") (Count IV), Trespass (Count V), Private Nuisance (Count VI), Public Nuisance (Count VII), Specific Performance of Contract (Count VIII), Breach of Contract (Count IX), Negligence (Count X), Strict Liability (Count XI), and a Tortious Interference Claim against Ira L. Rennert and the Renco Group, Inc. (Count XII). Nadist asks the Court to order Doe Run to comply with the

applicable environmental laws, to remedy the contamination caused by its violation of those laws and to enforce the terms of the mineral lease.

On October 8, 2010, the United States of America and the State of Missouri ("Government Plaintiffs") brought the instant action against The Doe Run Resources Corporation, The Doe Run Resources Corporation d/b/a "The Doe Run Company" and the Buick Resource Recycling Facility, LLC. (4:10cv1895, Doc. No. 1). The Government Plaintiffs allege violations of various state and federal environmental laws. The Government Plaintiffs set forth a negotiated Consent Decree to resolve the environmental issues related to Doe Run's operations in Missouri.

On November 19, 2010, Nadist filed a Motion to Intervene in the instant case. Nadist alleges Violation of RCRA-Hazardous Waste (Count I), Violation of RCRA-Solid Waste (Count II), Violation of the CWA (Count III), Violation of the CAA (Count IV), and that the Consent Decree is Impermissibly Vague (Count V) against The Doe Run Resources Corporation and The Doe Run Resources Corporation d/b/a "The Doe Run Company.". (Doc. No. 43). As part of its basis for intervening in this action, Nadist was concerned that several issues in the Nadist litigation would be mooted by the proposed entry of the Consent Decree. (Nadist's Memorandum in Support of Motion to Intervene, Doc. No. 9, pp. 4-5) (noting that Doe Run had stated its intent to use this action to moot Nadist's claims in the Nadist Litigation).

## DISCUSSION

In their Motion to Dismiss, Defendants The Doe Run Resources Corporation, The Doe Run Resources Corporation d/b/a "The Doe Run Company," and The Buick Resource Recycling Facility, LLC (collectively, "Doe Run") assert that Counts I-IV of Nadist's Complaint in Intervention are barred by the prior pending action doctrine because they are duplicative of the claims in the citizen suit already pending in the Nadist Litigation. Doe Run also claims that Counts I-IV of the Complaint

in Intervention fail because Nadist did not plead that it complied with the mandatory notice provisions contained in RCRA, CWA and/or CAA. The Court, however, grants Doe Run's Motion based upon the prior pending action doctrine and does not address the notice issue.

### A. Prior Pending Action Doctrine

Abatement, also known as the pending action doctrine, "'holds that where a claim involves the same subject matter and parties as a previously-filed action so that the same facts and issues are presented, resolution should occur through the prior action and the second suit should be dismissed.'" Harrison v. Commercial Woodworking Co., No. 4:08CV00082, 2008 U.S. Dist. LEXIS 97311, at *2, n. 2 (E.D. Mo. Dec. 1, 2008) (quoting Meyer v. Meyer, 21 S.W.3d 886, 889-90 (Mo. Ct. App. 2000)); State ex rel. Dunger v. Mummert, 871 S.W.2d 609, 610 (Mo. Ct. App. 1994)("The doctrine of abatement provides, a prior pending action between the same parties and involving the same issues will abate a later like action. . ."); Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419, n. 3 (8th Cir. 1999)("'The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case."'"); Brown v. Kerkhoff, No. 4:05-cv-00274, 2005 U.S. Dist. LEXIS 24346, at *26-27 (S.D. Iowa Oct. 19, 2005)(applying Iowa law)("A court will not entertain at the same time two or more suits between the same parties and for the same subject-matter, and the one that was commenced [earlier] will be given preference and the others abated."). "The decision to not hear the subsequent action is discretionary." Telluride Global Dev., LLC v. Bullock (In re Telluride Global Dev., LLC), 380 B.R. 817, 828 (Bankr. D. Colo. 2007)(citing Adam v. Jacobs, 950 F.2d 89, 92 (2nd Cir. 1991)). "Generally, a Court may decline to hear a subsequent lawsuit when (1) 'an identity of issues exists [with the prior pending action],' and (2) 'the controlling issues in the dismissed action [the subsequent action] will be determined in the

other lawsuit.'" In re Telluride Global Dev., LLC, 380 B.R. at 828 (quoting 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1360, p. 89 (3d ed. 2004)).

B.     **Application of Prior Pending Action Doctrine**

Nadist asserts that the prior pending action doctrine is inapplicable to the present action and that this action is not duplicative for several reasons. Nadist, however, does not argue that the Nadist Litigation involves different claims or parties than the present litigation. Nadist simply asserts that the prior litigation is different because Nadist came into this case as an intervenor and because this case involves a Consent Decree. Specifically, Nadist claims that the prior pending action doctrine does not apply because entry of the Consent Decree will moot some of the claims in the Nadist Litigation. In addition, Nadist argues that it has the ability to intervene as a matter of right, pursuant to Fed.R.Civ.P. 24 and the federal environmental statutes, RCRA, CWA and CAA. The Court finds that these reasons do not preclude this Court from applying the prior pending action doctrine and dismissing Counts I-IV.

1.     Changed Dynamic

By its silence, Nadist admits that the parties and the causes of action in the Nadist Litigation and in this case are the same. Nadist instead asserts that the filing of an enforcement action and simultaneous lodging of a proposed consent decree "changes the dynamic of the previously filed action," such to allow its claims to proceed in the instant claim as well as in the Nadist Litigation. (Response, p. 5 (citing In re Telluride Global Dev., LLC, 380 B.R. at 828, n. 8 (holding, in the alternative, that the filing of a bankruptcy is a special circumstance that "changes the dynamic of the previously filed action" and, therefore, the bankruptcy court was the proper forum to hear the case, despite a prior pending action))).[1] Nadist, however, does not cite to any authority for the proposition

---

[1]Notably, the Telluride court held that the "pending prior action doctrine" was not applicable because the prior pending lawsuit was remanded to Colorado state court. Id. at 828. It noted the

that the filing of a proposed consent decree changes the dynamic of the situation, as a bankruptcy case may. See In reTelluride, 380 B.R. at 827, n. 7 ("A bankruptcy case is not a single lawsuit, rather it is part of a process for the liquidation, reorganization or rehabilitation of financially distressed individuals and entities. As part of this process, claims of all types asserted against a debtor must be determined. As part of these 'claims' hearings, a bankruptcy court regularly adjudicates matters which have been asserted in lawsuits in other courts.").[2] Unlike in Telluride, there is no basis or precedent for this Court to adjudicate claims that already are being pursued in another forum. In fact, the Court finds strong reasons for not litigating these causes of action, including the fear of inconsistent verdicts and wasting judicial resources. Although this case is the proper venue for Nadist's objections to the Consent Decree (Count V), that fact does not provide Nadist with an opportunity to pursue a parallel track litigation for claims already pending in the Nadist Litigation. See United States v. Ketchikan Pulp Co., 430 F. Supp. 83, 85 (D. Alaska 1977) (holding that "once intervenors have been given the opportunity to object to the decree they have had an appropriate day in court and a judgment on consent may be entered").

  2.  Rule 24

Nadist claims that dismissing Counts I-IV of Nadist's Complaint in Intervention would defeat one of the "primary purposes of Federal Rule of Civil Procedure 24." (Response, p. 5). Nadist asserts that it is entitled to bring its claims in this litigation because its claims in the Nadist Litigation

---

"general rule is that 'as between state and federal courts ... "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....""" Id. (quoting Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)).

  [2]Nadist notes that Doe Run does not cite to a single case that involves a proposed consent decree. (Memorandum of Nadist, LLC in Opposition to Doe Run's Motion to Dismiss ("Response"), Doc. No. 72, p. 3, n. 1). Nadist, however, does not cite to any cases in which the application of the prior pending action doctrine was rejected in a citizen suit. (Defendants' Reply in Support of Their Motion to Dismiss Counts I through IV of Nadist, LLC's Complaint in Intervention ("Reply"), Doc. No. 75, p. 4).

will be mooted by the Consent Decree. (Response, pp. 5-6). As a result, Nadist claims that the dismissal of Counts I-IV of the Complaint in Intervention will deprive it of its day in court and would be contrary to "the plain reading of the citizen suit provisions in RCRA, CWA and CAA (as well as the Congressional intent with which the provisions were enacted), and the interpretation of the Eighth Circuit Court of Appeals)." (Response, p. 6).

There are several problems with this argument. First, it is not a foregone conclusion that the Court will enter the Consent Decree in this case. Nadist's citizen suit has not been "displaced by government action." (Response, p. 6). The Consent Decree must be reviewed and approved by this Court. Thus, it would be mere speculation for the Court to make a determination based upon the prospect that the claims in Nadist's litigation may becoming moot because of the Consent Decree.

Second, Nadist is not entitled to its "day in court" if its claims are duplicative of government action. A similar argument was made in Hudson River Fishermen's Ass'n v. County of Westchester, 686 F. Supp. 1044 (S.D.N.Y. 1988).[3] That court noted that the "thrust of the CWA is to provide *society* with a remedy against polluters in the interest of protecting the environment." Id. at 1052 (emphasis in original) (citing Section 101 of the CWA, 33 U.S.C. § 1251(a)). In those instances when the Government fails to vindicate social rights and interests, "the CWA allows citizens acting as private attorneys general to fill the void." Id. "That does not mean, however, that [a private citizen] is *ipso facto* entitled to its own, 'personalized' remedy in this or any other CWA case." Id. Here, in the interests of protecting the environment, Nadist has been permitted to prosecute its RCRA, CWA and CAA claims against Doe Run in the Nadist Litigation. If the Government Plaintiffs' action in this litigation should achieve that end, "the fact that [Nadist] or any other private attorney general is barred from duplicating that effort should hardly seem surprising or harsh." Id.

---

[3]Quoted in United States EPA v. Green Forest, 921 F.2d 1394, 1404-05 (8th Cir. 1990).

Nadist has already filed its citizen suit and had several years to pursue that end. If the government is able to protect the environment through this lawsuit, then Nadist's RCRA, CWA and CAA claims are not needed to fill a void and properly are dismissed in this action.

In addition, Fed.R.Civ.P. 24 does not entitle a party to a day in court; it does not guarantee that a cause of action will survive a motion to dismiss for failure to state a claim or lack of jurisdiction. Rather, as noted by Doe Run, Rule 24 is a procedural mechanism that allows a party to intervene in an action in which the party may have an interest. (Reply, p. 7). Rule 24 provided the vehicle for Nadist to intervene in this action, but the substance of its claims are barred by the prior pending litigation doctrine. Nadist, however, will have an opportunity to pursue its claim in Count V and object to the Consent Decree.

### 3. Attorneys' Fees

Nadist's primary concern seems to be that Nadist would not receive its costs and attorneys' fees for its citizen suit if the Court enters the Consent Decree in this case and the claims in the Nadist Litigation are be deemed moot. (Response, p. 4) ("once the government has acted pursuant to an entered consent decree, it is hoped that the alleged violations will cease, rendering a citizen's suit moot"). A case becomes moot if the court no longer can grant relief that will redress an injury the plaintiff claims. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998)(there must be alleged (and ultimately proven) an "injury in fact -- a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical'"). The Court, however, cannot retain jurisdiction over Nadist's claim simply because it would not receive attorneys' fees. Miss. River Revival, Inc. v. City of Minneapolis, 145 F. Supp. 2d 1062, 1065 (D. Minn. 2001)("The possibility of an award of attorney fees and costs also is insufficient in itself to establish a case or controversy

under Article III."). Nadist is not entitled to pursue duplicative causes of action to obtain attorneys' fees.[4]

### C. Conclusion

Granting Doe Run's motion to dismiss does not deprive Nadist of its day in Court. Rather, it merely prevents Nadist from having multiple days in court on the same issue. Nadist is already pursuing those claims personal to its interests in another Court. Nadist remains a party to this action with respect to Count V (alleging the Consent Decree is impermissibly vague) and can file its objections to the proposed consent decree. Nadist is not barred from litigating its claims against Doe Run in the Nadist Litigation. Nadist simply may not, however, attempt to relitigate its right to bring a cause of action against Doe Run in any court based on this same cause of action.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Counts I Through IV of Nadist, LLC's Complaint in Intervention (Doc. No. 62) is **GRANTED**, in accordance with the foregoing.

Dated this 10th day of May, 2011.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE

---

[4] In addition, dismissal of Nadist's action may not preclude it from receiving attorneys' fees. Precedent exists for awarding attorneys' fees to a party whose actions prompted a consent decree. See Green Forest, 921 F.2d at 1402 (where the citizens' suit pre-dated the EPA action and their efforts were instrumental in spurring the EPA into finally taking action, citizens were permitted to seek their attorneys' fees; reversing the denial of intervention insofar as it precluded the citizens from seeking their fees, and remanding the case on this issue for the district court to determine the proper amount of such fees).